IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JESUS PINEDA & ERICA PINEDA, | § | CASE NO. 20-30021 |
| | § | |
| DEBTOR. | § | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY OF OAK STREET FUNDING LLC REGARDING PAYMENTS FROM ALLSTATE INSURANCE CO.**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN <u>FOURTEEN (14) DAYS</u> FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

**TO THE HONORABLE H. CHRISTOPHER MOTT U.S. BANKRUPTCY JUDGE:**

Oak Street Funding LLC, a Delaware limited liability company, secured creditor and party in interest ("Oak Street" or the "Lender"), files this *Motion for Relief from Automatic Stay of Oak Street Funding LLC Regarding Payments from Allstate Insurance Co.* (the "Motion") and in support thereof would show the Court the following.

### INTRODUCTION

1.      Debtor owns or has owned an insurance agency.  Lender seeks entry of an order terminating the automatic stay of 11 U.S.C. § 362(a) as collect payments from Allstate Insurance Co. from an insurance company to the Debtor in such Lender maintains a perfected security interest and which were payments were assigned to and being paid to Lender pre-petition.

**MOTION FOR RELIEF FROM AUTOMATIC STAY OF OAK STREET FUNDING LLC REGARDING PAYMENTS FROM ALLSTATE INSURANCE CO. — Page 1**

1949323.DOCX [1]

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure and, without limitation, Section 362 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code").

3.      Venue action is proper in this Court pursuant to 28 U.S.C. § 1409.

4.      The Court may try this action to a conclusion and enter final orders under *Stern v. Marshall*, 131 S. Ct. 2594 (U.S. 2011).

## FACTUAL BACKGROUND

5.      This Motion is supported by the Declaration of Kathy Yeary Executive Director of Customer Service of Oak Street Funding LLC.  *See* **Exhibit OAK001.**

6.      On January 1, 2020 (the "Petition Date"), Jesus Pineda and Erica Pineda (the "Debtors") commenced this case by filing a voluntary petition under Chapter 13 of the Code.

7.      On or about February 8, 2018, Pineda as borrower (the "Borrower"), executed and delivered to Oak Street a Credit Agreement in the original principal amount of TWO HUNDRED NINETY THREE THOUSAND DOLLARS and 00/100 ($293,000.00), as amended from time to time (the "Credit Agreement"). Based upon Borrower's request, Borrower and Oak Street modified the Credit Agreement on or about April 10, 2020.  *See* **Exhibit OAK002.**

8.      In order to secure all amounts due under the Credit Agreement, on or about February 8, 2018, the Borrowers executed and delivered to Oak Street a Security Agreement (the "Security Agreement") wherein the Borrower granted Oak Street a security interest in all of the business assets of the Borrower, including without limitation, all commissions due from insurance carriers, goods, accounts, general intangibles, payment intangibles, contract rights, and all amounts due under that certain Allstate R3001 Exclusive Agency Agreement with Allstate Insurance Company (collectively the "Collateral").  *See* **Exhibit OAK003.**

9.      In order to further secure all amounts due under the Credit Agreement, the Borrower executed and delivered to Oak Street a Commission Payment Agreement (the "CPA Agreement") whereby Allstate agreed to direct monthly payments (the "Payments") to the CCA (defined below).  *See* **Exhibit OAK004.**

10.     In order to further secure all amounts due under the Credit Agreement, the Borrower executed and delivered to Oak Street a Security Agreement in Economic Interest (the "TPP Assignment") whereby the Borrower granted Oak Street a security interest in the various payments from Allstate Insurance Co. (the "TPP") due to the Borrower from Allstate Insurance Company, an Illinois corporation and/or Allstate Lending Connection (collectively "Allstate"). *See* **Exhibit OAK005**.

11.     Oak Street perfected its security interest in the Collateral by filing one or more UCC Financing Statements (including amendments and/or extensions thereof) with the Texas Secretary of State (the "UCC").  *See* **Exhibit OAK006.**

12.     The Borrowers also executed and delivered to Oak Street a Deposit Account Control Agreement (the "Account Agreement") with respect to the cash collateral account (the "CCA") of the Borrower with First Financial Bank NA.   Per the terms of the Account Agreement, all commissions due and owing to the Borrowers are to be directed to the CCA throughout the life of the loan.  *See* **Exhibit OAK007.**

13.     The Credit Agreement, Security Agreement, UCC, Account Agreement, CPA Assignment, TPP Assignment, and all other documents of anything relating to the relationship between the Borrowers and Oak Street are referred to collectively herein as the "Loan Documents."

14.     As of the Petition Date, pursuant to the terms of and as evidenced by the Loan Documents, the Borrower was indebted to Oak Street for an amount in excess of $258,289.75 (the "Indebtedness").  *See* **Exhibit OAK008**.

15.     The Borrower is in default under the Loan Documents for, among other things, filing of this case and failure to maintain the vested Termination Payment requirement.

16.     The CCA, the Payments and the TPP are the primary and usual source of repayment of the Indebtedness.

17.     Oak Street seeks relief from the automatic stay of 11 U.S.C. §362(a) so that Oak Street may continue and/or resume collection of the Payments and TPP and application of the Payments and TPP to the Indebtedness.

18.     Oak Street has incurred and is entitled, pursuant to the Loan Documents, to recover costs, expenses, and fees in its efforts to collect under the Loan Documents, which amounts Oak Street is unable to quantify at this time, and additional fees will be incurred prior to conclusion of this matter.

19.     According to the matrix or creditors list, schedules (Docket No. 9), and confirmed Chapter 13 plan (Docket Nos. 75, 83), Pindea has not listed Oak Street or otherwise addressed the claims of Oak Street in this case, or otherwise provided notice of this case to the Lender.

20.     Oak Street has filed this Motion promptly upon learning of the pendency of this case.

21.     Pineda otherwise has not made payments to Oak Street outside of the Plan or beyond the arrangements provided in the Loan Documents.

### RELIEF REQUESTED

22.     Oak Street respectfully requests that the Court lift, annul, and terminate the automatic stay of Code § 362(a) so that Oak Street may continue and/or resume collection of the

Payments and TPP and application of the Payments and TPP to the Indebtedness and all other obligations that exist or that arise under the Loan Documents, and that the 14-day stay of Fed. R. Bankr. P. 4001(a)(3) not apply to such order.

23.    A proposed form of order accompanies this Motion and is incorporated by reference herein.

### BASIS OF RELIEF

24.    Cause exists to lift the stay under Code §§ 362(d)(1) and (2).

25.    Pindea has not listed Oak Street or otherwise addressed the claims of Oak Street in this case.

26.    Oak Street is omitted from the confirmed plan.

27.    The Payments and TPP are the only available sources of collateral for the Lender and the only available means to satisfy the claim(s) of the Lender.

28.    Additional grounds for relief may be presented as the Lender acquires additional information.

29.    Cause also exists to terminate the Fed. R. Bankr. P. 4001(a)(3) stay so that Lender immediately may resume and continue collection of the payments due from Allstate and assigned to the Lender and/or encumbered by the security interest(s) of the Lender.

### CONCLUSION AND PRAYER

WHEREFORE, Oak Street Funding LLC, secured creditor and party in interest, respectfully requests that the Court lift, annul, and terminate the automatic stay of Code § 362(a) so that Oak Street may continue and/or resume collection of the Payments and TPP and application of the Payments and TPP to the Indebtedness and all other obligations that exist or that arise under the Loan Documents.  Oak Street Funding LLC further requests that the Court terminate the stay of Fed. R. Bankr. P. 4001(a)(3) and make the Order effective immediately

upon entry.   Movant respectfully requests such other and further relief to which movant is

entitled at law or in equity.

Dated:  April 23, 2021           Respectfully submitted:

                     WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

                     By:____/s/ Jeff Carruth_____
                      JEFF CARRUTH (TX SBN:. 24001846)
                      24 Greenway Plaza Suite 2050
                      Houston, Texas 77046
                      Telephone: (713) 341-1158
                      Fax: (866) 666-5322
                      E-mail:  jcarruth@wkpz.com

                     ATTORNEYS FOR OAK STREET FUNDING LLC

## CERTIFICATE OF CONFERENCE

The undersigned contacted Debtor's counsel by email on April 23, 2021.  No response was received.  The Debtor presumably opposes the Motion.

                     _____*/s/ Jeff Carruth*_____
                     JEFF CARRUTH

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on April 23, 2021 (1) by electronic notice to all ECF users who have appeared in this case to date, as set forth below and (2) by regular mail, ***but without exhibits unless otherwise specified in the service list,*** to the parties identified in the attached service list. **COPIES OF THE EXHIBITS MAY BE OBTAINED BY CONTACTING THE UNDERSIGNED.**

                     _____*/s/ Jeff Carruth*_____
                     JEFF CARRUTH

**txwb2030021 Jesus Pineda, Erica Pineda - SERVICE LIST**

| Adddress1 | Adddress2 | Adddress3 | Adddress4 | Address5 | Method of Service |
|---|---|---|---|---|---|
| Albert Elli Law | 2201 West Royal Lane, Ste. 155 | Irving, TX 75063-3200 | | | Regular Mail |
| City of El Paso | c/o Bradley S. Balderrama | 112 E. Pecan St. Ste. 2200 | San Antonio, TX 78205-1588 | | NOA on file - ECF service |
| Credit Central, LLC | 700 E. North St, Suite 15 | Greenville, SC 29601-3013 | | | Regular Mail |
| Del Sol Medical Center | Resurgent Capital Services | PO Box 1927 | Greenville, SC 29602-1927 | | Regular Mail |
| Directv, LLC | by American InfoSource as agent | PO Box 5008 | Carol Stream, IL 60197-5008 | | Regular Mail |
| FIRSTLIGHT FEDERAL CREDIT UNION | P O BOX 24901 | EL PASO, TX 79914-9001 | | | NOA on file - ECF service |
| JEFFERSON CAPITAL SYSTEMS LLC | PO BOX 7999 | SAINT CLOUD MN 56302-7999 | | | Regular Mail |
| OneMain Financial | PO Box 3251 | Evansville, IN 47731-3251 | | | Regular Mail |
| Ovation Services LLC as agent for | FGMS Holdings LLC | c/o Mary Elizabeth Heard | 8700 Crownhill Blvd, Ste 505 | San Antonio, TX 78209-1130 | NOA on file - ECF service |
| PRA Receivables Management, LLC | PO Box 41021 | Norfolk, VA 23541-1021 | | | Regular Mail |
| PORTFOLIO RECOVERY ASSOCIATES LLC | PO BOX 41067 | NORFOLK VA 23541-1067 | | | Regular Mail |
| Quantum3 Group LLC as agent for | Aqua Finance | PO Box 788 | Kirkland, WA 98083-0788 | | Regular Mail |
| REGIONAL MANAGEMENT CORPORATION | 979 BATESVILLE ROAD SUITE B | GREER, SC 29651-6819 | | | Regular Mail |
| Tea Olive, LLC | PO BOX 1931 | Burlingame, CA 94011-1931 | | | Regular Mail |
| United States Trustee - EP12 | U.S. Trustee's Office | 615 E. Houston, Suite 533 | P.O. Box 1539 | San Antonio, TX 78295-1539 | Regular Mail |
| Wells Fargo Bank, N.A. | | | | | NOA on file - ECF service |
| Wells Fargo Bank, N.A. | Default Document Processing | MAC# N9286-01Y | 1000 Blue Gentian Road | Eagan MN 55121-7700 | NOA on file - ECF service |
| Wells Fargo Bank, N.A., | c/o Philip S. Traynor | Albertelli Law | 2201 W. Royal Ln., Ste. 155 | Irving, TX 75063-3200 | NOA on file - ECF service |
| Wells Fargo Home Mortgage | 3476 Stateview Blvd. | Fort Mill, SC 29715-7203 | | | NOA on file - ECF service |
| evolve Federal Credit Union | 8840 Gazelle | El Paso, TX 79925-5817 | | | NOA on file - ECF service |
| Jesus Pineda Erica Pineda | 12592 Arrow Weed Drive | El Paso, TX 79928-5866 | | | Regular Mail + EXHIBITS |
| Michael R. Nevarez | The Law Offices of Michael R. Nevarez | P.O. Box 12247 | El Paso, TX 79913-0247 | | Regular Mail + EXHIBITS |
| Stuart C. Cox | El Paso Chapter 13 Trustee | 1760 N. Lee Trevino Dr. | El Paso, TX 79936-4565 | | Regular Mail + EXHIBITS |

**MOTION FOR RELIEF FROM AUTOMATIC STAY OF OAK STREET FUNDING LLC REGARDING PAYMENTS FROM ALLSTATE INSURANCE CO. — Page 1**

1949323.DOCX [2]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JESUS PINEDA & ERICA PINEDA, | § | CASE NO. 20-30021 |
| | § | |
| DEBTOR. | § | |

**ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY OF OAK STREET FUNDING LLC REGARDING PAYMENTS FROM ALLSTATE INSURANCE CO. (RE: DOCKET NO. ___)**

On this day came on for consideration the *Motion for Relief from Automatic Stay of Oak Street Funding LLC Payments from Allstate Insurance Co.* (Re: Docket No. __) (the "Motion") filed herein on April 23, 2021 by Oak Street Funding LLC.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service accompanying the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion, that cause exists to grant the relief requested therein.

**IT IS THEREFORE ORDERED THAT:**

 1. The Motion is GRANTED as set forth herein.

**ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY OF OAK STREET FUNDING LLC REGARDING PAYMENTS FROM ALLSTATE INSURANCE CO. (RE: DOCKET NO. __) — Page 1**

1949323.DOCX [3]

2.  All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

3.  The automatic stay of 11 U.S.C. § 362(a) is lifted, annulled, and terminated so that so that Oak Street may continue and/or resume collection of the Payments and TPP and application of the Payments and TPP to the Indebtedness and all other obligations that exist or that arise under the Loan Documents.

4.  The stay of Fed. R. Bankr. P. 4001(a)(3) is hereby terminated and the relief granted in this order immediately is effective.

<div align="center">###</div>

**ORDER SUBMITTED BY:**

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____*/s/ Jeff Carruth*_____
      JEFF CARRUTH (TX SBN:. 24001846)
      24 Greenway Plaza Suite 2050
      Houston, Texas 77046
      Telephone: (713) 341-1158
      Fax: (866) 666-5322
      E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR OAK STREET FUNDING LLC**

**ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY OF OAK STREET FUNDING LLC REGARDING PAYMENTS FROM ALLSTATE INSURANCE CO. (RE: DOCKET NO. __) — Page 2**

1949323.DOCX [3]

EXHIBIT OAK001

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 20-30021 |
| JESUS PINEDA AND ERICA PINEDA, | § | |
| | § | |
| | § | |
| Debtors. | § | |

## DECLARATION OF KATHY YEARY IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY OF OAK STREET FUNDING LLC REGARDING PAYMENTS FROM ALLSTATE INSURANCE CO.

Pursuant to 28 U.S.C. § 1746, Kathy Yeary Executive Director of Customer Service of Oak Street Funding LLC, hereby declares the following under penalty of perjury of the laws of the United States that the following statements are true and correct.

1. My name is Kathy Yeary. I am over the age of 18 years and fully competent to testify to the matter stated in this declaration. I have personal knowledge of the facts and statements contained in this declaration and each of them is true and correct. I am providing this declaration in support of the above-captioned motion (the "Motion").

2. I am the Executive Director of Customer Service of Oak Street Funding LLC ("Oak Street"). I have worked at Oak Street since November 28, 2005 and held this position since November 28, 2005. In this position, I am a custodian of records for Oak Street.

3. Oak Street is a Delaware limited liability company with a place of business located at 8888 Keystone Crossing, Suite 1700, Indianapolis, Indiana 46240.

4. Furthermore, I am the Oak Street representative assigned to the underlying loan to Jesus Pineda ("Pineda" or the "Borrower") and the bankruptcy case of Pineda.

5. My responsibilities in this position include but are not limited to the execution of the following activities which I undertake personally and directly: (*i*) review and verification of the business records of Oak Street which evidence the loans and loan balances that are due and owing to Oak Street (such as and including the business records that are attached to or that are incorporated into this Declaration which I have personally reviewed and determined to be true and correct and which evidence the indebtedness(es) of Debtor as borrowers; (*ii*) determining and/or management and oversight of the true and correct amounts of the loan balances that are due to and owing to Oak Street, including the accrual of interest, assessments of charges and fees that are due to Oak Street under the loan documents, and any payments that are received from borrowers or guarantors through collection activities, or otherwise, and including, when necessary, communicating with the employees of Oak Street to determine the loan balances; (*iii*) the execution and/or the direct management and oversight of the activities that are necessary to collect the loan balances that are due and owing to Oak Street, including, for example, various

**EXHIBIT OAK001**

forms of communications with borrowers and guarantors; and (*iv*) the management and oversight of any litigation involving any borrowers or guarantors and their loans and obligations, and including the retention and oversight of attorneys engaged by Oak Street to advance the collection process through, for example, the filing of liens, and the fulfillment of other remedies available under applicable law.

6.      As part of my duties, I have been responsible for the management and oversight of the administration, servicing, and/or collection of the loans from Oak Street to Pineda as borrower.

7.      I am also a custodian of records for Oak Street with respect to the indebtedness owed to Oak Street by Pineda.  I am familiar with the manner and method in which Oak Street maintains its books and records. Oak Street keeps these books and records in the regular course of its business.  It is the regular course of Oak Street's business for an employee with personal knowledge of each transaction or event to make a record of the transaction or event at or near the time of the transaction or event.  These books and records are maintained by employees and agents whose duties it is to maintain the books and records accurately and completely.

8.      The records attached hereto and/or contained in the Exhibit Appendix are the originals or the exact duplicates of the originals. I personally reviewed the records attached to this Declaration and/or provided for the Exhibit Appendix attached to the Motion in connection with the execution of this Declaration and/or the attached Motion.  Furthermore, I reviewed personally the records attached to this Declaration and/or contained in the Exhibit Appendix attached to the Motion on one or more occasions prior to the execution of this Declaration.

9.      Prior to and in connection with the execution of this Declaration, I have reviewed personally the books and records of Oak Street with respect to the indebtedness of Debtors and Guarantor, in addition to the records attached to this Declaration.

10.     The business records of Oak Street support the statements contained in this Declaration.

11.     Pineda is a resident of the State of Texas with a last known address of 12592 Arrow Weed, El Paso, Texas 79928.

12.     On January 7, 2020 (the "Petition Date"), Pineda filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code with the United States Bankruptcy Court, Western District of Texas.

13.     On or about February 8, 2018, Pineda as borrower (the "Borrower"), executed and delivered to Oak Street a Credit Agreement in the original principal amount of TWO HUNDRED NINETY THREE THOUSAND DOLLARS and 00/100 ($293,000.00), as amended from time to time (the "Credit Agreement"). Based upon Borrower's request, Borrower and Oak Street modified the Credit Agreement on or about April 10, 2020.  *See* **Exhibit OAK002.**

14.     In order to secure all amounts due under the Credit Agreement, on or about February 8, 2018, the Borrowers executed and delivered to Oak Street a Security Agreement (the "Security Agreement") wherein the Borrower granted Oak Street a security interest in all of the

**EXHIBIT OAK001**

business assets of the Borrower, including without limitation, all commissions due from insurance carriers, goods, accounts, general intangibles, payment intangibles, contract rights, and all amounts due under that certain Allstate R3001 Exclusive Agency Agreement with Allstate Insurance Company (collectively the "Collateral"). *See* **Exhibit OAK003**.

15.     In order to further secure all amounts due under the Credit Agreement, the Borrower executed and delivered to Oak Street a Commission Payment Agreement (the "CPA Agreement") whereby Allstate agreed to direct monthly payments (the "Payments") to the CCA (defined below). *See* **Exhibit OAK004.**

16.     In order to further secure all amounts due under the Credit Agreement, the Borrower executed and delivered to Oak Street a Security Agreement in Economic Interest (the "TPP Assignment") whereby the Borrower granted Oak Street a security interest in the various termination payments (the "TPP") due to the Borrower from Allstate Insurance Company, an Illinois corporation and/or Allstate Lending Connection (collectively "Allstate"). *See* **Exhibit OAK005**.

17.     Oak Street perfected its security interest in the Collateral by filing one or more UCC Financing Statements (including amendments and/or extensions thereof) with the Texas Secretary of State (the "UCC"). *See* **Exhibit OAK006.**

18.     The Borrowers also executed and delivered to Oak Street a Deposit Account Control Agreement (the "Account Agreement") with respect to the cash collateral account (the "CCA") of the Borrower with First Financial Bank NA.  Per the terms of the Account Agreement, all commissions due and owing to the Borrowers are to be directed to the CCA throughout the life of the loan. *See* **Exhibit OAK007.**

19.     The Credit Agreement, Security Agreement, UCC, Account Agreement, CPA Assignment, TPP Assignment, and all other documents of anything relating to the relationship between the Borrowers and Oak Street are referred to collectively herein as the "Loan Documents."

20.     As of the Petition Date, pursuant to the terms of and as evidenced by the Loan Documents, the Borrower was indebted to Oak Street for an amount in excess of $258,289.75 (the "Indebtedness"). *See* **Exhibit OAK008**.

21.     The Borrower is in default under the Loan Documents for, among other things, filing of this case and failure to maintain the vested Termination Payment requirement.

22.     The CCA, the Payments and the TPP are the primary and usual source of repayment of the Indebtedness.

23.     Oak Street seeks relief from the automatic stay of 11 U.S.C. §362(a) so that Oak Street may continue and/or resume collection of the Payments and TPP and application of the Payments and TPP to the Indebtedness.

24.     Oak Street has incurred and is entitled, pursuant to the Loan Documents, to recover costs, expenses, and fees in its efforts to collect under the Loan Documents, which

**EXHIBIT OAK001**

amounts Oak Street is unable to quantify at this time, and additional fees will be incurred prior to conclusion of this matter. Oak Street here reserves the right to amend this Declaration to assert its costs and reasonable fees.

25.    Oak Street reserves the right to amend and supplement this Declaration. Oak Street also reserves all rights accruing to it, and the filing of this Declaration is not intended to be and shall not be construed as:

      a.   A waiver of any past, present, or future defaults or events of default; or

      b.   A waiver or limitation of any rights of Oak Street.

<p align="center"><strong><em><u>{continued on following sheet}</u></em></strong></p>

**EXHIBIT OAK001**

Executed and Dated:  April 22, 2021          Respectfully submitted,

OAK STREET FUNDING, LLC

By: _____

Kathy Yeary
Executive Director
of Customer Service

OAK002.001



**CREDIT AGREEMENT**

This Credit Agreement (the "Agreement") dated as of the 8th day of February, 2018, is between **Jesus Pineda, a resident of Texas** (herein jointly and severally called the "Borrower" whether one or more), and **OAK STREET FUNDING LLC**, a Delaware limited liability company ("Oak Street").

W I T N E S S E T H:

WHEREAS, Borrower desires to borrow up to a maximum principal amount of Two Hundred Ninety Three Thousand Dollars ($293,000) from Oak Street under a term loan; and

WHEREAS, Oak Street is willing to provide such financial accommodation to Borrower on the terms and subject to the terms and conditions as contained in this Agreement.

NOW, THEREFORE, in consideration of the premises, the mutual covenants hereinafter contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>DEFINITIONS; RULES OF CONSTRUCTION</u>.  In addition to other capitalized terms defined elsewhere in this Agreement, the following terms will have the following meanings:

(a)    "Account Event" means (i) the occurrence of an Event of Default and/or (ii) a decrease in the vested Termination Payment plus any non-vested termination payment to an amount below Four Hundred Fifteen Thousand Forty Six Dollars and Thirty Three Cents ($415,046.33), measured on a monthly basis.

(b)    "Active Insurance Policies" means Insurance Policies which are in effect and are current with respect to premium payments which are generating, and which Oak Street reasonably determines will continue to generate, Insurance Commissions Collateral.

(c)    "Agency Agreements" means any contract, agreement or understanding (whether written or oral), now existing or hereafter arising, as any of such contracts, agreements or understandings may be amended, modified or replaced from time to time, between Borrower and any insurance company  which has issued any of the Insurance Policies generating Insurance Commissions Collateral.

(d)    "Amortization Date" means the earliest of (i) March 25th, 2018, or such later date to which the Amortization Date has been extended in writing by Oak Street, or (ii) at Oak Street's election a date selected by Oak Street following an Event of Default, or (iii) at Oak Street's election a date selected by Oak Street upon the occurrence of an Account Event.

(e)    "Applicable Margin" means a per annum percentage which is added to the Prime Rate in order to determine the Interest Rate at which interest accrues on the unpaid principal balance of the Loan.  The initial Applicable Margin is Five Point Five Zero Zero percent (5.50%) per annum.



Page 2 of 26

(f)    "Business Day" means any day that is not a Saturday, Sunday, or a day on which banks in Indianapolis, Indiana are required or permitted to be closed.

(g)    "CCA" means the restricted deposit account(s) maintained by Borrower (and/or a Guarantor, if required by Oak Street) at the CCA Bank in which Oak Street has a perfected first security interest subject to the terms of the Security Agreements and the Control Agreements.

(h)    "CCA Bank" means any depositary institution selected by Oak Street at which any CCA is maintained.

(i)    "Collateral" means all of the property designated as Collateral under Section 3 of this Agreement.

(j)    "Control Agreement" means any Deposit Account Control Agreement between Borrower or any Guarantor, Oak Street and the CCA Bank at which any CCA is maintained.

(k)    "Credit Documents" means this Agreement, the Security Agreements, the Control Agreements, any Guarantee from any Guarantor, and all other documents, instruments or agreements delivered by Borrower or any other party in connection with the Loan identified in Section 7 of this Agreement, as any of such documents may be amended, modified or replaced from time to time.

(l)    "Default" means any event or condition that constitutes an Event of Default or that, with the giving of any notice, the passage of time, or both, would be an Event of Default.

(m)    "Dollar," "Dollars" and the symbol "$" each means lawful money of the United States of America.

(n)    "Effective Date" means the date on which this Agreement is executed and delivered by Borrower to Oak Street.

(o)    "Extraordinary Receipts" means any cash received by Borrower or Guarantor from a sale or disposition of the Collateral or proceeds of judgments or settlements which relate in any way to the Collateral . Any carrier commissions, fees, bonuses, rebates, amounts received in respect of foreign, United States, state or local tax refunds, pension reversions or similar compensation received by Borrower in the ordinary course of business shall not be considered an Extraordinary Receipt, but shall constitute part of the Collateral.

(p)    "Event of Default" means any of the Events of Default described in Section 8 of this Agreement.

(q)    "Guarantor" means any person(s) or entity(ies) required by Oak Street pursuant to this Agreement to guarantee payment of Borrower's obligations with respect to the Loan.

(r)    "Insurance Commissions Collateral" means all commissions and other amounts paid or payable to Borrower with respect to any Insurance Policies associated with any Agency Agreements and/or Producer Codes, together with any and all contingency commissions, over-ride commissions, profit sharing, audit commissions, fees, bonuses, other income, new policies or expirations, renewals, substitutions or modifications thereof, including, without limitation, any Insurance Commissions Collateral due on or after the Effective Date and all commissions due before the Effective Date but received on or after the Effective Date relating to such Agency



Page 3 of 26

Agreements and/or Producer Codes .

(s)     "Insurance Policies" means any policies of insurance which are generating Insurance Commissions Collateral, including, without limitation, new policies or expirations and renewals.

(t)     "Loan" means the loan in the original principal amount of Two Hundred Ninety Three Thousand Dollars ($293,000) made available to Borrower by Oak Street pursuant to the provisions of this Agreement and the other Credit Documents.

(u)     "Maturity Date" means the Payment Due Date occurring 120 months after the Amortization Date.

(v)     "Payment Due Date" means the 25th day of each month.

(w)     "Prime Rate" means the rate of interest for the United States announced from time to time by the "Money Rates" section of The Wall Street Journal.

(x)     "Producer Codes" means those codes assigned by an applicable insurance company which track or identify any Insurance Commissions Collateral.

(y)     "Repayment Period" means a period of 120 months commencing on the Amortization Date during which Borrower will be required to repay the outstanding principal balance of the Loan, together with all accrued and unpaid interest thereon, in combined monthly installments as provided in Section 2(c).

(z)     "Security Agreements" means the Security Agreements from Borrower (and Guarantor, if required by Oak Street) in favor of Oak Street to secure Borrower's (and Guarantor's) obligations with respect to this Agreement and the other Credit Documents.

(aa)     "Termination Payment" means the termination payment based upon vested commissions due Borrower from Allstate pursuant to that certain Security Interest and Collateral Assignment of Termination Payments and Economic Interest with Allstate Insurance Company.

For the purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(i)     Words of masculine, feminine or neuter gender include the correlative words of other genders.  Singular terms include the plural as well as the singular, and vice versa.

(ii)     All references herein to designated "Articles," "Sections" and other subdivisions or to lettered Schedules or Exhibits are to the designated Articles, Sections and subdivisions hereof and the Schedules or Exhibits annexed hereto unless expressly otherwise designated in context.  All Article, Section, other subdivision and Schedules or Exhibit captions herein are used for reference only and do not limit or describe the scope or intent of, or in any way affect, this Agreement.

(iii)     The terms "include," "including," and similar terms shall be construed as if followed by the phrase "without being limited to."



Page 4 of 26

(iv)    The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or other subdivision.

(v)    All Recitals set forth in, and all Schedules or Exhibits to this Agreement are hereby incorporated in this Agreement by reference.

(vi)    No inference in favor of or against any party shall be drawn from the fact that such party or such party's counsel has drafted any portion hereof.

(vii)    All references in this Agreement to a separate instrument are to such separate instrument as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(viii)    Every representation, warranty, covenant, agreement, obligation and undertaking set forth in this Agreement shall be deemed to have been made by Borrower and each of them jointly and severally.

2.    CREDIT FACILITY.   (a) Disbursement of Loan Proceeds.   Subject to the terms and conditions of this Agreement, Oak Street agrees to make the Loan to Borrower. Two Point Seven Five Zero Zero percent (2.75%) of the proceeds of the Loan requested by the Borrower will be deducted and deposited to the CCA as security for Borrower's obligations hereunder. Borrower agrees that the Loan will be used exclusively for business purposes and will not be used, directly or indirectly, for the purpose of "purchasing or carrying any margin stock" within the meaning of Federal Reserve Board's Regulation U; provided, however that nothing in this Section 2 or elsewhere in this Agreement shall be construed as imposing any duty on Oak Street to supervise the use or application of the Loan proceeds or any liability on Oak Street to any person if the Loan proceeds are not used for the purposes set forth in this Agreement.

(b)    Fees.   In connection with the Loan, on the Effective Date Borrower agrees to pay to Oak Street (i) a non-refundable closing fee as set forth on the pre-close checklist, (ii) a non-refundable origination fee as set forth on the pre-close checklist, (iii) on each Payment Due Date prior to maturity a monthly servicing fee equivalent to 0.00% per annum on the outstanding principal balance of the Loan as of the 25th day of the immediately preceding month. Monthly servicing fees will accrue on the basis of a 360 day year and paid for actual days elapsed.

(c)    Interest and Payments.   Beginning on the Effective Date, up to and including, the twenty-fourth (24th) Payment Due Date, the Loan shall bear interest on the outstanding principal amount thereof at a rate of 9.750% per annum. Beginning after the twenty-fourth (24th) Payment Due Date, the Loan shall bear interest on the outstanding principal amount thereof at a variable per annum rate (collectively, the "Interest Rate") established on the date of this Agreement and adjusted on each subsequent Payment Due Date to take into account any change in the Prime Rate, equal to the sum of (i) the Prime Rate which is in effect on the applicable Payment Due Date, plus (ii) the Applicable Margin in effect as of such Payment Due Date. Such interest shall be payable monthly, in arrears, on each Payment Due Date. Interest will accrue on the basis of a 360 day year and be paid for actual days elapsed. After the Maturity Date or upon the occurrence and during the continuance of an Event of Default, the principal amount of the Loan and, to the extent permitted by applicable law, any interest payment on the Loan and all other fees and other amounts owed under this Agreement or the other Credit Documents, shall thereafter bear interest (including post-petition interest in any bankruptcy or insolvency proceeding) payable on demand at a rate that is four percent (4.0%) per annum in excess of the interest rate otherwise payable hereunder, compounded monthly and payable on the basis of actual days elapsed until paid in full. During the Repayment



Page 5 of 26

Period, Borrower will make installment payments of combined principal and interest such that each such installment payment shall be in an amount sufficient to fully amortize outstanding principal and interest due hereunder over the Repayment Period, based on the assumption that the Interest Rate applicable to the Loan and in effect on the first day of the Repayment Period would remain unchanged throughout the Repayment Period, provided, however, that the amount of principal and interest due may change from time to time if there are changes in the Interest Rate or if the Loan is prepaid in part pursuant to Section 2(d), in each case as determined by Oak Street. The amount of the monthly installment payment will be recalculated by Oak Street on or prior to each Payment Due Date to take into account any change in the applicable Interest Rate. On the Maturity Date, the Borrower shall repay the remaining outstanding principal amount of the Loan, together with all accrued but unpaid interest thereof, and all other fees and other amounts payable hereunder. Except as Oak Street (in its sole discretion) may otherwise elect, all amounts paid with respect to this Agreement shall be generally applied as follows: first, to the payment of costs of collection and expenses reimbursable by Borrower to Oak Street; second to the payment of delinquent fees payable under this Agreement; third, to the payment of the current fees due under this Agreement; fourth to the payment of delinquent interest payable under this Agreement; fifth, to the payment of monthly interest due currently on the unpaid principal balance; sixth, to the amount of any prepayment charges set forth in Section 2(d) hereof; and seventh, to the payment of the unpaid principal balance.

(d)     Prepayment.     If Borrower prepays all or any part of the principal amount outstanding other than in accordance with the schedule of principal installment payments established for the Loan pursuant to Section 2(c), or if an Event of Default occurs, Borrower will in connection with any such prepayment, pay to Oak Street the following payment contemporaneously with such payment (the "Prepayment Premium"): Five Point Zero Zero percent (5.00%) of the then outstanding principal balance The payment of the Prepayment Premium will be considered liquidated damages for loss of bargain to Oak Street and not as a penalty. Unless there exists an Event of Default, partial prepayments will result in recalculation of monthly installment payments pursuant to Section 2(c) above.

(e)     Mandatory Prepayments.     Within five (5) Business Days of the date of receipt by Borrower, or any other person or entity for the account of Borrower of any Extraordinary Receipts, Borrower shall repay the Loan by an amount equal to 100% of the amount of such Extraordinary Receipts.

(f)     CCA Administration.     Except as may otherwise be expressly agreed to by Oak Street (in writing), all of the Insurance Commissions Collateral shall be immediately deposited by Borrower or carrier as directed by Borrower into the CCA within two (2) Business Days of receipt of such funds from the relevant insurance company. Borrower and Oak Street shall each receive notice from the CCA Bank of all debits, payments and charges to and regular monthly or periodic statements of the accounting for the CCA of Borrower. All payments which shall become due under the Loan or this Agreement shall be debited from the CCA of Borrower, without notice to or further authorization from Borrower, and Borrower hereby authorizes Oak Street to debit the CCA of Borrower for payments due under this Agreement as and when due. So long as any amounts remain outstanding in respect of the Loan, Borrower agrees to maintain a minimum balance in the CCA equivalent to Two Point Seven Five percent (2.75%) of the original principal amount of the Loan.     Provided no Account Event has occurred, and so long as Borrower has provided the monthly termination payment report from Allstate Insurance Company (provided, however, that upon the occurrence of an Account Event, Borrower shall provide Oak Street with all requested commission statements) , Oak Street agrees to release from the CCA to Borrower any funds in excess of an amount equivalent to the monthly payment set forth in Section 2(c) above plus Two



Page 6 of 26

Point Seven Five percent (2.75%) of the original principal amount of the Loan to an account specified by Borrower within five (5) Business Days after the receipt by Oak Street of Insurance Commissions Collateral to the CCA, beginning in March. Following the occurrence of an Account Event, the cash release from the CCA to Borrower will cease immediately and any release of funds from the CCA to Borrower thereafter will be at the sole discretion of Oak Street. Borrower shall not be permitted to make payment orders or withdraw any amounts from the CCA until such time as the Loan is paid in full and all other indebtedness, obligations and liabilities of Borrower to Oak Street have been satisfied.

(a) <u>Payments</u>. All payments due with respect to the Loan are due without regard to and irrespective of any set off or counterclaim rights of Borrower or any Guarantors.

(b) <u>Conditions to Funding</u> . Oak Street shall have no obligation to disburse the proceeds of the Loan unless (i) Oak Street, in its sole and exclusive discretion, shall deem each of the conditions set forth in <u>Section 7</u> hereof have been met and will continue to be met by Borrower and Oak Street, or such conditions have been waived in writing by Oak Street, and (ii) there is no existing or uncured Default or Event of Default.

3. <u>COLLATERAL AND GUARANTEES</u>. (a) <u>Collateral</u>. Borrower's (and Guarantor's, if required by Oak Street) obligations and liabilities of every nature now or hereafter existing under or arising out of or in connection with the Credit Agreement and the other Credit Documents, including without limitation with respect to the Loan will be secured by a first priority security interest in (i) the assets of Borrower (and Guarantor, if required by Oak Street) more particularly described in the Security Agreements entered into by Borrower (and Guarantor, if required by Oak Street) dated as of the Effective Date and as amended or supplemented from time to time, and (ii) such other assets as may be required by Oak Street from time to time as described in the Security Agreements or Credit Documents (all of such assets referenced in this subsection (a) above being collectively referred to as the "Collateral").

(b) <u>Guarantees</u>. Payment of Borrower's obligations with respect to the Loan, and any of Borrower's other obligations to Oak Street under the Credit Agreement and the other Credit Documents will be unconditionally guaranteed by __N/A__ as Guarantor(s).

4. <u>REPRESENTATIONS AND WARRANTIES</u>. By entering into this Agreement, Borrower and Guarantor, if any, jointly and severally, represent and warrant to Oak Street the following:

(a) The list of Producer Code(s) or Agent Code(s) provided to Oak Street and attached hereto as Schedule A is true, accurate and complete in all respects. The commission information provided to Oak Street with respect to the Insurance Policies is true, accurate, and complete and neither the Insurance Policies nor Borrower's interest in the Insurance Commissions Collateral has been sold, transferred, disposed of, assigned or otherwise encumbered to any other party or parties. The Agency Agreements between Borrower and any insurance carrier are current, legal, valid and binding obligations of the parties thereto and are enforceable in accordance with their terms and are otherwise in full force and effect and no default exists thereunder. Borrower will timely renew the Agency Agreements on or before the dates on which they are scheduled to lapse, terminate, or expire and will not undertake or agree to any renewal, substitution, or modification of such Agency Agreements which would adversely affect the rights or remedies of Oak Street in the Insurance Commissions Collateral. Borrower will promptly notify Oak Street upon the occurrence of any of the following: (i) the receipt by Borrower of any oral or written notice of any default, event of default, or breach purportedly committed by Borrower or the insurance carrier under any of the Agency Agreements; (ii) the receipt by Borrower of any oral or written notice by an insurance carrier of its intention to cancel, terminate, or not renew any of the Agency Agreements; or (iii) the



Page 7 of 26

lapse of any of the Agency Agreements. The Insurance Policies and any applicable agreements or contracts between Borrower and any insurance carrier are active and constitute legal, valid and binding obligations of the parties thereto (including the payment obligations of the insured and the insurance carrier) and are enforceable in accordance with their terms.

(b)     Borrower has not received any oral or written notice of default or event of default, breach, cancellation or lapse with respect to any Insurance Policy, and, to Borrower's knowledge, no circumstances exist which, with the giving of notice, lapse of time or happening of any other event or condition, would become or cause a default or event of default, breach, cancellation or lapse with respect to such Insurance Policy.

(c)     Borrower has all requisite power and authority to own and operate its properties, to carry on its business as now conducted, to execute and deliver this Agreement and the other Credit Documents, to carry out the transactions contemplated thereby and to borrow the Loan hereunder. The execution, delivery and performance of this Agreement and the other Credit Documents have been duly authorized by all necessary action on the part of Borrower. This Agreement and the other Credit Documents have been duly executed and delivered by the Borrower and constitute valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with their respective terms.

(d)     The Collateral as represented to Oak Street on and at all times after the Effective Date will be the sole and absolute property of Borrower and will be free and clear of all liens, security interests and claims of any nature whatsoever, other than any lien or security interest granted to Oak Street and subject to permitted encumbrances under the Credit Documents, if any.

(e)     If any Borrower is an entity, then such Borrower is and will continue to be a duly organized, validly existing and in good standing under the laws of the State of TX and is qualified to do business and is in good standing in each jurisdiction where, because of the nature of Borrower's activities or properties, such qualification is required.

(f)     If any Borrower is an individual, such Borrower is and will continue to be a resident of the State of Texas and self-employed.

(g)     The principal place of business of Borrower, the chief executive office and the location of the books and records relating to the business and assets of Borrower is 615 N ZARAGOZA RD STE 50, EL PASO, TX 799074772.

(h)     There is no action, suit, litigation or other proceeding pending or threatened against or involving Borrower in any court or before or by any agent or regulatory body which could result in a judgment or liability against Borrower or which could adversely affect any material assets of Borrower or Borrower's income or right to carry on Borrower's business as now conducted or as intended to be conducted. Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or regulatory body.

(i)     Neither the execution of, nor the consummation of the transactions and borrowing of the Loan contemplated by this Agreement, nor compliance with the terms and provisions of this Agreement (i) will conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any of the terms, conditions, or provisions of any agreement (including, without limitation, any agreements with any insurance carriers and organizational documents of the Borrower), lease, indenture, mortgage, license or other instrument to which Borrower is or will be a party or by which Borrower or any of Borrower's assets are or may be bound or affected or to



Page 8 of 26

which Borrower is subject, or any law, regulation, order, writ, injunction or decree of any court or agency or regulatory body having jurisdiction, (ii) result or require the creation or imposition of any lien or other encumbrance upon any of the properties or assets of the Borrower (other than liens and other encumbrances in favor of Oak Street), (iii) result in any default, non-compliance, suspension, revocation, impairment, forfeiture or nonrenewal of any permit, license, authorization or approval applicable to the Borrower's operations or its properties, or (iv) require any approval of the stockholders, members or partners or any other person under any contractual obligation of the Borrower, except, in each case, for such approvals or consents which have been obtained and are in full force and effect.

(j)     Borrower and/or, to Borrower's knowledge, each insurance carrier or any other applicable party is not in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any material contract or agreement to which Borrower is a party, and no condition exists, which with the giving of notice or lapse of time or both, could constitute such a default. There are no outstanding claims of breach or indemnification or notice of default or termination with respect to any such contracts or agreements.

(k)     Borrower has timely filed all tax returns and reports which were required to be filed by Borrower and has paid all taxes, assessments, fees and other governmental charges which are payable by Borrower, in each case when the same have become due and payable. Borrower does not know of any proposed tax assessment against Borrower for which adequate provision has not been made on Borrower's books and which is not being actively contested by Borrower in good faith.

(l)     There are no governmental authorizations, permits, certificates, licenses, filings, registrations, approvals or consents which must be obtained, received or made by Borrower for Borrower to lawfully (i) make, execute and deliver this Agreement; or (ii) perform all of Borrower's obligations under this Agreement.

(m)     Borrower is in compliance with and conformity with all laws, ordinances, rules, regulations and all other legal requirements applicable to Borrower's business and assets, the violation of which would have a material effect on Borrower's business or financial condition. Borrower has not received nor does Borrower have a reasonable basis to expect any order or notice of violation or claim of violation of any law, ordinance, rules or regulation. The properties on which Borrower is conducting Borrower's business are properly zoned for the activities conducted or to be conducted thereon, and all required variances have been obtained, and are in full force and effect with no notice or threat of invalidity, expiration or lapse of any kind.

(n)     Borrower is not "insolvent" within the meaning of that term as defined in Section 101(32) of the Federal Bankruptcy Code.

(o)     All financial statements, commission information, and other financial data which have been or will be furnished Oak Street by Borrower are, and will be true and correct, and reflect and will reflect fairly the financial condition, the results of operations and cash flows (if applicable) of Borrower and have been and will be prepared in accordance with U.S. generally accepted accounting principles consistently applied.

(p)     Borrower, and any Guarantor hereunder, has had the opportunity to engage and consult such legal, financial, technical or other experts and advisors as they deemed necessary or desirable before entering into the Credit Documents. Borrower, and any Guarantor hereunder, acknowledge that after consulting with such counsel and advisors, knowingly, voluntarily and



without duress, coercion, unlawful restraint, intimidation or compulsion, enter into Credit Documents, based upon such advice and counsel and in the exercise of their business judgment, the Credit Documents have been entered into in exchange for good and valuable consideration, receipt of which the parties hereto acknowledge, they have carefully and completely read all of the terms and conditions and provisions of the Credit Documents and are not relying on the opinions or advice of Oak Street or its agents or representatives in entering into the Credit Documents. Borrower, and any Guarantor hereunder, acknowledge that they have, independently and without reliance upon Oak Street and based on such documents and information as they deem appropriate, made their own credit analysis and decision to enter into the Credit Documents and that this is an arms-length transaction. Borrower, and any Guarantor hereunder, also acknowledge that they will, independently and without reliance upon Oak Street and based on such documents and information as they shall from time to time deem appropriate, continue to make their own decisions in taking or not taking action under or based upon the Credit Documents, or any document furnished hereunder or thereunder. Borrower, and any Guarantor hereunder, has performed such due diligence that it deems necessary and appropriate in connection with the loan contemplated hereunder and execution of the Credit Documents. Borrower assumes all risks, including risk of loss, with regard to the Insurance Commissions Collateral . Borrower, and any Guarantor hereunder, hereby agree that (a) they have conducted due diligence into the Insurance Commissions Collateral ; and (b) Oak Street (i) makes no representation or warranty, express or implied, as to the completeness or accuracy of any or any of the information contained therein or any inaccuracy or omission contained in or relating to the any documents or information reviewed by Borrower; and (ii) shall not be liable for any information contained in the documents or information reviewed by Borrower.

All representations and warranties made by Borrower and Guarantors under or in connection with this Agreement or in any other document delivered by Borrower and Guarantors to Oak Street in connection with this Agreement shall be deemed effective as of the Effective Date and shall survive the making of the Loan, notwithstanding any investigation made by Oak Street or on Oak Street's behalf. All statements contained in any termination payment report, commission statement, certificate or financial statement delivered by Borrower and Guarantors to Oak Street under this Agreement shall constitute joint and several representations and warranties made by Borrower and Guarantors hereunder. Borrower and Guarantors acknowledge that Oak Street is relying, and is entitled to rely, upon each of the representations, warranties and covenants of Borrower and Guarantors made or given in this Agreement in determining to enter into this Agreement, to provide the Loan, and to execute, deliver and perform under the other documents, writings and agreements contemplated thereby. Oak Street's obligation to make the Loan shall be subject to and conditioned upon each of the representations and warranties contained in this <u>Section 4</u> being true and correct, unless certain obligations and requirements of the representations and warranties shall be expressly waived by Oak Street in writing.

Further, Borrower and Guarantors acknowledge and agree that they do not have a fiduciary or confidential relationship with Oak Street nor a relationship of trust.

5.  <u>AFFIRMATIVE COVENANTS</u>. Borrower and Guarantor, if any, jointly and severally, if more than one, acknowledge and agree that during the term of this Agreement, Borrower and Guarantor, if any, will at all times, unless Oak Street otherwise consents in writing, comply with the following covenants:

(a)  Service the Insurance Policies and the insurance carriers in the ordinary course of Borrower's business and in a manner necessary to preserve the Insurance Policies and the Insurance Commissions Collateral. Borrower shall not solicit or encourage the termination, non-renewal, cancellation or lapse of any Insurance Policy. Borrower shall notify Oak Street immediately upon



a change in status of any Insurance Policy, Insurance Commissions Collateral or contractual arrangement with any insurance carrier.

(b)       With respect to any electronic termination payment report, commission statements furnished by any insurance company which owes Borrower Insurance Commissions Collateral, Borrower shall grant Oak Street direct access to any such electronic termination payment report, commission statements and, in connection therewith, shall furnish to Oak Street any passwords and/or other information necessary to obtain such access.  If electronic commission information is not available from the carrier, then Borrower shall furnish Oak Street such financial information, including original (manual) termination payment report, commission statements and/or electronic commission statements relating to the Insurance Commissions Collateral, as made available by insurance carrier from time to time.

(c)       Borrower will promptly (and in any event within five (5) Business Days) notify Oak Street upon the occurrence of any of the following:  (i) the receipt by Borrower of any oral or written notice of any default, event of default, or breach purportedly committed by Borrower or the insurance carrier under any of the Agency Agreements; (ii) the receipt by Borrower of any oral or written notice by an insurance carrier of its intention to cancel, terminate, or not renew any of the Agency Agreements; or (iii) the lapse or other termination of any of the Agency Agreements.

(d)       If any Borrower is an entity, upon request by Oak Street, provide Oak Street with audited financial statements prepared on a consistent basis and in accordance with U.S. generally accepted accounting principles.  Such financial statements will be reported by an independent public accountant acceptable to Oak Street (without a "going-concern" or like qualification or exception and without any qualification or exception as to the scope of such audit) to the effect that such consolidated financial statements present fairly in all material respects the financial condition and results of operations of Borrower in accordance with GAAP consistently applied.  The statements will consist of a balance sheet, statement of income, expenses and retained earnings, and a statement of changes in financial position, including footnotes thereto, if any, and any other financial statements prepared by Borrower for distribution to its shareholders and/or creditors or otherwise requested by Oak Street.

(e)       If any Borrower or Guarantor is an individual, upon request by Oak Street, provide Oak Street with personal financial statements.

(f)       Upon request by Oak Street, provide or cause to be provided to Oak Street a copy of any filed federal income tax return of any Borrower or Guarantor, including all exhibits and schedules.

(g)       Permit representatives of Oak Street from time to time to visit and inspect any of its offices and properties, to examine its assets and examine, copy and take extracts from its financial and accounting records and books of account, and to discuss its affairs, finances and accounts with and be advised as to the same by Borrower, its officers and independent accountants, all at such reasonable times and as frequently as Oak Street may desire.  After the occurrence of an Event of Default under Section 8(a) below, Borrower shall provide Oak Street with access to its customers and suppliers.

(h)       Pay and discharge all trade obligations (defined as balances owed to third parties for goods, supplies, and services obtained in the ordinary course of business and purchased on open account) as they mature and all taxes, assessments or other governmental charges or levies before penalties attach, except such as are being appropriately contested in good faith and for which an



adequate reserve for payment is being maintained.

(i)     Maintain adequate insurance as is customarily maintained by similar businesses and otherwise as may be required by the Security Agreements with a provision for thirty (30) days prior notice to Oak Street of any cancellation and stipulating Oak Street as loss payee, provide a detailed list of such insurance to Oak Street upon request, and within thirty (30) days of written notice from Oak Street, obtain such additional insurance as may be reasonably requested.

(j)     Inform Oak Street immediately of any occurrence of any Default or Event of Default, or any other condition or event, including without limitation the commencement of or any development in, any action, suit litigation or other proceeding, which may materially affect Borrower's financial condition, future commissions or fees from insurance carriers, business or future prospects.

(k)     If any Borrower is an entity, maintain Borrower's existence in its current location and in any other jurisdictions in which it is currently or becomes qualified.

(l)     If any Borrower is an individual, maintain such Borrower's residence in its current State of residence.

(m)     Maintain Borrower's financial condition and management (including, without limitation, insurance agents) of such skill and experience as is currently in place and necessary to support fully the Insurance Policies.

(n)     Cause to be provided, upon reasonable notice and request of Oak Street, certificates of good standing issued by the Department of Insurance or other applicable governmental or regulatory bodies with respect to Borrower and applicable insurance carriers.

(o)     Borrower shall use the Loan proceeds solely for business purposes and in compliance with state, federal and local law.

(p)     Borrower shall comply in all respect with (i) all applicable laws, rules and regulations (including, without limitation, insurance, employment, or environmental laws, rules and regulations) now or hereafter applicable to Borrower or any properties owned, leased, operated or used by Borrower, (ii) all agreements and instruments to which Borrower is a party or by which it or any properties owned, leased , operated or used by Borrower may be bound, (iii) all applicable decrees, orders and judgments applicable to Borrower or properties owned, leased , operated or used by Borrower, and (iv) all licenses and permits required by applicable laws, rules and regulations (including, without limitation, insurance, employment, or environmental laws, rules and regulations) for the conduct of Borrower's business or the ownership, use or operation of properties owned, leased , operated or used by Borrower.

(q)     Borrower will execute such additional instruments as may be requested by Oak Street in order to correct any errors or omissions in the Credit Documents, to carry out the intent of the Credit Documents and to perfect or give further assurances of any of the rights, titles, liens or security interests granted or provided for in any of the Credit Documents.

(r)     BORROWER AND GUARANTOR, IF ANY, AGREE TO PROVIDE OAK STREET WITH ADDITIONAL DOCUMENTS AS DEEMED NECESSARY AT OAK STREET'S REQUEST, INCLUDING, WITHOUT LIMITATION, ANY AMENDMENTS OR SUPPLEMENTS TO ANY EXISTING SECURITY AGREEMENT TO REFLECT ANY



Page 12 of 26

ADDITIONAL COLLATERAL WHICH OAK STREET DEEMS NECESSARY IN ITS SOLE DISCRETION.

      6.    <u>NEGATIVE COVENANTS</u>.  During the term of this Agreement, without the prior written consent of Oak Street, Borrower and Guarantor, if any, will:

      (a)    Not, directly or indirectly, convey, lease, sublease, sell, transfer, assign or otherwise dispose of, in one transaction or a series of transactions, all or any part of its business, assets or properties of any kind whatsoever, whether real, personal or mixed and whether tangible or intangible, whether now owned or hereafter acquired, including without limitation, the Collateral, to anyone other than Oak Street, or, directly or indirectly, create, incur, assume or permit to exist any lien or other encumbrance on or with respect to any property or asset of any kind of Borrower, whether now owned or hereafter acquired, other than any liens or other encumbrances in favor of Oak Street.

      (b)    Not undertake or agree to any renewal, substitution, or modification of Agency Agreements which would adversely affect the rights or remedies of Oak Street in the Insurance Commissions Collateral.

      (c)    Not, directly or indirectly, (i) make or own any investments (including without limitation any direct or indirect loans, advances or capital contributions) in any person, including any joint venture, (ii) enter into any transaction or merger or consolidation, or liquidate, wind up or dissolve itself (or suffer any liquidation or dissolution); or (iii) acquire, by purchase or otherwise, the business, property or fixed assets of, or stock or other evidence of beneficial ownership of, any person or entity or business unit thereof.

      (d)    Not make or permit any change in Borrower's ownership.

      (e)    Not change Borrower's name or do business under any trade names except as previously disclosed in writing to Oak Street, or change the location of Borrower's principal office.

      (f)    Not request or receive any funds from any insurance carrier representing an advance on any Insurance Policies.

      (g)    Not request or re-direct any of the Insurance Commissions Collateral to any party other than Oak Street.

      (h)    Not change or alter any of the Producer Codes with respect to the Insurance Commissions Collateral.

      (i)    Not make or permit to exist any commercial loans or other extensions of credit from any person or entity (except for Oak Street) to Borrower in an aggregate principal amount in excess of $10,000 without Oak Street's prior written consent, nor will Borrower make any loans or any other extensions of credit to any Guarantor or any other party in an aggregate principal amount in excess of $10,000 without Oak Street's prior written consent;

      (j)    Not (a) purchase or redeem any of its equity interests or any warrants, options or other rights in respect thereof, (b) pay any management fees or similar fees to any of its equity holders or any affiliate of such equity holders or any affiliate of Borrower, (c) pay compensation whether in the form of salary or bonuses to any equity holder or any affiliated person which exceeds



Page 13 of 26

that paid in the prior fiscal year, subject to an annual increase of not greater than ten percent (10%) per year, (d) make any distribution or dividend (other than stock dividends), whether in cash or otherwise, to any of its equity holders which exceed in any year more than (i) the incremental income taxes of equity holders which arise from the attribution to them for tax purposes of Borrower's net income for such year ("Tax Distributions"), plus (ii) fifty percent (50%) of Borrower's remaining net income for such year after giving effect to a deduction for Tax Distributions for such year.

(k) Not purchase, start-up, own, or operate a business related to the insurance industry which, in any way, competes with the Borrower's business or otherwise has or could have an impact on the Insurance Commissions Collateral as determined by Oak Street in its sole discretion.

(l) Not enter into, or cause, suffer or permit to exist, directly or indirectly, any arrangement, transaction or contract with any of Borrower's affiliates unless such arrangement, transaction or contract is on an arm's length basis and on commercially reasonable terms.

(m) Not allow the creation of any lien on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any Guarantor hereof including, without limitation, the Collateral or any property held in the CCA.

i.

7. <u>CONDITIONS PRECEDENT TO OAK STREET'S OBLIGATIONS.</u>

(a) Oak Street shall have no obligation to make the Loan until such time as it, in its exclusive discretion, shall deem each of the following conditions to have been met by Borrower or Guarantors, as applicable, or such conditions have been waived in writing by Oak Street (any and all of the documents to be executed and delivered to Oak Street by Borrower or Guarantors, as applicable, described below hereinafter collectively referred to as "Credit Documents"):

i. Execution and delivery of one (1) copy of this Agreement by Borrower and Guarantor, if any.

ii. Execution and delivery of one (1) copy of a Security Agreements and any other document required to be delivered in connection with such Security Agreements.

iii. Execution and delivery of one certificate(s) and resolutions by an authorized officer of any entity which is a party to any of the Credit Documents necessary to establish that Oak Street has received current versions of the organizational documents of any such entity and that the governing body of any such entity has authorized the incurrence of the Loan or the guarantee thereof and specifying the names and capacities of those persons authorized to execute the Credit Documents.

iv. A current certificate of existence or good standing as applicable for any entity which is a party to the Credit Documents issued by the relevant state authority in which such entity is organized, and in which it is (or is legally required to be) qualified as a foreign entity to do business.



v.      Execution and delivery of one (1) copy of a Continuing Guarantee by Guarantor(s).

vi.      Execution and delivery of one (1) copy of such documents as are deemed necessary by Oak Street to effectuate the re-direction of Borrower's commission payments into the CCA, including, if requested by Oak Street, agreements with applicable insurance carriers.

vii.      If requested by Oak Street, an assignment of commissions without any liability for servicing obligations with respect to all Insurance Policies which generate Insurance Commissions Collateral in any form required by the insurance company issuing such Insurance Policies in order to effectuate an assignment of Insurance Commissions Collateral.

viii.      Execution and delivery of one (1) copy of the Control Agreement by Borrower, (and Guarantor, if required by Oak Street), Oak Street and the CCA Bank.

ix.      UCC-1 Financing Statements shall have been filed on the Collateral, at Borrower's expense, in each of the jurisdictions required by Oak Street.

x.      Such other documents as Oak Street may require in its reasonable discretion to be executed and/or delivered by Borrower, or any Guarantor (prior to or following funding of the Loan).

xi.      Borrower has paid all closing fees and Origination Fees.

xii.      All financing statements, liens and encumbrances have been released.

(b)      Oak Street shall have no obligation to make any Loan and to disburse to Borrower until such time as it, in its exclusive discretion, shall deem each of the following conditions to have been met by Borrower and Guarantor, if any, or such conditions have been waived in writing by Oak Street:

i.      All representations and warranties contained in Section 4 and in the other Credit Documents remain true and correct, and Borrower and Guarantor, if any, are in compliance with the affirmative and negative covenants in Sections 5 and 6.

ii.      There is no Default or Event of Default and no Default or Event of Default would result from such proposed Loan.

iii.      All conditions set forth in Section 7(a) above shall continue to be satisfied by Borrower or any Guarantor, as applicable, as of the date upon which any Loan is to be made, or such conditions shall have been expressly waived in writing by Oak Street.

iv.      No change shall have occurred in any law or regulations thereunder or interpretations thereof that in the opinion of Oak Street would make



Page 15 of 26

it illegal for Oak Street to make such Loan.

v.       All proceedings in connection with the transactions contemplated by this Agreement and the other Credit Documents shall be satisfactory to Oak Street in form and substance, and Oak Street shall have received all information and such counterpart originals or certified copies of such documents and such other certificates or documents as Oak Street may require.

vi.       There has been no material adverse change in Borrower's business.

8.       DEFAULTS-REMEDIES. The Loan shall, at the option of Oak Street, immediately mature and become due and payable, without notice of any kind except as expressly set forth below, upon the occurrence of any one or more of the following events, each of which for purposes of this Agreement, shall be defined as an "Event of Default":

(a)       Any installment of principal or interest due with respect to the Loan or of any other debt owed by Borrower or any Guarantor to Oak Street shall remain unpaid after becoming due.

(b)       Any representation, warranty or other agreement made in connection with this Agreement, any other Credit Document or any other agreement executed by Borrower or any Guarantor relating to any other debt owed by Borrower or Guarantor to Oak Street shall be materially false or incorrect at the time made or deemed to be made.

(c)       Any breach by Borrower or any Guarantor of one or more of the Negative Covenants set forth in Section 6.

(d)       Failure of Borrower to comply with the obligations set forth in Section 2(f).

(e)       A default by Borrower, any Guarantor hereunder, any of Borrower's affiliated entities, or any entity which has common ownership with Borrower, under any other agreement(s), including, without limitation, the other Credit Documents, with Oak Street if left uncured for thirty (30) days.

(f)       Any failure by Borrower or any Guarantor to keep or comply with any other provision of this Agreement, or other Credit Document for a period of ten (10) days after receipt of notice of noncompliance provided by Oak Street.

(g)       Borrower or any Guarantor becomes unable or admits in writing its inability or fails generally to pay its debts as they become due.

(h)       The commencement of any proceedings in a court of competent jurisdiction by or against Borrower or any Guarantor seeking an order (i) for relief under the Federal Bankruptcy Code or establishing the insolvency of Borrower or any Guarantor, (ii) appointing a trustee, receiver or other custodian of Borrower or any Guarantor or of any substantial part of Borrower's or any Guarantor's property, or (iii) approving or effecting an arrangement for the liquidation, dissolution, winding up or reorganization of Borrower or any Guarantor pursuant to the Federal Bankruptcy Code, or any other law for the relief of debtors, or seeking judicial modification or alteration of the rights of Oak Street hereunder or under the Loan; and any such proceedings described in clauses (i), (ii), or (iii) shall not be dismissed, any such receiver, trustee or other custodian shall not be discharged, or jurisdiction with a court shall not be relinquished or vacated



or stayed on appeal or otherwise within thirty (30) days from commencement of any such proceedings; or (iv) Borrower or Guarantor shall file any petition, commence any proceedings or take or consent to any other action seeking any such judicial order described in clauses (i), (ii) or (iii) preceding, or (v) Borrower or any Guarantor shall make an assignment for the benefit of Borrower's creditors, or (vi) Borrower or any Guarantor shall become insolvent, or admit in writing the inability to pay their respective debts and obligations generally as they become due, or (vii) (A) Borrower or any Guarantor shall have failed within thirty (30) days to pay or otherwise discharge any one or more judgments, orders or attachments for the payment of money against such Borrower or Guarantor exceeding Ten Thousand Dollars ($10,000.00) in the aggregate, except those which are being contested in good faith and enforcement or execution of which has been stayed and for which adequate reserves in accordance with generally accepted accounting principles for the payment thereof are maintained or (B) any one or more non-monetary judgments that have, or could reasonably be expected to have, a material adverse effect on the Borrower's or any such Guarantor's business, operations, properties, assets, condition (financial or otherwise) or prospects and, in either case, (x) enforcement proceedings are commenced by any creditor upon such judgment or order, or (y) there is a period of thirty (30) consecutive days during which a stay of enforcement of such judgment, by reason of a pending appeal or otherwise, is not in effect.

(i)     The death, legal incompetence, long term disability, or dissolution of Borrower or of any Guarantor hereunder.

(j)     Any one or more of the Credit Documents shall be canceled, terminated, revoked or rescinded otherwise than in accordance with the terms thereof or with the express prior written consent of Oak Street, or any action at law, suit in equity or other legal proceeding to cancel, revoke or rescind any of the Credit Documents shall be commenced by or on behalf of Borrower or any Guarantor, or any governmental authority of competent jurisdiction shall make a determination that, or issue a judgment, order, decree or ruling to the effect that, any one or more of the Credit Documents is illegal, invalid or unenforceable in accordance with the terms thereof; or Borrower or any Guarantor denies that it has any further liability or obligation under any Credit Document, or purports to revoke, terminate or rescind any Credit Document.

(k)     Any security interest or lien granted in the Collateral under any of the Credit Documents shall at any time fail to constitute a valid and perfected security interest and lien (or the equivalent thereof under applicable laws) on all of the Collateral purported to be subject thereto, securing the obligations purported to be secured thereby, with the priority required by the Credit Documents, or Borrower or any Guarantor or any of its/their respective affiliates shall so assert in writing.

(l)     The creation of any lien on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any Guarantor hereof including, without limitation, any property held in the CCA or with respect to a termination payment.

(m)     Election by Borrower, any Guarantor hereunder, any of Borrower's affiliated entities, or any entity which has common ownership with Borrower, to receive a termination payment.

(n)     A default by Borrower, any Guarantor hereunder, any of Borrower's affiliated entities, or any entity which has common ownership with Borrower, under any agreement(s) with Oak Street.



(o)     Any material adverse change in Borrower's or any Guarantor's business or financial condition, as determined by Oak Street in its reasonable discretion.

Upon the occurrence of an Event of Default, or at any time such Event of Default is continuing, Oak Street may, at its option, take any one or more of the following actions:

(i)     declare all amounts due under this Agreement to be immediately due and payable, including, but not limited to, the Prepayment Premium, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower.

(ii)     demand that Borrower, any Guarantor hereunder, any of Borrower's affiliated entities, or any entity which has common ownership with Borrower, produce all commission statements from Allstate Insurance Company and elect to receive any and all termination payment(s), which termination payment(s) shall be paid directly to Oak Street.

(iii)     thereupon or at any time or times thereafter, sell or take possession of any Collateral then held, or any part thereof and any substitute therefor and any additions thereto, at any public or private sale, without notice, advertisement, or demand of any kind, except as required by law.

(iv)     apply the Collateral or the net proceeds of the disposition of any Collateral, after deducting all costs and expenses for custody, preservation and collection, sale and delivery, to the payment of the Loan, the Prepayment Premium, or of any or all other liabilities of Borrower to Oak Street, returning the residual, if any, to Borrower on demand.

Further, upon the occurrence of an Event of Default, Borrower and any Guarantor hereof agree that:

(v)     Upon written demand by Oak Street, to turnover all Collateral to Oak Street for sale, lease or other disposition of any or all of the Collateral in its present condition.

(vi)     The Collateral is perishable and threatens to decline speedily in value due to the personal nature of such collateral and is of a type customarily sold in a recognized market.

(vii)     They waive notice of disposition of any Collateral.

(viii)     Oak Street may purchase any of the Collateral at any such private or public sale.

(ix)     In addition to the rights granted herein, Oak Street shall have and may exercise any and all rights and remedies now or hereafter provided by law for the holder of a security interest or granted under any other document delivered in connection herewith, including, but not limited to, sending letters to account debtors such as those insurance carriers set forth on Schedule A hereto to collect any Collateral directly.

(x)     They will not solicit any of Borrower's customers or book of business as such customers or book of business are part of the Collateral for a period of two (2) years from each and every occurrence of an Event of Default. They acknowledge that any such



solicitation, whether personally, through another entity, or via alternative producers codes or carriers will be considered conversion of the Collateral from Oak Street.

9.    EXPENSES, REIMBURSEMENT, AND INDEMNIFICATION.

(a)    Borrower and any Guarantor shall pay: (i) all reasonable out-of-pocket expenses incurred by Oak Street, including the reasonable fees, charges and disbursements of attorneys for Oak Street (whether outside counsel or the allocated costs of its internal legal department), in connection with its underwriting activities, in connection with the credit facilities provided for herein, and/or preparation, administration, and documentation of this Agreement, the Loan and related Credit Documents, or any amendments, modifications or waivers of the provisions thereof (whether or not the transactions contemplated hereby or thereby shall be consummated), and/or perfecting any lien; (ii) all out-of-pocket expenses incurred by Oak Street, including the fees, charges and disbursements of any attorneys for Oak Street (whether outside counsel or the allocated costs of its internal legal department), in connection with the enforcement, collection or protection of its rights in any way related to the Loan and Credit Documents, including its rights under this Section 9 and/or in the collection of the Loan, as well as all other obligations and liabilities of Borrower to Oak Street as a result of the occurrence of an Event of Default hereunder or in the pursuit of any remedy of Oak Street available to it under or pursuant to the Loan or any of the Credit Documents, both before and after entry of a judgment, whether inside or outside of bankruptcy, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations with respect to this Agreement, the Loan and Credit Documents (whether inside or outside of bankruptcy) being reimbursed by the Borrower under this Section 9, include without limiting the generality of the foregoing, costs and expenses incurred in connection with: (a) filed examinations and preparation of reports based on fees charged by a third party retained by Oak Street or the internally allocated fees for such persons employed by Oak Street; (b) background and/or credit checks; (c) taxes, fees and other charges for lien and title search and filing of financing statements and continuations, and other actions to perfect, protect and continue Oak Street's liens; (d) sums paid or incurred to take any action required of the Borrower, which the Borrower fails to take; and (e) forwarding loan proceeds, collecting checks and other items of payment, and preserving and protecting the Collateral.

(b)    Borrower and any Guarantor shall at all times protect, indemnify, defend and save harmless Oak Street from and against any and all claims, actions, suits and other legal proceedings, and liabilities, damages, costs, interest, charges, filing fees and taxes, expenses relating to title, stamp, mortgage or other taxes and liabilities for delays in paying them, counsel fees and disbursements and other expenses and penalties of which Oak Street may at any time sustain or incur by reason of or in consequence of or arising out of the execution and delivery of, the consummation of the transactions contemplated by, or the amendment or modification of, or any waiver or consent under or in respect of the Loan or any of the Credit Documents. The provisions of this Section 9 shall survive the payment of the Loan and the termination of this Agreement.

(c)    Borrower and any Guarantor acknowledge and agree that during the course this Loan, potential buyers may communicate or request certain information relating to the Loan Documents and debt with Oak Street or certain information relating to the Collateral and insurance carriers. Borrower and any Guarantor acknowledge and agree that if Borrower or any Guarantor makes a written request to Oak Street to communicate with or provide any information to a potential buyer, such buyer will be required to sign a confidentiality agreement as administered by Borrower (a copy of which shall be provided to Oak Street). Further, Borrower and any Guarantor agree to release, hold harmless, defend and indemnify Oak Street from, for and against all actual or threatened claims, costs, demands, orders, losses, lawsuits, liabilities, damages (including, without



Page 19 of 26

limitation all consequential damages) and expenses whether incurred directly or indirectly by Borrower or any Guarantor arising from or in any way related to communicating with or providing such requested information to potential buyers.

10.     SEVERABILITY.  In case any one or more of the provisions contained in the Agreement shall be invalid, illegal or unenforceable in any respects, the validity, legality or enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

11.     NOTICES.  Any notice under this Agreement to Borrower or to Oak Street shall be in writing and, if delivered by hand, shall be deemed to have been given when delivered, if emailed, when sent, and, if mailed, shall be deemed to have been given on the earlier of receipt or three (3) days after the date when sent by registered or certified U.S. Mail, postage prepaid, and addressed to Borrower or Oak Street or other holder at its address shown below or at such other address as such party may, by written notice to the other, have designated as its address for such purposes.

If to Oak Street:

        Oak Street Funding LLC
        8888 Keystone Crossing
        Suite 1700
        Indianapolis, IN 46240
        Attn:  Richard S. Dennen, President
        Fax:  (317) 428-3801
        Email ▮▮▮▮▮▮▮▮▮▮▮▮▮

If to Borrower:

        Jesus Pineda
        12592 ARROW WEED DR
        EL PASO, TX  79928-5866
        Fax: (915) 790-2620
        Email ▮▮▮▮▮▮▮▮▮▮▮▮▮

12.     INTEREST RATE LIMITATIONS.  Notwithstanding anything herein or in the Credit Documents to the contrary, no provision contained herein and no provision contained in any of the Credit Documents which purports to obligate Borrower to pay any amount of interest or any fees, costs or expenses which are in excess of the maximum permitted by applicable law, shall be effective to the extent that it requires the payment of any interest or other sums in excess of such maximum.  In the event Borrower shall at any time following the Effective Date pay any amount of interest or any fees, costs or expenses which are in excess of the maximum permitted by applicable law, such overpayments shall be deemed to be loans from Borrower to the holder hereof, which loans shall be due and payable by the holder upon demand by Borrower together with interest from the date or dates of such overpayments calculated at the same rate as Borrower is required to pay under this Agreement, and the repayment of such loans by the holder hereof shall be the sole remedy at law or in equity of Borrower for such overpayments.

13.     WAIVER OF VARIOUS RIGHTS.  Borrower hereby waives all rights of valuation and appraisement in connection with or arising out of any of the Credit Documents delivered in accordance with this Agreement including without limitation this Agreement, or the validity, protection, interpretation, collection or enforcement thereof, or any other claim or dispute howsoever arising between Borrower and Oak Street.  Borrower waives acceptance or notice of acceptance hereof and agrees that the Agreement, and all of the other Credit Documents shall be fully valid, binding, effective, and enforceable as of the



Effective Date even though this Agreement and any one or more of the other Credit Documents which require the signature of Oak Street, may be executed by or on behalf of Oak Street on other than the Effective Date. Borrower waives any right to consequential damages and to require Oak Street to marshal any assets in favor of Borrower, any other creditor of Borrower or any other person claiming any rights by or through Borrower to any of the collateral in which Oak Street has a security interest. Borrower further waives any right to bring a cause of action against Oak Street for any alleged negligent misrepresentations arising out of or in any way relating to the Credit Documents.

14.     OTHER AGREEMENTS. This Agreement and the other Credit Documents shall be construed consistently with each other in order to best effectuate the intent of Borrower and Oak Street in entering into the relationships contemplated by all these agreements. The agreements referenced herein constitute the sole and entire agreement of the parties and no statement or promise has been made with respect to the subject matter of these agreements other than is expressed herein. In the event of a conflict between the terms of this Agreement and any of the other Credit Documents, the provisions of this Agreement shall control.

15.     GOVERNING LAW. This Agreement and the Credit Documents are submitted by Borrower and Guarantors to Oak Street for Oak Street's acceptance or rejection at Oak Street's principal place of business in the State of Indiana as an offer by Borrower to borrow monies from Oak Street now and from time to time hereafter, and shall not be binding upon Oak Street or become effective until accepted by Oak Street, in writing, at said place of business in the State of Indiana. If so accepted by Oak Street, this Agreement and the other Credit Documents shall be deemed to have been made at said place of business. This Agreement has been executed and delivered and is intended to be performed in the State of Indiana and shall be governed, construed and enforced in all respects in accordance with the substantive laws of the State of Indiana without regard to conflict of law provisions.

16.     HEADINGS. The section headings used in this Agreement are for convenience only and shall not be read or construed as limiting the substance or generality of this Agreement.

17.     ELECTRONIC REPORTS. Oak Street may elect, from time to time, to receive certain information, including reports, otherwise required by the terms of this Agreement or the other Credit Documents ("Reports") from Borrower or Guarantor via electronic mail transmission ("e-mail"). Oak Street will designate from time to time its e-mail address to Borrower and Guarantor (the "Oak Street E-mail Address"). All e-mail transmissions of Reports from Borrower or Guarantor shall contain the information as specified in this Agreement, shall be formatted or displayed in a manner and order substantially similar to that shown in this Agreement or otherwise required by Oak Street and shall conform to the specifications described in this Agreement. Borrower and Guarantor will be solely responsible for the confidentiality of the contents of its e-mail transmissions during transmission to the Oak Street E-mail Address, and neither Borrower nor Guarantor shall assert claims against Oak Street or its affiliates arising out of the use of the internet to communicate or to transmit information and documentation. Borrower and Guarantor will be responsible for the accuracy of all information provided to Oak Street via e-mail transmission to the Oak Street E-mail Address, and any information so received by Oak Street will be deemed to have been submitted by and received from Borrower or Guarantor in accordance with this Agreement or the other Credit Documents, including all representations and warranties applicable to such information as set forth in this Agreement and the other Credit Documents as if sent in paper form. Each Borrower and Guarantor consents to and represents that, by Borrower's or Guarantor's insertion of a Borrower's or Guarantor's name in the subject line of the transmitting e-mail, or on the Reports (including the header and/or the certification line), each Borrower and Guarantor intends such to constitute a legally binding and enforceable signature of Borrower and Guarantor and, in all aspects, the legal equivalent of Borrower's and Guarantor's handwritten signature.



Page 21 of 26

18.    SUCCESSORS AND ASSIGNS.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that (i) Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of Oak Street (and any attempted assignment or transfer by Borrower without such consent shall be null and void) and (ii) Oak Street may assign its rights and obligations hereunder and under the other Credit Documents in connection with Oak Street funding its obligations hereunder, and Borrower hereby consents to such assignment by Oak Street.

19.    SURVIVAL.  All representations, warranties, and covenants of Borrower herein or any certificate, agreement or other instrument delivered by or on Borrower's behalf under this Agreement shall be considered to have been relied upon by Oak Street and shall survive the making of the Loan and delivery to Oak Street of this Agreement.  All statements and any such certificate or other such instrument shall constitute warranties and representations hereunder by Borrower, as the case may be.

20.    COUNTERPARTS.  This Agreement may be signed in one or more counterparts, each of which shall be considered an original, with the same effect as if the signatures were upon the same instrument.

21.    MODIFICATION.  The parties hereto may amend, modify, renew or extend this Agreement only by written instrument executed by both parties and in the manner of its original execution.

22.    **SUBMISSION TO JURISDICTION.    BORROWER IRREVOCABLY (A) ACKNOWLEDGES THAT THIS AGREEMENT WILL BE ACCEPTED BY OAK STREET AND PERFORMED BY BORROWER IN THE STATE OF INDIANA; (B) EXPRESSLY SUBMITS IN ADVANCE TO THE JURISDICTION OF THE SUPERIOR OR CIRCUIT COURTS OF HAMILTON COUNTY, INDIANA OR FEDERAL COURTS SITTING IN THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF INDIANA (COLLECTIVELY, THE "COURTS") OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE OTHER CREDIT DOCUMENTS, INCLUDING, BUT NOT LIMITED TO ALL EVENTS PRECEDING EXECUTION THEREOF, AS WELL AS ANY COUNTERCLAIMS OR LENDER LIABILITY ACTIONS (INDIVIDUALLY, AN "AGREEMENT ACTION") OR IN ANY OTHER FORUM SELECTED BY OAK STREET; (C) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION OR DEFENSE THAT BORROWER MAY NOW OR HEREAFTER HAVE BASED ON IMPROPER VENUE, LACK OF PERSONAL JURISDICTION, INCONVENIENCE OF FORUM OR ANY SIMILAR MATTER IN ANY AGREEMENT ACTION BROUGHT IN ANY OF THE COURTS; (D) AGREES THAT FINAL JUDGMENT IN ANY AGREEMENT ACTION BROUGHT IN ANY OF THE COURTS SHALL BE CONCLUSIVE AND BINDING UPON BORROWER AND MAY BE ENFORCED IN ANY OTHER COURT TO THE JURISDICTION OF WHICH BORROWER IS SUBJECT BY A SUIT UPON SUCH JUDGMENT; (E) CONSENTS TO THE SERVICE OF PROCESS ON BORROWER IN ANY AGREEMENT ACTION BY THE MAILING OF A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO BORROWER AT BORROWER'S ADDRESS DESIGNATED IN OR PURSUANT TO SECTION 11; (F) AGREES THAT SERVICE IN ACCORDANCE WITH SECTION 11 SHALL IN EVERY RESPECT BE EFFECTIVE AND BINDING ON BORROWER TO THE SAME EXTENT AS THOUGH SERVED ON BORROWER IN PERSON BY A PERSON DULY AUTHORIZED TO SERVE SUCH PROCESS; AND (G) AGREES THAT THE PROVISIONS OF THIS SECTION, EVEN IF FOUND NOT TO BE STRICTLY ENFORCEABLE BY ANY COURT, SHALL CONSTITUTE "FAIR WARNING" TO BORROWER THAT BY EXECUTION OF THIS AGREEMENT BORROWER HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INITIATED BY BORROWER AND**



ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT OR CREDIT DOCUMENTS, INCLUDING ANY COUNTERCLAIMS OR LENDER LIABILITY ACTIONS, SHALL BE LITIGATED IN THE SUPERIOR OR CIRCUIT COURTS OF HAMILTON COUNTY, INDIANA, OR AT OAK STREET'S DISCRETION IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA. THE EXCLUSIVE CHOICE OF FORUM FOR BORROWER SET FORTH IN THIS SECTION SHALL NOT BE DEEMED TO PRECLUDE THE ENFORCEMENT, BY OAK STREET, OF ANY JUDGMENT OBTAINED IN ANY OTHER FORUM OR THE TAKING, BY OAK STREET, OF ANY ACTION TO ENFORCE THE SAME IN ANY OTHER APPROPRIATE JURISDICTION, AND BORROWER HEREBY WAIVES THE RIGHT, IF ANY, TO COLLATERALLY ATTACK ANY SUCH JUDGMENT OR ACTION.

23.    **ARBITRATION**.  Borrower and any Guarantor hereof agree, upon demand by Oak Street, to submit to binding arbitration all claims, disputes and controversies between or among them (and their respective employees, officers, directors, attorneys, and other agents), whether individual, joint, or class in nature, whether in tort, contract or otherwise, in any way arising out of or relating to the Credit Documents and the negotiation, execution, collateralization, administration, repayment, modification, extension, substitution, formation, inducement, enforcement, default or termination thereof.

(a)    <u>Governing Rules</u>.  Any arbitration proceeding will (i) proceed in a location in Indiana selected by the American Arbitration Association ("AAA"); (ii) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between the parties; and (iii) be administered by the AAA, or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's Commercial Arbitration Rules, unless the claim or counterclaim is greater than $1,000,000.00 exclusive of claimed interest, arbitration fees and costs in which case the arbitration shall be conducted in accordance with the AAA's Procedures for Large, Complex Commercial Disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes to be referred to herein, as applicable, as the "Rules").  If there is any inconsistency between the terms hereof and the Rules, the terms and procedures set forth herein shall control.  Any party who fails or refuses to submit to arbitration following a demand by any other party shall bear all costs and expenses incurred by such other party in compelling arbitration of any dispute.

(b)    <u>No Waiver of Provisional Remedies, Self-Help and Foreclosure</u>.  The arbitration requirement does not limit the right of any party to (i) seek, use, and employ ancillary or preliminary remedies, judicial or otherwise, for the purpose of realizing upon, preserving, protecting, foreclosing or proceeding under forcible entry and detainer for possession of the Collateral, and any such action shall not be deemed an election of remedies; (ii) foreclose against or dispose of real or personal property collateral; (iii) exercise self-help remedies relating to collateral or proceeds of collateral such as setoff or repossession; or (iv) obtain provisional or ancillary remedies such as replevin, injunctive relief, attachment or the appointment of a receiver, before during or after the pendency of any arbitration proceeding.  This exclusion does not constitute a waiver of the right or obligation of any party to submit any dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in sections (i) – (iv) of this paragraph.  Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise any agreement relating to the Collateral, shall also be arbitrated, provided, however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party.

(c)    <u>Arbitrator Qualifications and Powers</u>.  Any arbitration proceeding in which the



amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who shall not render an award of greater than $5,000,000.00. Any dispute in which the amount in controversy exceeds $5,000,000.00 shall be decided by majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations. The arbitrator (and arbitrators, if more than one) will be a neutral attorney licensed in the State of Indiana or a neutral retired judge of the state or federal judiciary of Indiana, in either case with a minimum of ten years' experience in the substantive law applicable to the subject matter of the dispute to be arbitrated, shall be neutral, and shall be chosen by mutual agreement of the parties; however, if the parties cannot agree to an arbitrator (or arbitrators), the parties shall use the method outlined in by the AAA. The arbitrator will determine whether or not an issue is arbitrable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator shall resolve all disputes in accordance with the substantive law of Indiana and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator shall also have the power to award recovery of all costs and fees, to impose sanctions and to take such other action as the arbitrator deems necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure or other applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief.

(d)   Discovery. In any arbitration proceeding, discovery will be permitted in accordance with the Rules. All discovery shall be expressly limited to matters directly relevant to the dispute being arbitrated and must be completed no later than 20 days before the hearing date. Any requests for an extension of the discovery periods, or any discovery disputes, will be subject to final determination by the arbitrator upon a showing that the request for discovery is essential for the party's presentation and that no alternative means for obtaining information is available.

(e)   Class Proceedings and Consolidations. No party hereto shall be entitled to join or consolidate disputes by or against others in any arbitration, except parties who have executed the Credit Documents or any other contract, instrument or document relating to thereto, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity. Borrower hereby waives any right to a class action claim or mass action claim.

(f)   Payment Of Arbitration Costs And Fees. The arbitrator shall award all costs and expenses of the arbitration proceeding, including attorneys' fees.

(g)   Miscellaneous. To the maximum extent practicable, the AAA, the arbitrators and the parties shall take all action required to conclude any arbitration proceeding within 180 days of the filing of the dispute with the AAA. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. If more than one agreement for arbitration by or between the parties potentially applies to a dispute, the arbitration provision most directly related to the documents between the parties or the subject matter of the dispute shall control. This arbitration provision shall survive termination, amendment or expiration of any of the documents or any relationship between the parties. The statute of



limitations, estoppel, waiver, laches and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of any action for these purposes.

(h)     In connection with the arbitration proceeding, the arbitrator shall have the power to order the production of documents by each party and any third-party witnesses, the taking of a reasonable number of depositions per party with reasonable time limitations, and such other discovery procedures and limits as are reasonable and intended to facilitate the resolution of any such disputes in a fair, timely and efficient manner. The arbitrator shall issue such orders promptly upon request therefor from a party. In connection with any arbitration, each party shall provide to the other, no later than seven (7) business days before the date of the arbitration hearing, the identity of all persons that may testify at the arbitration and a copy of all documents that may be introduced at the hearing or considered or used by a party's witness or expert. The arbitrator's decision and award shall be made and delivered within thirty (30) days of the close of the arbitration hearing. The arbitrator's decision shall set forth a reasoned basis for any award of damages or finding of liability, including findings of fact upon which the arbitrator's decision is based. The decision of the arbitrator on the points in dispute will be final, unappealable and binding and judgment on the award may be entered by any federal or state court of competent jurisdiction.

(i)     The arbitrator shall not have power to award damages in excess of actual compensatory, consequential, and incidental damages and shall not multiply actual damages or award punitive damages or any other damages that are specifically excluded under this Agreement and each party hereby irrevocably waives any claim to such damages; however, this exclusion does not apply to any claims of conversion by Oak Street as permitted under state law.

(j)     The parties covenant and agree that they will participate in the arbitration in good faith and that they will share equally its costs, except as otherwise provided herein. The arbitrator may in his or her discretion assess costs and expenses (including the reasonable legal fees and expenses of the prevailing party) against any party to a proceeding if the arbitrator determines that such assessment is appropriate under the circumstances to achieve a fair allocation of such costs and expenses taking into account the degree to which the parties acted in good faith. The arbitrator may enter a default final decision against any party who fails to participate in the arbitration proceedings. Any party refusing to comply with a final order or final decision of the arbitrator shall be liable for costs and expenses, including attorneys' fees, incurred by the other party in enforcing the award.

24.     **JURY WAIVER. OAK STREET, BORROWER AND ANY GUARANTOR HEREOF, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT, ANY OTHER CREDIT DOCUMENTS, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY COURSE OF CONDUCT, DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN), ALLEGATIONS OF FRAUD, OR ACTIONS OF EITHER OF THEM, INCLUDING, BUT NOT LIMITED TO ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER OAK STREET, BORROWER AND ANY GUARANTOR AGAINST THE OTHER, WHETHER LEGAL, EQUITABLE OR CONTRACTUAL IN NATURE. NEITHER OAK STREET NOR BORROWER OR GUARANTOR SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A**

■■■■
Page 25 of 26

**JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY EITHER OAK STREET OR BORROWER OR GUARANTOR EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY ALL OF THEM.**

*[The rest of this page intentionally left blank.]*



Page 26 of 26

IN WITNESS WHEREOF, Borrower and Oak Street have caused this Agreement to be executed by their respective duly authorized representatives as of the date set forth above.

*BORROWER:*
**Jesus Pineda**

By: _____

Jesus Pineda


*OAK STREET:*
**OAK STREET FUNDING LLC**


By: _____

Barry Kehl, Executive Director



## SCHEDULE A

### List of Agent Agreement(s) and Producer Code(s)

Carrier
Allstate Insurance Company
Texas FAIR Plan Association



OAK002.002

## MODIFICATION OF CREDIT AGREEMENT
## AND CREDIT DOCUMENTS

This Modification of Credit Agreement and Credit Documents (this "Modification") is made and entered into effective as of April _10_, 2020 by and among **OAK STREET FUNDING LLC**, a Delaware limited liability company ("Oak Street"), and **JESUS PINEDA,** a resident of Texas  (jointly and severally called the "Borrower", whether one or more) and **N/A** (jointly and severally called the "Guarantor", whether one or more (the Borrower and Guarantor are collectively referred to as the "Obligor").

W I T N E S S E T H:

WHEREAS, Oak Street has made one or more loans to the Borrower as identified in the attached Exhibit "A" (collectively, the "Loan");

WHEREAS, the Loan is evidenced, secured, and guaranteed by certain loan documents identified in the attached Exhibit "B" (the "Credit Documents");

WHEREAS, the Guarantor has unconditionally guaranteed the full and prompt repayment of the Loan;

WHEREAS, the Obligors have requested payment relief for the Loan; and

WHEREAS, Oak Street has agreed to provide payment relief on the Loan, subject to the terms and conditions set forth in this Modification.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## I.    GENERAL PROVISIONS

1.    **Representations and Warranties.**  In order to induce Oak Street to enter into this Modification, the Obligor hereby represents and warrants to Oak Street that:

(a)    each of the foregoing recitals is true and correct;

(b)    all of the representations, warranties and covenants in the Credit Agreement and the balance of the Credit Documents are true and complete in all material respects on the date hereof with the same force and effect as if made on such date, except as expressly set forth herein;

(c)    the Credit Agreement and the balance of the Credit Documents are in full force and effect and the Borrower has no offsets, defenses, claims, causes of action or counterclaims with respect thereto or otherwise against Oak Street; and

(d)    except as may otherwise be expressly referenced herein, there are no other defaults, Events of Default or events which, with the passage of time or the giving of notice, or both, are likely to become an Event of Default under the Credit Agreement or any of the Credit Documents.



## II.    AGREEMENT AND MODIFICATION OF CREDIT AGREEMENT AND OTHER AGREEMENTS

1.    <u>Capitalized Terms</u>.  Capitalized terms used herein that are not otherwise defined shall have the meanings provided by the Credit Documents.

2.    <u>Payment Forbearance Period</u>.  Notwithstanding any terms of the Credit Documents to the contrary, the Borrower shall not be required to make the monthly payments due under the Loan for the period set forth in the attached <u>Exhibit "A"</u> (the "<u>Payment Forbearance Period</u>").  The Borrower's failure to make the regular monthly payments during the Payment Forbearance Period shall not constitute a Default or an Event of Default under the terms of the Credit Documents, and, unless an additional Event of Default shall have occurred, interest shall accrue on the unpaid balance of the Loan during and after the Payment Forbearance Period at the non-default rate of interest provided by the terms of the Credit Documents.  The interest accrued during the Payment Forbearance Period shall be accrued payable by the Borrower on or before the Extended Maturity Date (as such term is hereinafter defined).

3.    <u>Resumption of Regular Principal, Interest and Service Fee Payments</u>.  The Borrower will resume making the principal, interest and service fee payments for the Loan required by the terms of the Credit Documents as of the first payment date after the conclusion of the Payment Forbearance Period on the date listed as the "Resume P&I&S Payments" in the attached <u>Exhibit "A"</u> for the Loan.

4.    <u>Extended Maturity Date</u>.  The applicable Maturity Date for the Loan is hereby extended for three (3) months to the "Extended Maturity Date" set forth in <u>Exhibit "A"</u> for the Loan (the "<u>Extended Maturity Date</u>").

5.    <u>Prime Rate</u>.  In no event shall the Prime Rate be less than Two Point Zero Zero percent (2.00%).

## III.    CONDITIONS PRECEDENT

On or prior to the time and date that Oak Street executes this Amendment, and as a condition to the effectiveness of this Amendment, each of the following conditions precedent shall have been satisfied in the sole judgment of Oak Street:

1.    **Other Amendment Documents.**  Oak Street shall have received, each in form and substance acceptable to Oak Street (together with this Amendment, collectively, the "Amendment Documents"):

(a)    this Amendment duly executed by the Borrower;

(b)    Payment by the Borrower to Oak Street of a $__0_____.

2.    **No Changes.**

(a)    All corporate, limited liability company, governmental and other proceedings in connection with the transactions contemplated on the Effective Date shall have been completed to the reasonable satisfaction of Oak Street; and

(b)    No changes shall have occurred in the assets, liabilities, financial condition, business, or operations of any Borrower, and no changes shall have occurred in the projected assets, liabilities, financial condition, business, operations, or prospects of any Borrower, in each case which, individually or in the aggregate, could reasonably be expected to result in a material adverse effect on the



Borrower, and Oak Street shall have completed such review of the status of all current and pending legal issues as Oak Street shall deem necessary or appropriate.

## IV.   MISCELLANEOUS PROVISIONS

1.      The Borrower represents and warrants to, and covenant with, Oak Street that:

   a.      this Amendment has been duly executed and delivered by the Borrower and constitutes the legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, except as such enforceability may be limited by (i) applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and (ii) general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law); and

   b.      as of the date of this Amendment and except as expressly set forth herein, all of the representations and warranties of the Borrower set forth in the Credit Agreement and the Credit Documents are true and correct in all material respects and no other default or Event of Default under or within the meaning of the Credit Agreement has occurred and is occurring.

2.      In addition to, and without limiting, any other provision of any Credit Document, the Borrower and Oak Street hereby expressly intend that this Amendment is in no way intended, nor shall it be construed to, (a) constitute the refinancing, refunding, payment or extinguishment of the obligations evidenced by the existing Credit Documents; (b) be deemed to evidence a novation of the outstanding balance of the obligations; or (c) adversely affect, impair, or extinguish the creation, attachment, perfection or priority of the liens on the Collateral granted pursuant to any Security Agreement. Without limiting the generality of the foregoing, the Borrower ratifies and reaffirms any and all grants of liens to Oak Street on the Collateral as security for the obligations, and the Borrower acknowledges and confirms that the grants of the liens to Oak Street on the Collateral:  (i) represent continuing liens on all of the Collateral, (ii) secure all of the obligations, and (iii) represent valid, first lien on all of the Collateral.

3.      This Amendment, together with the Credit Agreement and the other Credit Documents, sets forth the entire agreement of the Parties with respect to the subject matter of this Amendment and supersedes all previous understandings, written or oral, in respect of this Amendment.  Except as specifically amended and/or supplemented by this Amendment or the other Credit Documents, all terms of the Credit Agreement and the other Credit Documents are ratified and confirmed and remain in full force and effect.  In the event of a conflict between the terms of the Credit Agreement and the terms of this Amendment, the terms of this Amendment shall control.  The Credit Agreement, as amended and supplemented by this Amendment, will be construed as one agreement.  All references in any of the Credit Documents to the Credit Agreement will be deemed to be references to the Credit Agreement as amended and supplemented by this Amendment.  The headings to the Sections of this Amendment have been inserted for convenience of reference only and shall in no way modify or restrict any provisions hereof or be used to construe any such provisions. This Amendment and the other Credit Documents may be signed by facsimile signatures or other electronic delivery of an image file reflecting the execution hereof or thereof, and, if so signed: (i) may be relied on by each party as if the document were a manually signed original and (ii) will be binding on each party for all purposes.  This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original but all of which, when together, shall

#
Page 4 of 7

constitute one and the same instrument, but none of which counterparts shall become effective unless and until this Amendment is signed by Oak Street and the Borrower.

4.      The parties agree that in order to induce Oak Street to enter into this Amendment and for value received, the receipt and sufficiency of which are hereby acknowledged, the Borrower for itself and its respective directors, officers, shareholders, members, parents, subsidiaries or affiliated entities, employees, agents, representatives, estates, predecessors, successors and assigns, hereby releases and forever discharges Oak Street, and its directors, officers, shareholders, parents, subsidiaries or affiliated corporations, employees, agents, attorneys, representatives, predecessors, successors and assigns, of and from any and all actions, causes of action, suits, proceedings, claims, demands, damages, costs, expenses and liabilities of any kind or nature whatsoever, whether known or unknown, against any and all of them arising from, relating to or involving in any way, directly or indirectly, any act, statement, omission or conduct concerning or related to the Borrower, the Credit Documents, and/or the subject matter of this Amendment occurring prior to the execution of this Amendment.

*[Signatures on following page.]*



Page 5 of 7

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the day and year written above.

*OAK STREET*:
**OAK STREET FUNDING LLC**

By: _____
     Rick Dennen, President

*BORROWER:*
**Jesus Pineda**

By: _____
     Jesus Pineda

*GUARANTOR:*



Page 6 of 7

**EXHIBIT "A"**

**LOAN**

| Loan No. | Original Loan Amount | Payment Forbearance Period (Dates No Payments Required) | Resume Regular P&I&S Payments | Current Maturity Date | Extended Maturity Date |
|---|---|---|---|---|---|
| ▮ | $293,000 | 4/25/2020; 5/25/2020; 6/25/2020 | 7/25/2020 | 2/25/2028 | 5/28/2028 |
|  |  |  |  |  |  |



Page 7 of 7

**EXHIBIT "B"**

**LIST OF CREDIT DOCUMENTS**

1. Credit Agreement dated effective as of February 8, 2018, as amended and modified from time to time.

2. Security Agreements entered by the Borrower and dated effective as of February 8, 2018.

3. Guarantees entered by the Guarantor and dated effective as of February 8, 2018.

4. Such other Credit Documents that evidence, secure, and guarantee the Loan.


Page 5 of 7

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the day and year written above.

*OAK STREÉT*:
**OAK STREET FUNDING LLC**

By: _____

Rick Dennen, President

*BORROWER:*
**Jesus Pineda**

By: _____

Jesus Pineda

*GUARANTOR:*

OAK003



# SECURITY AGREEMENT

This SECURITY AGREEMENT (this "Agreement") is dated as of 8th day of February, 2018, between **JESUS PINEDA**, a resident of Texas (jointly and severally called the "Debtor", whether one or more), and **OAK STREET FUNDING LLC**, a Delaware limited liability company ("Oak Street").

WHEREAS, Debtor and Oak Street have entered into that certain Credit Agreement dated as of even date (as amended and in effect from time to time, the "Credit Agreement"), pursuant to which Oak Street, subject to the terms and conditions contained therein, is to extend credit to the Debtor; and

WHEREAS, it is a condition precedent to Oak Street's extending credit under the Credit Agreement that the Debtor execute and deliver to Oak Street a security agreement in substantially the form hereof; and

WHEREAS, the Debtor wishes to grant security interests in favor of Oak Street as herein provided in order to induce Oak Street to extend credit under the Credit Agreement.

NOW, THEREFORE, in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1.** **Definitions.** All capitalized terms used herein without definitions shall have the respective meanings provided therefor in the Credit Agreement. The term "State", as used herein, means the State of Indiana. All terms defined in the Uniform Commercial Code of the State and used herein shall have the same definitions herein as specified therein. The term "Obligations", as used herein, means all of the indebtedness, obligations and liabilities of the Debtor to Oak Street, individually or collectively, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising under or in respect of the Credit Agreement and the other Credit Documents, as the same may be amended or modified from time to time, any other instruments or agreements executed and delivered pursuant thereto or in connection therewith or this Agreement.

**2.** **Grant of Security Interest.** To secure the prompt and complete payment, performance and observance of all of the Obligations, the Debtor hereby grants, assigns, conveys, mortgages, pledges, hypothecates and transfers to Oak Street a security interest in all of its right, title and interest in, to and under the following properties, assets and rights of the Debtor, wherever located, whether now owned or hereafter acquired or arising (all of the same being hereinafter collectively called the "Collateral"):

(i) all Insurance Policies associated with any Agency Agreements and/or Producer Codes, including, without limitation, any insurance policy commissions and other amounts paid or payable to Debtor with respect to any Insurance Policies associated with any Agency Agreements and/or Producer Codes, together with any and all over-ride commissions, contingent commissions, inspection and claims service fees, other fees bonuses, other income, new policies or expirations, renewals, substitutions or modifications thereof, including, without limitation, any Insurance Commissions Collateral due on or after the date hereof and all commissions due before the date hereof but received on or after the date hereof relating to such Agency Agreements and/or Producer Codes;



(ii)     the CCA and any deposit account at any financial institution into which Insurance Commissions Collateral are deposited, together with all funds and claims to funds represented by such account; and

(iii)    all business personal property of the Debtor of every kind and nature now existing or hereafter acquired, including without limitation all goods (including all inventory, equipment and any accessions thereto), accounts, instruments (including promissory notes), documents (including any warehouse receipts), chattel paper (whether tangible or electronic chattel paper), deposit accounts, all money, cash and cash equivalents, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property (including all commodity accounts and commodity contracts), supporting obligations, contracts (including any insurance agency agreements and related contracts or agreements), any other contract rights or rights to the payment of money, insurance claims and proceeds, commercial tort claims, and all general intangibles including, without limitation, all payment intangibles,  patents, patent applications, trademarks, service marks, trademark and service mark applications, trademark and service mark registrations, trade names, copyrights, copyright applications, copyright registrations, software, websites, domain names, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature pursuant to which the Debtor possesses, uses or has authority to possess or use property (whether tangible or intangible) of others or others possess, use or have authority to possess or use property (whether tangible or intangible) of the Debtor, and all recorded data of any kind or nature related to any of the foregoing, regardless of the medium of recording including, without limitation, all data and software holding any records related to any of the foregoing; and

(iv)    all proceeds and other rights to payment not otherwise included with respect to any of the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.

When used herein the terms "account", "chattel paper", "commercial tort claim", "commodity account", "commodity contract", "deposit account", "document", "electronic chattel paper", "equipment", "fixtures", "goods", "instrument", "inventory", "investment property", "letter-of-credit rights", "payment intangibles", "proceeds", "promissory notes", and "supporting obligations" have the meaning provided in Article 8 or Article 9, as applicable, of the Uniform Commercial Code.

     **3.     Authorization to File Financing Statements.** · The Debtor hereby irrevocably authorizes Oak Street at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of the Debtor or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the State or such Jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail, and (b) contain any other information required by part 5 of Article 9 of the Uniform Commercial Code of the State for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether the Debtor is an organization, the type of organization and any organization identification number issued to the Debtor and, (ii) in the case of a financing statement filed as a fixture filing, a sufficient description of real property to which the Collateral relates.  The Debtor agrees to furnish any such information to Oak Street promptly upon request.  The Debtor also ratifies Debtor's authorization for Oak Street to have filed in any Uniform Commercial Code Jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

     **4.     Other Actions as to any and all Collateral.**  The Debtor agrees to take any action reasonably requested by Oak Street to ensure the attachment, perfection and first priority of, and the ability of Oak Street to enforce, Oak Street's security interest in any and all of the Collateral including, without limitation, (a) executing,



Page 3 of 11

delivering and, where appropriate, filing financing statements and amendments relating thereto under the Uniform Commercial Code, to the extent, if any, that the Debtor's signature thereon is required therefore, (b) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Oak Street to enforce, Oak Street's security interest in such Collateral, (c) obtaining governmental and other third party consents and approvals, including without limitation any consent of any licensor, lessor or other person obligated on Collateral, (d) taking all actions required by any earlier versions of the Uniform Commercial Code or by other law, as applicable in any relevant Uniform Commercial Code jurisdiction, or by other law as applicable in any foreign jurisdiction, and (e) if requested by Oak Street, executing and delivering any assignment (without servicing obligations) required by any third party which owes to Debtor any Collateral in any format required by such third party in order to directly pay such Collateral to Oak Street.

5. **Representations and Warranties Concerning Debtor's Legal Status.** The Debtor represents and warrants to Oak Street as follows: (a) the Debtor's exact legal name is that indicated on the Certificate With Respect to Debtor and Collateral Locations attached hereto as Appendix I (the "Perfection Certificate") and on the signature page hereof, (b) if the Debtor is an entity, the Debtor is an organization of the type and organized in the jurisdiction set forth in the Perfection Certificate, (c) if the Debtor is an entity, the Perfection Certificate accurately sets forth the Debtor's organizational identification number or accurately states that the Debtor has none, (d) the Perfection Certificate accurately sets forth the Debtor's places of business and, if more than one, Debtor's residence (if the Debtor is a natural person) or chief executive office (if the Debtor is an entity) as well as the Debtor's mailing address if different, (e) all other information set forth on the Perfection Certificate pertaining to the Debtor is accurate and complete, (f) if the Debtor is an entity, the Debtor has not been a party to any merger, consolidation or other similar transaction within the 5 years preceding the date of this Security Agreement, and (g) the Debtor has been known by no other legal name other than that set forth in the Perfection Certificate within the 5 years preceding the date of Security Agreement.

6. **Covenants Concerning Debtor's Legal Status.** The Debtor covenants with Oak Street as follows: (a) without providing at least 30 days prior written notice to Oak Street, the Debtor will not change its name, Debtor's place of business or, if more than one, residence (if Debtor is an individual) or chief executive office (if Debtor is an entity), or Debtor's mailing address or organizational identification number if it has one, (b) if the Debtor does not have a social security number or an employer identification number and later obtains one, the Debtor shall forthwith notify Oak Street of such social security number or employer identification number, and (c) if the Debtor is an entity, the Debtor will not change Debtor's type of organization, jurisdiction of organization or other legal structure.

7. **Representations and Warranties Concerning Collateral, Etc.** The Debtor further represents and warrants to Oak Street as follows: (a) the Debtor is the sole owner of the Collateral and has the power to transfer each item of the Collateral, free from any adverse lien, security interest or other encumbrance, except for the security interest created by this Agreement and the other Credit Documents and other liens permitted by the Credit Agreement, (b) none of the Collateral constitutes, or is the proceeds of, "farm products" as defined in §9.1-102(a)(34) of the Uniform Commercial Code of the State, (c) none of the account debtors or other persons obligated on any of the Collateral is a governmental authority subject to the Federal Assignment of Claims Act or like federal, state or local statute or rule in respect of such Collateral, (d) the Debtor holds no commercial tort claim except as indicated on the Perfection Certificate, (e) the Debtor has at all times operated Debtor's business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances, (f) all other information set forth on the Perfection Certificate pertaining to the Collateral is accurate and complete, (g) no effective security agreement, financing statement, equivalent security or lien instrument or continuation statement covering all or any part of the Collateral is on file or of record in any public office, except such as may have been filed by the Debtor in favor of Oak Street pursuant to this Agreement or the other Credit Documents, and (h) this Agreement is effective to create a valid and continuing security interest



Page 4 of 11

in and, upon the filing of the appropriate financing statements, a perfected security interest in favor of Oak Street on the Collateral with respect to which a security interest may be perfected by filing pursuant to the applicable Uniform Commercial Code. Such security interest is prior to all other security interests, liens and other encumbrances, and is enforceable as such as against any and all creditors of and purchasers from the Debtor. All action by the Debtor necessary or desirable to protect and perfect such security interest in each item of the Collateral has been duly taken.

**8.      Covenants Concerning Collateral, Etc.** The Debtor further covenants with Oak Street as follows: (a) the Collateral, to the extent not delivered to Oak Street pursuant to Section 4 hereof, will be kept at those locations listed on the Perfection Certificate and the Debtor will not remove the Collateral from such locations, without providing at least 30 days prior written notice to Oak Street, (b) except for the security interest herein granted and liens permitted by the Credit Agreement, the Debtor shall be the owner of or have other rights in the Collateral free from any lien, security interest or other encumbrance, and the Debtor shall defend the same against all claims and demands of all persons at any time claiming the same or any interests therein adverse to Oak Street, (c) the Debtor shall not pledge, mortgage or create, or suffer to exist a security interest, lien or other encumbrance in the Collateral in favor of any person other than Oak Street except for liens permitted by the Credit Agreement, (d) the Debtor will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon, (e) the Debtor will permit Oak Street, or its designee, to inspect the Collateral at any reasonable time, wherever located, (f) the Debtor will pay promptly when due all taxes, assessments, governmental charges and levies upon the Collateral or incurred in connection with the use or operation of such Collateral or incurred in connection with this Agreement, (g) the Debtor will continue to operate, Debtor's business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances, and (h) the Debtor will not sell or otherwise dispose, or offer to sell or otherwise dispose, of the Collateral or any interest therein. The Debtor shall deliver to Oak Street all Collateral consisting of negotiable documents, certificated securities, chattel paper and instruments (in each case, accompanied by stock powers, allonges or other instruments of transfer executed in blank) promptly after the Debtor receives the same. If requested by Oak Street, the Debtor shall obtain waivers or subordinations of liens from landlords and mortgagees.

**9.      Insurance.** The following shall apply to the extent that the principal amount of loans to Debtor exceeds $250,000:

**9.1.      Maintenance of Insurance**. The Debtor will maintain with financially sound and reputable insurers insurance with respect to Debtor's properties and business against such casualties and contingencies as shall be in accordance with general practices of businesses engaged in similar activities in similar geographic areas. Such insurance shall be in such minimum amounts that the Debtor will not be deemed a coinsurer under applicable insurance laws, regulations and policies and otherwise shall be in such amounts, contain such terms, be in such forms and be for such periods as may be reasonably satisfactory to Oak Street. In addition, all such insurance shall be payable to Oak Street as loss payee. Without limiting the foregoing, the Debtor will (i) keep all of Debtor's physical property insured with casualty or physical hazard insurance on an "all risks" basis, with broad form flood and earthquake coverages and electronic data processing coverage, with a full replacement cost endorsement and an "agreed amount" clause in an amount equal to 100% of the full replacement cost of such property, (ii) maintain all such workers' compensation or similar insurance as may be required by law and (iii) maintain, in amounts and with deductibles equal to those generally maintained by businesses engaged in similar activities in similar geographic areas, general public liability insurance against claims of bodily injury, death or property damage occurring, on, in or about the properties of the Debtor; business interruption insurance; and product liability insurance.



9.2. **Insurance Proceeds**. The proceeds of any casualty insurance in respect of any casualty loss of any of the Collateral shall, subject to the rights, if any, of other parties with a prior interest in the property covered thereby, (i) so long as no Default or Event of Default has occurred and is continuing and to the extent that the amount of such proceeds is less than $5,000, be disbursed to the Debtor for direct application by the Debtor solely to the repair or replacement of the Debtor's property so damaged or destroyed and (ii) in all other circumstances, be held by Oak Street as cash collateral for the Obligations. Oak Street may, at its sole option, disburse from time to time all or any part of such proceeds so held as cash collateral, upon such terms and conditions as Oak Street may reasonably prescribe, for direct application by the Debtor solely to the repair or replacement of the Debtor's property so damaged or destroyed, or Oak Street may apply all or any part of such proceeds to the Obligations.

9.3. **Notice of Cancellation, etc.** All policies of insurance of the Debtor shall provide for at least thirty (30) days prior written cancellation notice to Oak Street. In the event of failure by the Debtor to provide and maintain insurance as herein provided, Oak Street may, at its option, provide such insurance and charge the amount thereof to the Debtor. The Debtor shall furnish Oak Street with certificates of insurance and policies evidencing compliance with the foregoing insurance provision.

10. **Collateral Protection Expenses: Preservation of Collateral.**

10.1. **Expenses Incurred by Oak Street**. In its discretion, Oak Street may discharge taxes and other encumbrances at any time levied or placed on any of the Collateral, make repairs thereto and pay any necessary filing fees or, if the Debtor fails to do so, insurance premiums. The Debtor agrees to reimburse Oak Street on demand for any and all expenditures so made. Oak Street shall have no obligation to the Debtor to make any such expenditures, nor shall the making thereof relieve the Debtor of any default.

10.2. **Oak Street's Obligations and Duties**. Anything herein to the contrary notwithstanding, the Debtor shall remain liable under each contract or agreement comprised in the Collateral to be serviced, observed or performed by the Debtor thereunder. Oak Street shall not have any obligation or liability under any such contract or agreement by reason of or arising out of this Agreement or the receipt by Oak Street of any payment relating to any of the Collateral, nor shall Oak Street be obligated in any manner to perform any of the obligations of the Debtor under or pursuant to any such contract or agreement, to make inquiry as to the nature or sufficiency of any payment received by Oak Street in respect of the Collateral or as to the sufficiency of any performance by any party under any such contract or agreement, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to Oak Street or to which Oak Street may be entitled at any time or times. Oak Street's sole duty with respect to the custody, safe keeping and physical preservation of the Collateral in its possession, under §9.1-207 of the Uniform Commercial Code of the State or otherwise, shall be to deal with such Collateral in the same manner as Oak Street deals with similar property for its own account.

11. **Securities and Deposits**. Oak Street may at any time following and during the continuance of a Default or Event of Default, at its option, transfer to itself or any nominee any securities constituting Collateral, receive any income thereon and hold such income as additional Collateral or apply such income to the Obligations. Whether or not any Obligations are due, Oak Street may following and during the continuance of an Event of Default demand, sue for, collect, or make any settlement or compromise which it deems desirable with respect to the Collateral. Regardless of the adequacy of Collateral or any other security for the Obligations, any deposits or other sums at any time credited by or due from Oak Street to the Debtor may at any time be applied to or set off against any of the Obligations then due and owing.

12. **Notification to Account Debtors and Other Persons Obligated on Collateral**. If an Event of Default shall have occurred and be continuing, the Debtor shall, at the request of Oak Street, notify account debtors and other persons obligated on any of the Collateral of the security interest of Oak Street in any account, chattel


Page 6 of 11

paper, general intangible, instrument constituting Collateral and that payment thereof is to be made directly to Oak Street or to any financial institution designated by Oak Street as Oak Street's agent therefor, and Oak Street may itself, if an Event of Default shall have occurred and be continuing, without notice to or demand upon the Debtor, so notify account debtors and other persons obligated on Collateral, including, but not limited to, sending letters to account debtors, such as insurance carriers, to collect any Collateral directly. After the making of such a request or the giving of any such notification, the Debtor shall hold any proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by the Debtor as trustee for Oak Street without commingling the same with other funds of the Debtor and shall turn the same over to Oak Street in the identical form received, together with any necessary endorsements or assignments. Oak Street shall apply the proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by Oak Street to the Obligations, such proceeds to be immediately entered after final payment in cash or other immediately available funds of the items giving rise to them.

13.  **Power of Attorney.**  The Debtor hereby irrevocably constitutes and appoints Oak Street and any officer or agent thereof, with full power of substitution, as Debtor's true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of the Debtor or in Oak Street's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or desirable to accomplish the purposes of this Agreement, including, without limitation: (a) to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral; (b) to receive, endorse, and collect any drafts or other instruments, documents and chattel paper, in connection with clause (a) above; (c) to file any claims or take any action or institute any proceedings which Oak Street may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Oak Street with respect to any of the Collateral; and (d) to perform the affirmative obligations of the Debtor hereunder. To the extent permitted by law, the Debtor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable. The powers conferred on Oak Street hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. Oak Street shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers and neither it nor any of its officers, directors, employees or agents shall be responsible to the Debtor for any act or failure to act, except for Oak Street's own gross negligence or willful misconduct.

14.  **Remedies.**  If an Event of Default shall have occurred and be continuing, Oak Street may, without notice to or demand upon the Debtor, declare this Agreement to be in default, and Oak Street shall thereafter have in any jurisdiction in which enforcement hereof is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of the State or of any jurisdiction in which Collateral is located, including, without limitation, the right to take possession of the Collateral, including without limitation any amounts held by third parties, and for that purpose Oak Street may, so far as the Debtor can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom. Oak Street may in its discretion require the Debtor to assemble all or any part of the Collateral at such location or locations within the jurisdictions of the Debtor's principal office(s) or at such other locations as Oak Street may reasonably designate. Oak Street may sell or take possession of any Collateral then held, or any part thereof and any substitute therefor and any additions thereto, at any public or private sale, without notice, advertisement, or demand of any kind, except as required by law. The Collateral is perishable and threatens to decline speedily in value due to the personal nature of such collateral and is of a type customarily sold in a recognized market. Thus, Debtor waives notice of disposition of any Collateral. Debtor further acknowledges and agrees that Oak Street may purchase any of the Collateral at any such private or public sale. In addition, the Debtor waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of Oak Street's rights hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights with respect thereto.



Page 7 of 11

**15.    Standards for Exercising Remedies.**  To the extent that applicable law imposes duties on Oak Street to exercise remedies in a commercially reasonable manner, the Debtor acknowledges and agrees that it is not commercially unreasonable for Oak Street (a) to fail to incur expenses reasonably deemed significant by Oak Street to prepare Collateral for disposition, (b) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of, (c) to fail to exercise collection remedies against account debtors or other persons obligated on Collateral or to remove liens or encumbrances on or any adverse claims against Collateral, (d) to exercise collection remedies against account debtors and other persons obligated on Collateral directly or through the use of collection agencies and other collection specialists, (e) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature, (f) to contact other persons, whether or not in the same business as the Debtor, for expressions of interest in acquiring all or any portion of the Collateral, (g) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the collateral is of a specialized nature, (h) to dispose of Collateral by utilizing Internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets, (i) to dispose of assets in wholesale rather than retail markets, (j) to disclaim disposition warranties, (k) to purchase insurance or credit enhancements to insure Oak Street against risks of loss, collection or disposition of Collateral or to provide to Oak Street a guaranteed return from the collection or disposition of Collateral, or (l) to the extent deemed appropriate by Oak Street, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist Oak Street in the collection or disposition of any of the Collateral.  The Debtor acknowledges that the purpose of this Section 15 is to provide non-exhaustive indications of what actions or omissions by Oak Street would not be commercially unreasonable in Oak Street's exercise of remedies against the Collateral and that other actions or omissions by Oak Street shall not be deemed commercially unreasonable solely on account of not being indicated in this Section 15.  Without limitation upon the foregoing, nothing contained in this Section 15 shall be construed to grant any rights to the Debtor or to impose any duties on Oak Street that would not have been granted or imposed by this Agreement or by applicable law in the absence of this Section 15.

**16.    No Waiver by Oak Street, etc.**  Oak Street shall not be deemed to have waived any of its rights upon or under the Obligations or the Collateral unless such waiver shall be in writing and signed by Oak Street.  No delay or omission on the part of Oak Street in exercising any right shall operate as a waiver of such right or any other right: A waiver on any one occasion shall not be construed as a bar to or waiver of any right on any future occasion.  All rights and remedies of Oak Street with respect to the Obligations or the Collateral, whether evidenced hereby or by any other instrument or papers, shall be cumulative and may be exercised singularly, alternatively, successively or concurrently at such time or at such times as Oak Street deems expedient.

**17.    Oak Street Has No Duty; Reasonable Care.**  The powers conferred on Oak Street hereunder are solely to protect its interest in the Collateral and shall not impose any duty on it to exercise any such powers. Except for reasonable care of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Oak Street shall have no duty as to any Collateral or responsibility for (a) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any investment property, whether or not Oak Street has or is deemed to have knowledge of such matters, or (b) taking any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral. Oak Street is required to exercise reasonable care in the custody and preservation of any of the Collateral in its possession; provided that Oak Street shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral, if it takes such action for that purpose as the Debtor reasonably requests in writing at times other than upon the occurrence and during the continuance of any Event of Default, but failure of Oak Street to comply with any such request at any time shall not in itself be deemed a failure to exercise reasonable care.

**18.    Suretyship Waivers by Debtor.**  The Debtor waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other action taken in reliance hereon and all other demands and notices of any description.  With respect to both the Obligations and the



Page 8 of 11

Collateral, the Debtor assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of or failure to perfect any security interest in any Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payment thereon and the settlement, compromising or adjusting of any thereof, all in such manner and at such time or times as Oak Street may deem advisable. Oak Street shall have no duty as to the collection or protection of the Collateral or any income thereon, nor as to the preservation of rights against prior parties, nor as to the preservation of any rights pertaining thereto beyond the safe custody thereof as set forth in <u>Section 10.2</u> hereof. The Debtor further waives any and all other suretyship defenses.

**19.    Marshalling.** Oak Street shall not be required to marshal any present or future collateral security (including but not limited to this Agreement and the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights, however existing or arising. To the extent that it lawfully may, the Debtor hereby agrees that it will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of Oak Street's rights under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, the Debtor hereby irrevocably waives the benefits of all such laws.

**20.    Proceeds of Dispositions; Expenses.** The Debtor shall pay to Oak Street on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Oak Street in protecting, preserving or enforcing Oak Street's rights under or in respect of any of the Obligations or any of the Collateral. After deducting all of said expenses, the residue of any proceeds of collection or sale of the Obligations or Collateral shall, to the extent actually received in cash, be applied to the payment of the Obligations in such order or preference as Oak Street may determine, proper allowance and provision being made for any Obligations not then due. Upon the final payment and satisfaction in full of all of the Obligations and after making any payments required by Sections 9.1-608(a)(1)(C) or 9.1-615(a)(3) of the Uniform Commercial Code of the State, any excess shall be returned to the Debtor, and the Debtor shall remain liable for any deficiency in the payment of the Obligations.

**21.    Overdue Amount.** Until paid, all amounts due and payable by the Debtor hereunder shall be a debt secured by the Collateral and shall bear, whether before or after judgment, interest at the rate of interest for overdue principal set forth in the Credit Agreement.

**22.    Governing Law; Consent to Jurisdiction.** This Agreement and the Credit Documents are submitted by Debtor to Oak Street for Oak Street's acceptance or rejection at Oak Street's principal place of business in the State of Indiana as an offer by Debtor to borrow monies from Oak Street now and from time to time hereafter, and shall not be binding upon Oak Street or become effective until accepted by Oak Street, in writing, at said place of business in the State of Indiana. If so accepted by Oak Street, this Agreement and the other Credit Documents shall be deemed to have been made at said place of business. THIS AGREEMENT IS INTENDED TO TAKE EFFECT AS A SEALED INSTRUMENT AND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE. The Debtor agrees that any suit for the enforcement of this Agreement may be brought in the courts of the State or any federal court sitting therein and consents to the exclusive Jurisdiction of such court and to service of process in any such suit being made upon the Debtor by mail at the address specified in the Credit Agreement. The Debtor hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court.

**23.    Miscellaneous.** The headings of each section of this Agreement are for convenience only and shall not define or limit the provisions thereof. The Debtor, if more than one, will be jointly and severally liable, and all covenants, representations and warranties contained in this Agreement will be deemed to have been made by each Debtor jointly and severally, unless otherwise indicated in this Agreement. This Agreement and all rights and



Page 9 of 11

obligations hereunder shall be binding upon the Debtor and Debtor's respective successors and assigns, and shall inure to the benefit of Oak Street and its successors and assigns. If any term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall in no way be affected thereby, and this Agreement shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included herein. The Debtor acknowledges receipt of a copy of this Agreement.

      24.    **Amendments, etc.** No amendment to or waiver of any provision of this Agreement, nor consent to any departure by the Debtor from its obligations under this Agreement, shall in any event be effective unless the same shall be in writing and signed by Oak Street and the Debtor and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

      25.    **Counterparts.** This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts.

      26.    **Waiver of Jury Trial.** THE DEBTOR WAIVES DEBTOR'S RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF OR IN ANY WAY RELATED TO A DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS OR OBLIGATIONS HEREUNDER OR THE PERFORMANCE OF ANY SUCH RIGHTS OR OBLIGATIONS. Except as prohibited by law, the Debtor waives any right which it may have to claim or recover in any litigation referred to in the preceding sentence any special, exemplary, punitive or consequential damages or any damages other than, or in addition to, actual damages. The Debtor (i) certifies that neither Oak Street nor any representative, agent or attorney of Oak Street has represented, expressly or otherwise, that Oak Street would not, in the event of litigation, seek to enforce the foregoing waivers and (ii) acknowledges that, in entering into the Credit Agreement and the other Credit Documents to which Oak Street is a party, Oak Street is relying upon, among other things, the waivers and certifications contained in this Section 26.

<div align="center">

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK
(Signature Page(s) follow)

</div>



Page 10 of 11

IN WITNESS WHEREOF, intending to be legally bound, the Debtor has caused this Agreement to be duly executed as of the date first above written.

*DEBTOR:*
**Jesus Pineda**

By: _____
Jesus Pineda

STATE OF *Texas*

COUNTY OF *Bexar*

Before me, a Notary Public in and for said County and State, personally appeared Jesus Pineda, a resident of TX, who, having been duly sworn, acknowledged the execution of the foregoing Security Agreement for and on behalf of such entity as Debtor's authorized act and deed and stated that all representations therein contained are true and correct.

WITNESS my hand and Notarial Seal this <u>8th</u> day of <u>February</u>, <u>2018</u>.

> SAVANNAH HAILEY
> Notary Public, State of Texas
> Comm. Expires 09-25-2019
> Notary ID 130384378

_____
Notary Public

*Savannah Hailey*
Notary Public (Printed)

My Commission Expires:

September 25, 2019

My County of Residence:

Bexar

Accepted:

**OAK STREET FUNDING LLC**

By: _____
Barry Kehl, Executive Director



Page 11 of 11

# APPENDIX I

## CERTIFICATE WITH RESPECT TO DEBTOR AND COLLATERAL LOCATIONS

1) **Legal Name of Debtor**: Jesus Pineda

2) **State of Organization (if an entity)**: TX

3) **Type of Entity (if an entity)**:

4) **Organizational Number assigned by State of Organization (if an entity)**: _____

5) **Federal Employer Identification Number (if an entity)**: None

6) **Social Security Number (if an individual)**: ▮▮▮▮▮

7) **Residence or Place of Business** (if Debtor has only one) **or Primary Residence or Chief Executive Office** (if more than one residence or place of business) **and Mailing Address**:

   Jesus Pineda
   12592 ARROW WEED DR
   EL PASO, TX  79928-5866

8) **Locations of Collateral**:

   (a)  <u>Properties Owned by the Debtor</u>:

   (b)  <u>Properties Leased by the Debtor</u>:

   615 N ZARAGOZA RD STE 50
   EL PASO, TX  79907-4772

   IN WITNESS WHEREOF, the undersigned has hereunto signed this Certificate on the 8th day of February, 2018.

   Jesus Pineda

   By:_____
   Jesus Pineda

OAK004

(registered mark) **Allstate Lending Connection**™

| Commencement Month (month Agent and Lender request the assignment to begin) |
|---|
| March          2018 |
| *(month)*          *(year)* |

FEB 2 0 2018

ASSIGNMENT OF COMMISSION-OFFICE FACILITIES

**Jesus Pineda**
_____,
*Name of borrower (Name on R3001 Agreement) (This is not DBA Name of Agency)*

Allstate Agent # ████████ , has asked Allstate Insurance Company (the "Company") to approve a
*(Agent Number)*
monthly commission deduction amount of  $4,363.00  (the "Monthly Deduction Amount")

until the total deduction amount of  $523,560.00  (the "Total Deduction Amount") has been

reached. Allstate's approval of this request is conditioned on receipt of your acknowledgement that you

have received and reviewed the following information regarding this assignment:

- Agent and Lender acknowledge that they have read and understood the Commission Payment Agreement.
- All five completed and signed Assignment of Commission documents must be received by the *Allstate Lending Connection*® no later than the fifteenth of the month prior to the requested Commencement Month. If the documents are received later than the twentieth of the month, they will be held and processed in the following month.
- Unless otherwise indicated above by the Agent and Lender, all Assignment of Commission documents received by the twentieth of the month will be reviewed with the following month's assignments. Incomplete or incorrect documents will cause a delay in the first payment made to the Lender.
- The processing fee must also be submitted by the twentieth of the month prior to the Commencement Month. If the payment is not received or authorized on Ex C, the documents will be placed on hold until the processing fee or Ex C is submitted, which will delay the first payment to the Lender. If the check for the Assignment of Commission fee is returned for any reason, the Allstate Lending Connection® reserves the right to terminate the Assignment of Commission.
- If the Agent and Lender wish to refinance (change the Monthly Deduction or Total Deduction Amount), the existing assignment must be terminated and a new Assignment of Commission must be executed. The refinance processing fee must accompany the new Assignment of Commission. **If the fee is not received, there will be no change in the Monthly Deduction Amount or Total Deduction Amount**.
- The Commission Amount is the amount remaining after all amounts that the Company is authorized or required by law to deduct. If the Commission Amount is then insufficient to pay the full Monthly Deduction Amount to the Lender, the Company shall pay that Commission Amount to the Lender and the difference between the Commission Amount paid to the Lender and the Monthly Deduction Amount is a "Shortfall".
- For any month in which a Shortfall occurs, the Agency Commission Amounts from all Agency locations will be used to offset that month's Shortfall. Any Shortfalls will be reflected in the loan balance.
- Payment to the Lender will be made within twenty business days of when the Agency is due to be paid monthly commissions. Allstate pays commissions on the 13th **business** day of each month. For any payment-related questions, please contact IBM.
- Agency shall provide notice to Lender promptly upon termination of the R3001 Agreement with the Company. Agency shall also notify any potential buyer of the economic interest of any outstanding loans incurred in connection with the book of business.
- A minimum of 45 days notice must be given to the *Allstate Lending Connection*® prior to the early termination of the Commission Payment Agreement. The request to terminate must be accompanied by a letter signed by both parties acknowledging the early termination.
- If the Lender assigns its rights under the agreement, no change to the payment destination will be made without a new Payment Election Form which must be submitted 45 days prior to the effective date.
- The Commission Payment Agreement will terminate upon termination of the Agency's R3001 Agreement.
- The maximum term of a Commission Payment Agreement is 180 months (15 years).

**Agency**
By: _____
*(Agent Signature)*

Date: 2-8-18

**Lender**
By: _____
*(Authorized Representative Signature)*

Date: 2-12-18

© 2015 Allstate Insurance Company          1 of 9, AOC          07/1/2017



Allstate Lending Connection™

COMMISSION PAYMENT AGREEMENT

COMMISSION PAYMENT AGREEMENT (the "Agreement"), dated as of <u>2/15/2018</u>,
by and among <u>Oak Street Funding LLC</u> (the "Lender"),
<u>Jesus Pineda</u> (the "Agency") and
Allstate Insurance Company, an Illinois corporation, (the "Company").

### RECITALS

A. Agency has an R3001 Agreement with the Company that became effective on <u>9/1/2001</u>

B. Agent/Agency desires to secure financing to purchase the economic interest in a book of business, or for some other business purpose related to the operation of the Allstate agency.

C. Lender and Agent/Agency desire to enter into this Agreement to direct the payment, pursuant to the terms of this Agreement, of certain of Agency's commissions due from the Company.

D. The Company, Lender and Agent/Agency have entered into this Agreement in order to promote their mutual interests.

### AGREEMENTS

In consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Recitals set forth above are specifically included herein and deemed

2. **Payment of Commissions:** Subject to and in accordance with the terms and conditions of this Agreement, Agent hereby directs the payment of certain amounts of Agency's commission due from the Company to be paid to Lender in accordance with a completed Deduction/Payment Authorization and Payment Election in the forms set forth in Exhibits A and B. The terms, conditions, and authorizations set forth in Exhibits A and B shall continue to apply to any third party, including but not limited to IBM or its successor retained by the Company to perform services under this Agreement.

3. **Appointment:** Lender and Agent hereby appoint the Company to act on their behalf to pay to Lender certain amounts of commissions, in accordance with the completed Deduction/Payment Authorization form, due Agency from the Company. However, such appointment does not obligate the Company to act as a guarantor of any monies owed by Agency to Lender and, by entering into this Agreement Company does not guarantee any monies owed to Lender pursuant to any contract or for any other debt.

4. **Commencement of Deductions and Payments:** Pursuant to the terms of this Agreement, the Company shall commence the payment of Agency's commission to the Lender following receipt of all required documents and fees. If the Company receives such correctly completed and legible documents by the fifteenth day of the month, the Company shall commence such payments during the following month or in the Commencement Month indicated on page 1; otherwise payments shall begin in the second month following receipt of such documents. The month in which payments commence will be referred to, hereinafter, as the "Commencement Month."

Allstate Lending Connection℠

FEB 2 0 2018

## 5. Monthly Payment

a. During the term of this Agreement, the Company shall deduct the amounts set forth on the Deduction/Payment Authorization form. Notwithstanding anything to the contrary, the Monthly Payment to the Lender may be reduced or withheld in full pursuant to the terms of Section 5(c).

b. The Company shall pay such Monthly Payments to the Lender either by electronic means or by check sent via first class mail within twenty (20) days of when said Monthly Payment was due to be paid to Agency but for this Agreement and the choice of which method used will be determined at the sole discretion of the Company.

c. Each month, prior to deducting the Monthly Payment for the Lender, the Company shall deduct from Agency's commission all other amounts that the Company is authorized to deduct or required by law to deduct. This includes any deductions made based on any prior Commission Payment Agreement(s) entered into between Agency and any other Lender. If, after any deductions, in any given month, insufficient commissions remain to pay the full amount of Monthly Payment to Lender, the Company shall deduct the amount of commission that is then available and pay that lesser amount to Lender. In such event, the Shortfall will not be added to the subsequent month's deduction; instead, such Shortfall shall be added to the Final Payment as scheduled and, if by so doing, the Final Payment would be more than the Monthly Commission Payment, additional payment(s) will be made in an amount no greater than the Monthly Commission Payment until such time as the aggregate payment listed on Exhibit A has been made in full.

## 6. Termination of Agreement: This Agreement shall terminate without notice at the option of the Company, upon the occurrence of any of the following events:

a. If and when the Total Deduction Amount listed on Exhibit A has been paid to Lender;

b. Termination of Agency's R3001 Agreement (both primary and satellite agreement(s)), (if applicable) for any reason;

c. Agency or Lender fails to perform or observe any of the covenants, conditions or agreements as required pursuant to this Agreement (in such case, such determination of such failure shall be by the Company in its discretion);

d. Agency institutes proceedings to be adjudicated a voluntary bankruptcy, or consents to the institution of a bankruptcy proceeding against it, or files a petition or answer or consent seeking reorganization under the federal bankruptcy laws, or consents to the filing of any such petition, or consents to the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of it or its property, or makes an assignment for the benefit of creditors, or admits in writing its inability to pay its debts generally as they become due. In such a case, payments will continue to be deducted by the Company, but will not be disbursed to the lender, pending an order of the bankruptcy court judge or appointed bankruptcy trustee ruling as to whom the withheld funds should be paid. In the alternative, at the Company's sole discretion, it can avail itself of provision 10(d) of this agreement and interplead any contested funds into the bankruptcy court, with any incurred outside legal fees the Company incurs in so moving being first deducted from the interpleaded fees, as allowed under paragraphs 10(d) and 13(c).

e. A court shall have entered a decree or order adjudicating Agency bankrupt or insolvent, or a decree or order approving as properly filed a petition seeking reorganization of Agency under the federal bankruptcy laws, and such decree or order is not discharged or stayed within forty-five (45) days; or a decree or order for the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of Agency or of the property of Agency, or for the sequestration of the property of Agency, or for the winding up or liquidation of Agency's affairs, and such decree or order is not discharged or stayed within forty-five (45) days;

f. If Agency or Lender is a corporation or other business entity and transfers substantially all of its assets, whether such transfer is voluntary or involuntary.

## 7. Termination by Agent and Lender: This Agreement may only be terminated by mutual agreement of Agent and Lender upon 45 days notice from both Agent and Lender to the Company.

## 8. Amendment by Agent, Lender and the Company: This Agreement may only be amended by mutual agreement of Agent, Lender and the Company.

## 9. Taxes: All funds paid to Lender pursuant to this Agreement will be reported as income to the Agency on an IRS Form 1099. This Agreement shall not be deemed or construed to impose any obligation on the Lender with respect to the payment of taxes on the funds paid pursuant to the Agreement

## 10. Exculpation and Indemnification

a. The Company shall not be liable to any party, person or entity if the Monthly Commission Payment is not made in full each month, nor shall the Company be liable to any party if the Aggregate Payment Amount listed on Exhibit A is not made in full.

b. The obligations and duties of the Company are confined to those specifically set forth in this Agreement. In the event that any of the terms and provisions of any other agreement between any of the parties hereto conflict or are inconsistent with any of the terms and provisions of this Agreement, the terms and provisions of this Agreement shall govern and control in all respects. The Company shall not be subject to, nor be under any obligation to ascertain or construe the terms and conditions of any other instrument, whether or not now or hereafter deposited with or delivered to the Company or referred to in this Agreement, nor shall the Company be obligated to inquire as to the form, execution, sufficiency or validity of any such instrument nor to inquire as to the identity, authority or rights of the person or persons executing or delivering the same. This shall not be construed to amend or modify any obligation of the Agency to the Lender under the terms of any note, or any other document executed by the Agency in favor of the Lender with respect to the financing.

c. The Company shall not be liable for any act that it may do or omit to do hereunder in good faith and in the exercise of its own reasonable best judgment. Any act done or omitted to be done by the Company pursuant to the advice of its attorneys shall be deemed conclusively to have been performed or omitted in good faith by the Company.

d. In the event the Company is notified of any dispute, disagreement or legal action or sales contract between Lender and Agency, and/or Lender and/or Agency and any third party, relating to or arising in connection with this Agreement or the performance of the Company's duties under this Agreement, the Company will not be required to determine the controversy or to take any action regarding it. The Company may hold all documents and funds and may wait for settlement of any such controversy by final appropriate legal proceedings, arbitration or other means as, in the Company's sole discretion, it may require. In such event, the Company will not be liable for interest or damages. Furthermore, the Company may file an action of interpleader requiring the parties to answer and litigate any claims and rights among themselves. The Company is authorized, at its option, to deposit with the Clerk of the Court or Arbitrator, as applicable, all documents and funds held by it, except all costs, expenses, charges and reasonable attorneys' fees incurred by the Company due to the interpleader action, which shall be paid in accordance with the provisions of Section 13(c). Upon initiating such action, the Company shall be fully released and discharged of and from all obligations and liability imposed by the terms of this Agreement.

e. Agency hereby agrees to indemnify and hold the Company harmless from and against all costs, including but not limited to fines, interest payments, late charges, penalties, damages, judgments, attorneys' fees (whether such attorneys shall be regularly retained or specifically employed), expenses, obligations and liabilities of every kind and nature which the Company may incur, sustain or be required to pay in connection with or arising out of this Agreement, unless the aforementioned results from the Company's gross negligence or willful misconduct, and to pay the Company on demand the amount of all such costs. The foregoing indemnities in this Section 10 shall survive the resignation or substitution of the Company or the termination of this Agreement.

11. **Assignment of Duties by Company:** The Company may, in its sole discretion, assign any of its duties under this Agreement to a third party, including, but not limited to IBM or its successor. Any such third party shall be subject to the terms and conditions of this Agreement and shall be covered by the exculpation and indemnification provisions of Section 10.

12. **Assignability of Rights of Lender:** The rights of Lender and Agency pursuant to this Agreement are reserved solely for benefit of Lender and Agency, respectively, and may not be assigned or transferred by either Lender or Agency to any person or entity. Notwithstanding Section 13(b) of the Agreement, the Lender may assign its rights under the Agreement in connection with a sale, assignment, pledge or encumbrance of its loan to the Agent/Agency. Lender will make reasonable effort to provide Company with written notice (30) days prior to the effective dates of any such assignment. Company will continue to make payments to the Lender in accordance with the Agreement until such time as a payee change request is made by the Lender and processed by the Company.

13. **Miscellaneous**

a. ***Waivers; Entire Agreement***. This Agreement may not be modified except by a written agreement between the Company, Lender and Agency that expressly states that it modifies this Agreement. No other written statements, representations or agreements and no oral statements, representations or agreements shall be effective to modify this Agreement. No representative of the Company will have authority to modify this Agreement, except as provided in this Section 13(a). Any right or obligation hereunder may be waived only by a written instrument signed by the Company, Lender and Agency. Any such waiver shall be limited to its express terms, and no waiver of any default in any such term, covenant, agreement or condition shall be deemed a waiver of any later default thereof or of any other term, covenant, agreement or condition. Any delay on the part of any party in exercising any right, power or privilege hereunder shall not operate as a waiver

*Allstate Lending Connection™*

*FEB 2 0 2018*

b. ***Benefits of Agreement; No Third Party Beneficiaries.*** This Agreement shall bind and inure solely to the benefit of the parties hereto. The Lender may assign its rights under the agreement in connection with a sale, assignment, pledge or encumbrance of its loan to the Agency. Lender will make reasonable effort to provide Company and Agency with written notice thirty (30) days prior to the effective dates of any such assignment.

c. ***Attorneys' Fees.*** If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party (and the Company, in the case of any actions brought in accordance with the provisions of Sections 10(d) and 10(e)) shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

d. ***Execution.*** The parties hereto agree to execute any additional documents or instruments necessary to carry out the purposes of this Agreement.

e. ***Governing Law.*** The validity, meaning and effect of this Agreement shall be determined in accordance with the laws of the State of Illinois, without giving effect to any choice of law or conflict of law provision or rule (whether the State of Illinois or any other jurisdiction) that would cause the application of the law of any jurisdiction other than the State of Illinois.

f. ***Headings.*** The headings herein are solely for the convenience of the parties and shall not serve to modify or interpret the text of the Sections at the beginning of which they appear.

g. ***Severability.*** In the event that any court or any governmental authority or agency declares all or any part of Section of this Agreement to be unlawful or invalid, such unlawfulness or invalidity shall not serve to invalidate any other Section of this Agreement, and in the event that only a portion of any Section is so declared to be unlawful or invalid, such unlawfulness or invalidity shall not serve to invalidate the balance of such Section.

h. ***Counterparts.*** This Agreement may be executed in two or more counterparts, each of which shall be an original but all of which shall together constitute one and the same document.

***Notices.*** All notices, requests, payments, instructions, or other documents to be given hereunder shall be in writing or by written telecommunication, and shall be deemed to have been received (a) immediately if sent by facsimile transmission (with a confirming copy sent the same Business Day by registered or certified mail), or by hand delivery (with signed return receipt), or (b) the next Business Day if sent by nationally recognized overnight courier, in any case to the respective addresses as follows:

**If to Company:**

Allstate Insurance Company:   2775 Sanders Rd, Northbrook, Illinois 60062
                             Attention: Allstate Lending Connection®, Suite B2S
Allstate Lending Connection®:  Allstatelendingconnection@allstate.com (847)402-2191
Fax:                          (877) 347-6175

**If to Lender:**

Oak Street Funding LLC                    Kathy Yeary
*(Lender Name)*                           *(Authorized Representative)*

8888 Keystone Crossing, Suite 1700        Indianapolis      IN        46240
*(Address)*                               *(City)*      *(State)*      *(Zip)*

Kathy.Yeary@oakstreetfunding.com
*(Lender email)*                          *(additional Lender email, optional)*

**If to Agency:**

Jesus Pineda                              Jesus Pineda
*(Agency Name)*                           *(Agent Name)*

615 N ZARAGOZA RD STE 50                  EL PASO       TX        799074
*(Address)*                               *(City)*      *(State)*      *(Zip)*

███████████████
*(Agency email)*                          *(additional Agency email, optional)*

*Copies of the approved assignment will be sent to the above email addresses*

Allstate Lending Connection™

j. **Pronoun.** All pronouns and any variations thereof herein shall be deemed to refer to the feminine, singular or plural, as the identity of the Person or Persons may require.

k. **Instruction.** The language used in this Agreement is the language chosen by the parties to express their intent, and no rule of strict construction shall be applied against any party.

l. **Acknowledgement.** The parties acknowledge that they have read this Commission Payment Agreement, understand it, and agree to be bound by its terms.

IN WITNESS WHEREOF, each of the parties has executed and delivered this Agreement to the others as of the date first above written.

**Agency Accepted:**

Jesus Pineda
*(Print Agent Name)*

615 N ZARAGOZA RD STE 50
*(Address)*

EL PASO      TX      799074
*(City)*      *(State)*      *(Zip)*

2-8-18

*(Agent Signature)*          *(Agent Date)*

**Lender Accepted:**

Kathy Yeary
*(Print Authorized Representative Name)*

8888 Keystone Crossing, Suite 1700
*(Address)*

Indianapolis      IN      46240
*(City)*      *(State)*      *(Zip)*

2-12-18

*(Lender Signature)*          *(Lender Date)*

**Allstate:**

*(Authorized Representative Signature)*

ALC Manager
*(Title)*

Date: 02-22-2018

Allstate Insurance Company
2775 Sanders Rd
Northbrook, IL 60062

Attn: Allstate Lending Connection®, Suite B2S



(◉) Allstate Lending Connection℠

FEB 2 0 2018

Agency Name: **Jesus Pineda**                    Agent #: ▮▮▮▮

Agent Name: **Jesus Pineda**

Mailing Address: **615 N ZARAGOZA RD STE 50**

City, St, Zip: **EL PASO, TX 799074772**

Phone: **(915) 790-2622**            Email: ▮▮▮▮

Business Entity (check one): ☑ Sole Proprietor *(R3001 or R3001S)*      ☐ Corporation or LLC *(R3001A, R3001B, or R3001C)*

Lender Name: **Oak Street Funding LLC**

Lender Contact: **Kathy Yeary**
*(Contact for questions about the Assignment or payments; may be same as individual Lender or Lender's authorized rep)*

Address: **6666 Keystone Crossing, Suite 1700**

City, St, Zip: **Indianapolis, IN 46240**

Phone: **(317) 428-3838**            Email: **Kathy.Yeary@oakstreetfunding**

Per the terms and conditions set forth in the Commission Payment Agreement, I authorize IBM or its

through its business relationship with Allstate, to deduct up to the sum of **$4,363.00**            per

month (the Monthly Deduction Amount) from the Agent's/Agency's commissions due from the Company, whether

I am doing business as a sole proprietorship, corporation, or LLC as recognized by the IRS, until the total amount

of **$523,560.00**            (the Total Deduction Amount) is paid in full to the Lender, or until

otherwise directed by Allstate Insurance Company.

**Agent/Agency and Lender further agree to:**

A. Notify IBM or its successor in writing of any changes to the following:
  1) Any home, work, or payment addresses or phone numbers
  2) Any changes in banking affiliation, or to the account that funds are to be paid
  Please refer to the Assignment of Commission Checklist for IBM contact information

B. We further understand that any changes to the commission payment agreement or to the amount to be deducted from Agent/Agency's commissions or other types of pay and paid to the Lender must be accompanied by a new Commission Payment Agreement that reflects such changes.

Acknowledgement. I acknowledge that I have read this Payment Authorization Form, understand it, and agree to be bound by its terms. I further acknowledge that I am authorized to accept and sign this form on behalf of the company that I represent (if applicable).

_____          Jesus Pineda          2-8-18
*(Agent Signature)*                *(Print Name)*              *(Date)*

_____          Kathy Yeary          2-12-18
*(Lender Authorized Representative Signature)*    *(Print Name)*              *(Date)*

© 2016 Allstate Insurance Company            7 of 9, AOC            07/1/2017



**Allstate Lending Connection**℠

FEB 2 0 2018

PAYMENT ELECTION FORM *Exhibit 4*
*To be completed by Lender/Assignee*

Agency Name (Assignor):  __Jesus Pineda__

Agent (Assignor) Number:  ▮▮▮▮▮▮

---

Please select payment method:  ☑ Electronic Payment (ACH)        ☐ Paper check

---

If electing electronic payment, please complete this section

Lender/Assignee Bank Name __First Financial Bank__

Lender/Assignee Bank Routing Number __042200910__

Account Number __000000000__        Loan Account Number _____

Account Type        ☑ Checking Account *(for verification, please attach copy of voided check)* ☐ Savings Account

_Please note:_ *Deposits can only be made to a checking or savings account*

---

If electing paper check, please complete this section

Payee Name for Lender/Assignee Check _____

Street Address _____

City _____    State _____    Zip code _____

Attn _____
    *(Optional, max 35 characters, appears in check window. A dept or bldg number may be specified, not an individual's name)*

Memo/ Loan Account Number _____
                *(Optional, max 25 characters, appears on check stub)*

---

<u>Acknowledgement:</u>        I acknowledge that the information provided on this Payment Election Form is correct and I
            authorize Allstate to remit the funds as indicated above.

            Lender/Assignee Name  __Kathy Yeary__

            Lender Authorized Rep Signature  *Kathy Yeary*

            Date  __2-13-18__

Allstate Lending Connection

FEB 2 0 2018

Monthly Deduction Amount (specified on p. 1): $4,363.00

Total Deduction Amount (specified on p. 1): $523,560.00

Term of Assignment in Months (Total Deduction Amount ÷ Monthly Deduction Amount): 120

Payment Amount Owed:

☐ $810      New assignment of 1 - 120 months (max. 10 yrs)

☐ $1,080    New assignment of 121 - 180 months (max. 15 yrs)

☑ $270      Refinance (Replacing an existing assignment with the same lender)

Please select payment method:

☑ Paper check (from Lender)   ☐ Paper check (from Agency)   ☐ Commission Deduction (from Agency)

If electing paper check, please make check payable to Allstate Insurance Company, and mail to:
Allstate Insurance Company, 2775 Sanders Rd., Northbrook, Il 60062 Attn: Allstate Lending Connection®, Suite B2S

**Acknowledgement by Agent:**
I acknowledge that the information provided on this Assignment Processing Fee Declaration is correct. I further understand that if a paper check for the Assignment of Commission Processing Fee is returned for any reason, the Assignment of Commission may be terminated.

If automatic deduction is selected above, I authorize Allstate to deduct the funds from my monthly commissions in the Commencement Month (the month that assignment of commission payments to my lender begins under my R3001 entity). I understand that if there are insufficient commissions to cover the entire amount of the processing fee in the Commencement Month the balance will be taken from subsequent months until the full balance of the processing fee is reached.

Print Agent Name: Jesus Pineda

Agent Signature: _____

Date: 2-8-18

**Acknowledgement by Lender:**
I acknowledge that the information provided on this Assignment Processing Fee Declaration is correct. I further understand that if a paper check for the Assignment of Commission Processing Fee is returned for any reason, the Assignment of Commission may be terminated.

Print Lender Authorized Rep Name: Kathy Yeary

Lender Authorized Rep Signature: _____

Date: 2-12-18

© 2015 Allstate Insurance Company          9 of 9, AOC          07/1/2017

OAK007

*FEB - 1 2018*

I acknowledge _____ position

*(Lender Initials)*

(◎) **Allstate Lending Connection·**

## Granting of Security Interest in the Economic Interest in an R3001 Contract
## NOTICE TO LENDER

### Jesus Pineda
_____
*Name of borrower (Name on R3001 Agreement) (This is not DBA Name of Agency)*

Agent # **▮▮▮▮▮** , has asked Allstate Insurance Company (the "Company") to consent to the assignment
*(Agent Number)*

of a security interest in the economic interest in their Allstate R3001 Exclusive Agency Agreement

with the Company to _____ **Oak Street Funding LLC** _____ (the "Lender").
*(Lender Name)*

Allstate's consent to this request is conditioned on receipt of your acknowledgement that

you have received and reviewed the following important information:

- Start-up Agency tiered incentive compensation-eligible Agents, with affiliation dates of January 1, 2012 and subsequent, will be required to vest for five years before being eligible to receive a termination payment on all secured new business.
- Allstate retains ownership of the Agency's book of business upon termination of the R3001 Agreement (excluding any Assigned Risk, JUA, Flood and FAIR Plan business).
- Subject to the terms and conditions set forth in the R3001 Agreement, the Agency acquires an economic interest in the Allstate business written by the Agency which can be sold only to a Company-approved buyer or the Agent can elect to receive a termination payment from Allstate.
- The R3001 Agreement may be terminated at any time by mutual agreement of the parties in writing; by either party with or without cause upon providing 90 days prior written notice to the other (or such greater number of days as is required by law); or by the Company with cause, immediately upon written notice being provided to the Agency. Agent is obligated to promptly provide notice to Lender of Agency termination.
- The Agent has up to 3 full calendar months (or such greater number of days as is required by law) from the date of the written notice of termination to either sell the economic interest in the book of business to a Company approved buyer or to elect the termination payment.
- Agent shall also notify any potential buyer of the economic interest of any outstanding loans secured by or incurred in connection with the book of business.
- If the Agent sells the economic interest in an Agency's book of business to a Company-approved buyer, the Company is not obligated to notify the Lender or make a termination payment.
- The terms of the sale of the economic interest in the book of business, including the sale price, are determined by the Agent and the approved buyer. Other than approval of the buyer, Allstate is not a party to the transaction and the proceeds from the sale are received by the Agent/Agency directly from the buyer.
- The termination payment currently available to Agencies under an R3001 Agreement executed on or after January 1, 2000 is subject to change at the discretion of the Company, including discontinuance of the termination payment option.
- Allstate has made no representations, warranties, or guarantees to the Lender regarding the value of a termination payment as it relates to the amount of any loan the Agent or Agency is requesting.
- Collateral pledged by the Agency shall be consistent with the R3001 Agreement.
- For an Agency operating under an R3001, R3001A or R3001B Agreement, the termination payment is payable in 12 monthly installments, less any money owed to the Company by the Agency. For an Agency operating under any other agreement, the termination payment is payable in 24 monthly installments, less any money owed to the Company by the Agency.



- The Consent to the Granting of Security Interest is the full extent of Allstate's agreement.
- Allstate agrees with Lender that it will make no termination payments to Agency under the R3001 Agreement but in lieu thereof will make all such payments directly to Lender unless and until the payoff amount supplied be the lender is reached.
- The termination payment does not begin until all property and confidential information belonging to the Company has been returned or made available for return.
- The total Termination Payment Value is determined after the Agency termination has occurred. Furthermore, should the Agency owe the Company any money, that money will be withheld from the termination payments.
- If the Agent does not comply with the confidentiality and non-compete obligations, which survive termination of the agreement, the Company is entitled to withhold any remaining monthly installments.
- Any payment of non-TPP fund (i.e., flood payment) to a Lender must be returned to Agency.
  Allstate will not be liable to the Lender or any other person or entity if the termination payment of the proceeds from the sale of the economic interest in the book of business are not sufficient to satisfy the loan, nor shall Allstate be liable to any party if
- Lender's loan to Agency is not paid in full.
- Agency and Lender are obligated to notify Allstate via a release letter if the Security Interest is terminated.
  Lender agrees to submit written release of the Security Interest if the loan transaction is never consummated.
- The Security Interest survives any change of a corporation's Key person.
- The consent to the Granting of Security Interest is the full extent of Allstate's agreement.
- The Request for Consent to the Granting of Security Interest in the Economic Interest in an R3001 Contract assignment does not substitute for a Uniform Commercial Code (UCC) filing. In addition to entering a Request for Consent to the Granting of Security Interest in the Economic Interest in an R3001 Contract, the filing of a UCC-1 financing statement is necessary to perfect a security interest

**Agent**

By: _____Jesus Pineda_____

*(Print Agent Name)*

Jesus Pineda 2018-01-31 T11:41:13-07:00

_____        01-31-18

*(Agent Signature)*                        *(Date)*

**Lender**

By: _____Kathy Yeary_____

*(Print Authorized Representative Name)*

_____        1-31-18

*(Authorized Representative Signature)*       *(Date)*

(⊛) Allstate Lending Connection·

## Security Agreement in Economic Interest

This SECURITY AGREEMENT IN ECONOMIC INTEREST ("this Agreement") is entered into as of the

__31__ day of __January__ , __2018__
*(Day)*                *(Month)*              *(Year)*

by and between _____ Oak Street Funding LLC _____ (here in after "Lender") and the
*(Lender Name)*

undersigned Agency _____ Jesus Pineda _____
*Name of borrower (Name on R3001 Agreement) (This is not DBA Name of Agency)*

### Preamble

Whereas, Agency has entered into an Agreement entitled "Allstate R3001 Exclusive Agency Agreement" dated

__9/1/2001 7:43:37__ (the "Agency Agreement"); and
*(R3001 Contract Date)*

Whereas, Lender has agreed to make a loan provided Agent assigns to Lender all of Agent's assignable interest under the Agency Agreement, and Agent has agreed to grant such assignment, as collateral for such loan and Note subject to the approval of Allstate and to the specific limitations set forth in the Agency Agreement.

Now, therefore, in consideration of the loan and Note made are to be made as set forth above and for other good and valuable consideration, receipt whereof is hereby acknowledged by the parties, it is agreed as follows:

1. Agent hereby transfers, assigns, and conveys to Lender, and grants to Lender a security interest in, all rights of Agent in and to the termination payment and other economic interests (as defined in the Agency Agreement) due or which hereafter become due and payable to Agent under the Agency Agreement as amended from time to time. The assignment and security interest herein granted and conveyed to Lender specifically excludes any payments due under the Agency Agreement other than termination payments (as defined in the R3001 supplement) or proceeds arising from the sale, assignment, or other transfer of Agent's economic interests hereunder to buyer who has been approved in writing by Allstate Insurance Company.

2. The assignment and security interest herein granted is for collateral purposes only and includes only the assignable rights of Agent to termination payments and other economic interests of Agent under the Agency Agreement and does not convey to Lender or engage Lender to accept or undertake any of Agent's duties or obligations arising under the Agency Agreement. Therefore, Lender's receipt and acceptance of this Agreement does not and shall not be construed as conferring upon Lender any obligations or liabilities of any kind or nature under the Agency Agreement and Lender shall not be deemed a third party beneficiary of the Agency Agreement.

   Upon the termination of the Agency Agreement, Lender shall have all of the rights and remedies available to it under this Agreement or under law, including without limitation the right to notify Allstate thereof and to receive direct payment from Allstate of all termination payments from Allstate to Agent and all remedies available under the Uniform Commercial Code of Illinois.

   Agent will, at its expense, promptly execute, acknowledge and deliver all such instruments and take all such actions as Lender from time to time may request in order to ensure to Lender the benefits of the liens in and to the collateral intended to be created by this Agreement, including the filing of any necessary Uniform Commercial Code financing statements, which may be filed by Lender with or (to the extent permitted by law) without the signature of Agent, and will cooperate with Lender, at Agent's expense, in obtaining all necessary approvals and making all necessary filings under federal, state, local or foreign law in connection with such liens or any sale or transfer of the collateral.



Allstate Lending Connection

3. NOTICE: All notices required or permitted to be given hereunder shall be given in writing, by certified mail, return receipt requested, to each of the parties hereto, by depositing such notices in the United States Mail, postage properly prepaid, addresses to the parties as shown below, or such other address or addresses as the parties may from time to time designate and deliver to the other in writing. Pending such designation, notices shall be addressed as follows:

Where to Lender:      **Oak Street Funding LLC**
                                              *(Lender Name)*
**8888 Keystone Crossing, Suite 170**    **Indianapolis**    **IN**    **46240**
                *(Address)*                                              *(City)*          *(State)*      *(Zip)*
████████████████████                **(317) 428-3838**
                *(Lender email)*                                         *(Lender phone)*

*(Additional Lender contact name, phone and email, optional)*

Where to Agency:      **Jesus Pineda**
                                              *(Agency Name)*
**615 N ZARAGOSA STE 50**    **EL PASO**    **TX**    **79928**
                *(Address)*                          *(City)*          *(State)*      *(Zip)*
████████████████                **(915) 790-2622**
                *(Agent email)*                          *(Agent phone)*

Where to Allstate:    Allstate Insurance Co.
                                2775 Sanders Rd., Northbrook, IL 60062  Attn: Allstate Lending Connection®, Suite B2S
                                Allstate Lending Connection®
                                Email: allstatelendingconnection@allstate.com
                                Phone: (847) 402-2191
                                Fax: (877) 347-6175

4. SPECIFIC PERFORMANCE AND INJUNCTION: It is specifically provided and agreed that suit or claim for monetary damages is an inappropriate, insufficient and inadequate remedy against any person or entity who violates any of the covenants and agreements hereof and that such person or entity may be enjoined and required to specifically perform any and all acts required hereunder. Nothing herein contained nor any acts undertaken to compel specific performance by any person as aforesaid, nor any claims or suits for damages, nor any other remedy at law is intended to or shall be construed as a waiver or limitation of any person's or entity's rights to maintain any other action or remedy provided herein or at law.

5. ARBITRATION: Any controversy or dispute arising out of or relating to this Agreement or to any portion thereof shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award of the Arbitration shall be binding upon the parties here to and may be entered in any court having jurisdiction thereof, all rights to appear and review being hereby waived by all parties.

6. SEVERABILITY: The invalidity or unenforceability of any particular provisions of this Agreement shall not affect the other provisions hereof and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

7. BINDING EFFECT AND BENEFIT: The provisions hereof shall be binding upon and insure to the benefit of the parties hereto, their heirs, executors, administrators, successors, and assigns.

8. ASSIGNABILITY OF RIGHTS OF LENDER: The Lender may assign its rights under the Agreement in connection with a sale, assignment, pledge or encumbrance of its loan to the Agent/Agency. Lender will make reasonable effort to provide Company with written notice (30) days prior to the effective dates of any such assignment.



 Allstate Lending Connection·

9. WAIVERS: No delay on the part of any party in the exercise of any right or remedy shall operate as a waiver hereof, and no single or partial exercise by any party of any right or remedy shall preclude other or further exercise thereof or exercise of any other right or remedy.

10. GOVERNING LAW: This Agreement is being executed in the State of ___Indiana___ and the validity, construction, and enforceability hereof shall be governed in all respects by the Law of the State Indiana

11. ENTIRE AGREEMENT AND MODIFICATION: This Agreement sets forth the entire agreement between the parties hereto relating to its subject matter and supersedes any prior agreements, expressed or implied. Any modifications hereto may be made only by an instrument in writing signed by or on behalf of all parties hereto.

12. MULTIPLE EXECUTION: This Agreement is executed in multiple counterparts, each copy of which shall be deemed an original hereof.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the day and year first above written.

**Agency Accepted:**

Jesus Pineda
*(Print Agent Name)*

615 N ZARAGOSA STE 50
*(Address)*

EL PASO          TX          79928
*(City)*          *(State)*          *(Zip)*

2018-01-31 T11:42:01-07:00          01-31-18
*(Agent Signature)*          *(Agent Date)*

**Lender Accepted:**

Kathy Yeary
*(Print Authorized Representative Name)*

8888 Keystone Crossing, Suite 17(
*(Address)*

Indianapolis          IN          46240
*(City)*          *(State)*          *(Zip)*

1·31·18
*(Authorized Representative Signature)*          *(Authorized Representative Date)*

**Allstate:**

Joseph Cinelli
*(Authorized Representative Signature)*

ALC Manager
*(Title)*

Date: 02-06-2018

Allstate Insurance Company
2775 Sanders Rd
Northbrook, IL 60062
Attn: Allstate Lending Connection®, Suite B2S

 Allstate Lending Connection`



## Security Agreement in Economic Interest
## FEE DECLARATION—Exhibit A

Agent Name: **Jesus Pineda**

Agent Number: ████

Payment Amount Owed:

$25    Processing Fee

Please select payment method:

☐ Paper check    ☑ Commission Deduction

If electing paper check, please make check payable to Allstate Insurance Company, and mail to:
Allstate Insurance Company, 2775 Sanders Rd., Northbrook, Il 60062 Attn: Allstate Lending Connection®, Suite B2S

**Acknowledgement by Agent:**
I acknowledge that the information provided on this Processing Fee Declaration is correct.

If automatic deduction is selected above, I authorize Allstate to deduct the funds from my monthly commissions.
I understand that if there are insufficient commissions to cover the entire amount of the processing fee in the
Commencement Month the balance will be taken from subsequent months until the full balance of the processing
fee is reached.

Agent Name: **Jesus Pineda**

Agent Signature: _Jes P._    2018-01-31 T11:42:24-07:00

Date: **01-31-18**

**Acknowledgement by Lender:**
I acknowledge that the information provided on this Granting Processing Fee Declaration is correct.

Lender Authorized Rep Name: **Kathy Yeary**

Lender Authorized Rep Signature: _Kathy Yeary_

Date: 1-31-18

© 2015 Allstate Insurance Company    6 of 6, SAG    07/01/2017

## Request for Consent to the Granting of Security Interest in the Economic Interest in an R3001 Contract
## CHECKLIST

A Security Agreement is an agreement that an Agency and Lender (Seller and/or third party providing financing) may choose to enter into that allows the Lender to obtain a security interest in the Agency's economic interest in a book of business. The R3001 contract prohibits an agency from granting a security interest in the economic interest in a book of business without Allstate's express consent. Completion of this form constitutes Allstate's consent to the granting of a security interest in the economic interest in the book of business. Please note that it is the lender's responsibility to properly file appropriate financing statements or other documents in order to secure their interest.

It is important that both the Agent and the Lender review the following checklist before completing the attached Request for Consent to the Granting of Security Interest documents. Failure to properly complete the Request for Consent documents will delay consent by Allstate to the granting of a security interest to the Lender. Please note that:
"Agent" -- means the individual (whether Agency Owner or Key Person) who has signed the R3001 contract with Allstate
"Agency" -- means the entity (whether sole proprietorship or corporation/LLC)) who has an R3001 contract with Allstate
"Agency Name" -- means the entity named on the R3001 contract, not the DBA. Agency and Agency Name are the same.

The Request for Consent to the Granting of Security Interest package is comprised of:
- Request for Consent to the Granting of Security Interest Checklist
- Granting of Security Interest in the Economic Interest in an R3001 Contract Notice to Lender (pages 1 & 2)
- Security Agreement in Economic Interest (pages 3– 5)
- Information about how to release and replace Assignments and Security Interests
- Information on the Notice of Termination website
Fees – A processing fee is required to enter into the Granting of Security Interest.

         Processing Fee          $25

**Granting of Security Interest in the Economic Interest in an R3001 Contract and Security Agreement in Economic Interest –** Both the Agent and Lender will need to read, complete, and sign these documents.

**Each Agency location has its own R3001 contract and distinct Agent Number --** In order to obtain consent for a security interest in the economic interest in an R3001 contract on more than one location of an Agency, a separate Granting of Security Interest/Security Agreement must be submitted for each Agency location.

**Business Entity --** The business entity shown on the Request for Consent documents must be the same business entity shown on the R3001 contract in order for Allstate to consent to the granting of a security interest.

**Multiple Security Interests --** If the Agency has an existing Granting of Security Interest/Security Agreement and/or Assignment of TPP on file with Allstate, the Lender(s) in subordinate position(s) must provide written acknowledgement of their position in order for Allstate to consent to the granting of an additional security interest. A Lender may choose to acknowledge subordinate position in the top right corner of the Notice to Lender (green box).

**Notice of Termination of Security Interest --** Proper notice must be presented to Allstate before a security interest in the economic interest in an active R3001 contract can be terminated. Such notice will at a minimum contain a release letter signed by the Lender or a court order terminating the security interest. Such notice is not effective until received by Allstate.

**Sale of Economic Interest --** Per the Exclusive Agency Independent Contractor Manual, an Agent selling the economic interest in an Agency's book of business shall notify Allstate and the Lender of their intent to sell. The Seller shall also notify the Buyer of the existence of any existing security interests.

**Election of Termination Payments --** Upon notification of the termination of the R3001 Agreement and the election of the termination payment option by the Agent, Allstate will contact the Lender to obtain the payoff amount. Allstate will make termination payments to the Lender until one of the following occurs: the specified payoff amount is reached; the Total Termination Payment Value for the location has been reached; or the Lender has provided a release letter. Any remaining termination payments will be paid by Allstate directly to the Agency.

**Submission of the completed Security Interest documents to the Allstate Lending Connection®**
- Submit the completed documents via email, fax, or US mail.
- **If any incomplete or illegible documents are submitted, consent to the Granting of Security Interest will be delayed.** If Allstate is unable to consent to the Granting of Security Interest within 90 days for any reason, a new set of Consent to Granting of Security Interest documents will need to be submitted.
- Both parties should expect to receive an approved copy of the Consent to the Granting of Security Interest/Security Agreement in Economic Interest via email within 15-20 business days from the date the Request was submitted to Allstate.
- Contact information for submission of the Consent to the Granting of Security Interest/Security Agreement documents and questions

▶ Allstate Lending Connection®,Allstatelendingconnection@allstate.com,(847) 402-2191
**Allstate Insurance Company, 2775 Sanders Rd., Northbrook, IL 60062, Attn: Allstate Lending Connection®, Suite B2S**
Fax: (877) 347-6175

© 2015 Allstate Insurance Company          SAG          07/01/2017



Confirmation -- If Agent or Lender has not received an approved copy within 30 days of submission, please contact the Allstate Lending Connection® to make certain that the Request for Consent to the Granting of Security Interest has been received and approved.

# Completing the Request for Consent forms and exhibits

It is strongly recommended that the Agent and Lender complete all forms and exhibits by entering the required information into this interactive pdf form. However, a blank copy of all forms and instructions may be printed by clicking the button below. Allstate will only accept Requests for Consent completed by using the interactive form or by printing the form and manually completing each field. Retyping the form will not be accepted.

Tips for completing the interactive pdf Request for Consent forms:
- o **Adobe Reader 7.0** or higher is required.
- o **Interactive fields** -- All interactive fields are highlighted in blue. Interactive required fields are outlined in red. Signature fields (required) and their corresponding date fields (required) are grey and are not interactive.
- o **Tooltips** -- Hovering over any field will display more information (tooltips) about what information should be entered
- o **Navigation** -- The tab key will guide the cursor from field to field. The first time a field is completed, any form field that asks for that same information is also populated. So the tab key navigates to fields that still need to be completed.
- o **Resetting the form** -- To clear all fields and start over, use the RESET FORM button. Depending on your operating system and what version of Adobe Reader you are using, a completed form may not be able to be saved, so be sure to print the completed form before closing.
- o **Validation** -- To validate whether all required fields have been entered before printing the forms for signature, click the VALIDATE button (bookmarked on the left). Missing required fields will be listed.
- o **Submitting a Request for Consent** -- Sign and date the Request for Consent to the Granting of Security Interest documents after printing and submit to the *Allstate Lending Connection®* as explained on page 1. If acknowledging subordinate position, the Lender needs to initial the green box.

If completing the Request for Consent forms manually (not recommended), the tooltips for some fields are listed below. Please note that submitting illegible documents will delay processing.
- o **Position acknowledgement** -- A Lender may choose to acknowledge subordinate position in the top right corner of the Notice to Lender (green box). A separate written acknowledgement is also acceptable.
- o **Agency Name** -- The entity (whether sole proprietorship or corporation/LLC) who has an R3001 contract with Allstate, not the DBA
- o **Agent Number** -- The 5 character Agent Number associated with the Agency location where the security interest is being assigned. A separate set of Request for Consent forms must be completed for each Agent Number.
- o **Their** -- Reflects the business entity-- 'its' for a corporation/LLC; 'his' or 'her' for a sole proprietorship
- o **Lender, Lender Name** -- The individual, bank or lending entity who is being assigned a security interest in an Allstate Agency
- o **Agent** -- The Agent is the individual (whether Agency Owner or Key Person) who has signed the R3001 contract
- o **Lender Authorized Representative** -- Name of individual Lender or institutional Lender's representative
- o **Additional Lender Contact** -- Please complete if the contact person for questions is not the individual Lender or institutional Lender's authorized representative
- o **R3001 Contract Date** -- The date of the Agency's R3001 contract with Allstate, which may or may not be the same as the date the Agent affiliated with Allstate
- o **Business Entity** -- The type of business entity (either sole proprietorship or corporation/LLC) that has an R3001 contract with Allstate

© 2015 Allstate Insurance Company   07/01/2017

**CORPORATION SERVICE COMPANY**

www.cscglobal.com

CSC- Springfield
801 Adlai Stevenson Drive
Springfield, IL 62703
217-544-5900
217-492-2727 (Fax)

<div style="border:1px solid red; color:red">OAK005</div>

| | | | |
|---|---|---|---|
| **Matter#** | OSSF-5 | **Order#** | 789500-2 |
| **Project Id :** | | **Order Date** | 09/06/2013 |
| **Additional Reference :** | NOT PROVIDED | | |

**Entity Name :**   JESUS PINEDA   (Debtor)/ OAK STREET FUNDING LLC (Secured Party)

**Jurisdiction :**   TX-SECRETARY OF STATE, STATUTORY FILINGS DIVISION, CORPORATIONS

**Request for :**   UCC Filing
**File Type :**   ORIGINAL
**File# :**   13-0029108448
**File date :**   09/06/2013

**Result :**   Filed

File Number :   13-0029108448
Filing Date :   09/06/2013

Ordered by SHAY RECLA at KRIEG DEVAULT LLP

Thank you for using CSC.  For real-time 24 hour access to the status of any order placed with CSC, access our website at www.cscglobal.com.

If you have any questions concerning this order or CSCGlobal,  please feel free to contact us.

Lindsey Buis
lbuis@cscinfo.com

The responsibility for verification of the files and determination of the information therein lies with the filing officer; we accept no liability for errors or omissions.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**13-0029108448**

**09/06/2013 05:00 PM**

FILED
TEXAS
SECRETARY OF STATE
SOS

**503196720007**

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| Shay M. Recla, Paralegal    (574) 277-1200 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Krieg DeVault LLP
4101 Edison Lakes Parkway
Suite 100
Mishawaka IN 46545

RECEIVED SEP 6 2013 CLK 62

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Pineda | Jesus | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 9741 Vallarta Drive | El Paso | TX / 79927 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| Oak Street Funding LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 11350 N. Meridian Street, Suite 600 | Carmel | IN / 46032 | USA |

4. COLLATERAL: This financing statement covers the following collateral:


SEE ATTACHED EXHIBIT A


| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
| --- |

| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
| --- | --- | --- | --- |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing | |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
3788      789500-2  LRB +1P

## EXHIBIT A

A security interest in all of its right, title and interest in, to and under the following properties, assets and rights of the Debtor, wherever located, whether now owned or hereafter acquired or arising (all of the same being hereinafter collectively called the "Collateral") (all capitalized terms not defined herein shall have the same meaning as set forth in the Credit Agreement):

    (i)    all Insurance Policies associated with any Agency Agreements and/or Producer Codes, including, without limitation, any insurance policy commissions and other amounts paid or payable to Debtor with respect to any Insurance Policies associated with any Agency Agreements and/or Producer Codes, together with any and all over-ride commissions, contingent commissions, inspection and claims service fees, other fees bonuses, other income, new policies or expirations, renewals, substitutions or modifications thereof, including, without limitation, any Insurance Commissions Collateral due on or after the date hereof and all commissions due before the date hereof but received on or after the date hereof relating to such Agency Agreements and/or Producer Codes;

    (ii)    the CCA and any deposit account at any financial institution into which Insurance Commissions Collateral are deposited, together with all funds and claims to funds represented by such account;; and

    (iii)    all business personal property of the Debtor of every kind and nature now existing or hereafter acquired, including without limitation all goods (including all inventory, equipment and any accessions thereto), accounts, instruments (including promissory notes), documents (including any warehouse receipts), chattel paper (whether tangible or electronic chattel paper), deposit accounts, all money, cash and cash equivalents, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property (including all commodity accounts and commodity contracts), supporting obligations, contracts (including any insurance agency agreements and related contracts or agreements), any other contract rights or rights to the payment of money, insurance claims and proceeds, commercial tort claims, and all general intangibles including, without limitation, all payment intangibles, patents, patent applications, trademarks, service marks, trademark and service mark applications, trademark and service mark registrations, trade names, copyrights, copyright applications, copyright registrations, software, websites, domain names, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature pursuant to which the Debtor possesses, uses or has authority to possess or use property (whether tangible or intangible) of others or others possess, use or have authority to possess or use property (whether tangible or intangible) of the Debtor, and all recorded data of any kind or nature related to any of the foregoing, regardless of the medium of recording including, without limitation, all data and software holding any records related to any of the foregoing; and

    (iv)    all proceeds and other rights to payment not otherwise included with respect to any of the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.

When used herein the terms "account", "chattel paper", "commercial tort claim", "commodity account", "commodity contract", "deposit account", "document", "electronic chattel paper", "equipment", "fixtures", "goods", "instrument", "inventory", "investment property", "letter-of-credit rights", "payment intangibles", "proceeds", "promissory notes", and "supporting obligations" have the meaning provided in Article 8 or Article 9, as applicable, of the Uniform Commercial Code.

**UCC FINANCING STATEMENT AMENDMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
COGENCY GLOBAL INC.
10 East 40th Street, 10th Floor
New York, NY 10016
USA

**FILING NUMBER:** 17-00155544
**FILING DATE:** 05/05/2017      02:44 PM
**DOCUMENT NUMBER:** 734569370001
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
**13-0029108448**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of the Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9.
For partial assignment, complete item 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes. This Change affects ☐ Debtor or ☑ Secured Party of record. AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b.

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | **Oak Street Funding LLC** | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | **Oak Street Funding LLC** | | |
| 7b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **8888 Keystone Crossing, Suite 1700** | **Indianapolis** | **IN** | **46240** | **USA** |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | **Oak Street Funding LLC** | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
**TX - JESUS PINEDA - 7112 OSF add**

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT AMENDMENT**

**FOLLOW INSTRUCTIONS**

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Charlotte R Graham 3174285158 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Charlotte R Graham
8888 Keystone Crossing
Suite 1700
Indianapolis, IN 46240
USA

**FILING NUMBER:** 18-00051101
**FILING DATE:** 02/13/2018     03:51 PM
**DOCUMENT NUMBER:** 793947190002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**13-0029108448**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of the Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and also name of Assignor in item 9.
For partial assignment, complete item 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes. This Change affects ☑ Debtor or ☐ Secured Party of record. AND Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c  ☐ ADD name: Complete item 7a or 7b, and item 7c  ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | **PINEDA** | **JESUS** | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | **PINEDA** | **JESUS** | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **12592 Arrow Weed** | **El Paso** | **TX** | **79928** | **USA** |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☑ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | **PINEDA** | **JESUS** | | |

10. OPTIONAL FILER REFERENCE DATA:
**8287**

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT AMENDMENT**

**FOLLOW INSTRUCTIONS**

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>Charlotte Graham 3174285158 | |

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Charlotte R Graham
8888 Keystone Crossing
Suite 1700
Indianapolis, IN 46240
USA

**FILING NUMBER:** 18-00082058
**FILING DATE:** 03/12/2018     12:05 PM
**DOCUMENT NUMBER:** 799478320002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**13-0029108448**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of the Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and also name of Assignor in item 9.
For partial assignment, complete item 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes. This Change affects ☐ Debtor or ☐ Secured Party of record. AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b.

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME<br>**Oak Street Funding LLC** | | | |
|---|---|---|---|---|
| OR | | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA:
**7112**          117112 / 118287

**FILING OFFICE COPY**





OAK006

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This DEPOSIT ACCOUNT CONTROL AGREEMENT (this "Agreement"), dated as of September 9th, 2013, by and among OAK STREET FUNDING LLC, with an address at 11350 N Meridian Street, Suite 600, Carmel, Indiana 46032 ("Secured Party"); Jesus Pineda, with an address at 9741 Vallarta Drive, El Paso, TX, 79927 ("Borrower"); FIRST FINANCIAL BANK NA, with an address 255 E Fifth Street, Cincinnati, OH 45202 ("Bank").

WHEREAS, Borrower has granted Secured Party a security interest in the deposit account maintained by Bank for Borrower and as more particularly identified below as the "Account". The parties are entering into this Agreement to perfect Secured Party's security interest in that Account.

NOW THEREFORE, in consideration of the premises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1. The Account. Borrower authorizes Oak Street to (1) open the Account on behalf of Borrower, (2) appoint the proper signatories to the Account, (3) receive all notification and statements relating to the account, and (4) complete the "Back-Up Withholding Certifications" section of the Account agreement. Bank maintains a deposit account for Borrower, currently numbered ███████ and titled "Jesus Pineda for Oak Street Funding LLC" (as such account may be renumbered or retitled, the "Account"). All parties agree that the Account is a "deposit account" within the meaning of Article 9 of the Uniform Commercial Code of the State of TX (the "UCC").

Section 2. Control. Bank will comply with instructions originated by Secured Party directing disposition of the funds in the Account without further consent by Borrower. Bank will not permit the withdrawal or other disposition of any funds in the Account by Borrower without Secured Party's prior written consent. Bank has not and will not agree with any third party to comply with instructions or other directions concerning the Account or the disposition of funds in the Account originated by such third party without the prior written consent of Secured Party and Borrower. Notwithstanding any other term or provision of this Agreement, if Bank is properly served with a writ, garnishment, judgment, warrant of attachment, execution or similar process (any of the foregoing, a "Court Order") that affects or purports to affect the Blocked Account, Bank shall provide notice of such Court Order to Secured Party and shall prohibit transactions on the Blocked Account in accordance with such Court Order until Bank is served with satisfactory notice that the Court Order is no longer in effect. Borrower acknowledges and agrees that funds deposited into the Account are being held in trust for the benefit of Secured Party and that Borrower serves in a fiduciary capacity with regard to such funds in the Account. Bank shall have no duty to determine whether Borrower's obligations to the Secured Party are in default or whether Secured Party is entitled, under any separate agreement between Borrower and Secured Party, to give instruction relating to the Account. In accepting instructions or consents from Secured Party, Bank may conclusively rely on a written instruction or consent purportedly signed by any officer

of Secured Party with a title of assistant vice president, vice president, principal, managing director or above.

Section 3. Subordination of Bank's Security Interest. Bank hereby subordinates all security interests, encumbrances, claims and rights of setoff it may have, now or in the future, against the Account or any funds in the Account other than in connection with the payment of Bank's customary fees and charges pursuant to its agreement with Borrower and for the reversal of provisional credits; provided, however, that this Section 3 is not applicable with respect to security interests, encumbrances, claims and rights of setoff granted by Secured Party to Bank or arising in connection with financing extended by Bank to Secured Party.

Section 4. Statements, Confirmations and Notices of Adverse Claims. Bank will send copies of all statements concerning the Account to each of Borrower and Secured Party at the address set forth in the heading of this Agreement. Upon receipt of written notice of any lien, encumbrance or adverse claim against the Account or any funds credited thereto, Bank will make reasonable efforts promptly to notify Secured Party and Borrower thereof, provided that failure to provide such notice shall not result in any liability of or claim against Bank.

Section 5. Bank's Responsibility. Except for acting on Borrower's instructions in violation of Section 2 above, Bank shall have no responsibility or liability to Secured Party for complying with instructions concerning the Account from Borrower or Borrower's authorized representatives. Bank shall have no responsibility or liability to Borrower for complying with instructions concerning the Account originated by Secured Party, even if Borrower notifies Bank that Secured Party is not legally entitled to originate any such instruction.

Section 6. Indemnity. Borrower and Secured Party hereby agree to indemnify and hold harmless Bank, its directors, officers, agents and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including without limitation, any and all court costs and reasonable attorney's fees, in any way related to or arising out of or in connection with this Agreement or any action taken or not taken pursuant hereto, except to the extent caused by Bank's gross negligence or willful misconduct or Bank's breach of any of the provisions hereof.

Section 7. Customer Agreement. In the event of a conflict between this Agreement and any other agreement between Bank and Borrower relating to the Account, the terms of this Agreement will prevail.

Section 8. Termination. This Agreement shall continue in effect until (a) Secured Party has notified Bank in writing that this Agreement, or its security interest in the Account, is terminated, or (b) Bank provides Secured Party one hundred twenty (120) days prior written notice of termination. Upon receipt of such notice, the obligations of Bank hereunder with respect to the operation and maintenance of the Account after the receipt of such notice shall terminate and Secured Party shall have no further right to originate instructions concerning the Account.

Section 9. Complete Agreement; Amendments. This Agreement and the instructions and notices required or permitted to be executed and delivered hereunder set forth the entire agreement of the parties with respect to the subject matter hereof, and, subject to Section 8 above supersede any prior agreement

and contemporaneous oral agreements of the parties concerning its subject matter. No amendment, modification or (except as otherwise specified in Section 8 above) termination of this Agreement, nor any assignment of any rights hereunder (except to the extent contemplated under Section 12 below), shall be binding on any party hereto unless it is in writing and is signed by each of the parties hereto, and any attempt to so amend, modify, terminate or assign except pursuant to such a writing shall be null and void. No waiver of any rights hereunder shall be binding on any party hereto unless such waiver is in writing and signed by the party against whom enforcement is sought.

Section 10. Governing law. This Agreement shall be governed by and construed in accordance with the law of the State of Indiana. The parties agree that Indiana is the "bank's jurisdiction" for purposes of the UCC.

Section 11. Severability. To the extent a provision of this Agreement is unenforceable, this Agreement will be construed as if the unenforceable provision were omitted.

Section 12. Successors and Assigns. The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors or heirs and personal representatives. This Agreement may be assigned by Secured Party to any successor of Secured Party under its security agreement with Borrower, provided that written notice thereof is given by Secured Party to Bank.

Section 13. Notices. Except as otherwise expressly provided herein, any notice, order, instruction, request or other communication required or permitted to be given under this Agreement shall be in writing and deemed to have been properly given when delivered in person, or when sent by telecopy or other electronic means and electronic confirmation of error-free receipt is received or upon receipt of notice sent by certified or registered United States mail, return receipt requested, postage prepaid, addressed to the party at the address set forth next to such party's name at the heading of this Agreement. Any party may change its address for notices in the manner set forth above.

**Section 14. JURY WAIVER. BORROWER AND SECURED PARTY EACH WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY RELATED INSTRUMENT OR AGREEMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY COURSE OF CONDUCT, DEALING, STATEMENT (WHETHER ORAL OR WRITTEN), OR ACTIONS OF EITHER OF THEM. NEITHER SECURED PARTY NOR BORROWER SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY EITHER SECURED PARTY OR BORROWER EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY THEM. EXCEPT AS PROHIBITED BY LAW, BORROWER AND SECURED PARTY EACH WAIVES ANY RIGHT WHICH IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION REFERRED TO IN THIS SECTION 14 ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER (I) CERTIFIES THAT NONE OF SECURED PARTY, BANK NOR ANY REPRESENTATIVE, AGENT OR ATTORNEY OF SECURED PARTY AND BANK HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SECURED PARTY AND BANK WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS; AND (II) ACKNOWLEDGES THAT, IN ENTERING INTO THIS**

**AGREEMENT, SECURED PARTY AND BANK ARE RELYING UPON, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION 14.**

Section 15. Counterparts. This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts.

IN WITNESS WHEREOF, the parties hereto have caused this Deposit Account Control Agreement to be executed by their duly authorized representatives effective as of the date and year first written above.

SIGNATURES:

SECURED PARTY:  OAK STREET FUNDING LLC

By:_____

Alicia Chandler, ~~Chief Counsel~~

Rick Denven - CEO

BORROWER:  Jesus Pineda

By:_____

BANK:  First Financial Bank

By:_____

Title:_____

OAK009

**Oak Street Funding LLC**
**Loan Account Reconciliation**
**7/1/2000 - 4/13/2021**

| Transaction Date | Transaction Type | Increase Amount | Decrease Amount | Entered By | Balance |
|---|---|---|---|---|---|
| **Account Loan ID:** ▮▮▮ | **- Jesus Pineda** | | | | |
| | Beginning Balance | | | | $0.00 |
| 02/12/2018 | LOAN_DISBURSEMENT | $293,000.00 | $0.00 | pstahl | $293,000.00 |
| 03/25/2018 | INTEREST_ACCRUED | $2,221.92 | $0.00 | System | $295,221.92 |
| 03/25/2018 | INTEREST_PAYMENT | $0.00 | $2,221.92 | System | $293,000.00 |
| 03/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,632.41 | System | $291,367.59 |
| 04/25/2018 | INTEREST_ACCRUED | $2,446.27 | $0.00 | System | $293,813.86 |
| 04/25/2018 | INTEREST_PAYMENT | $0.00 | $2,446.27 | System | $291,367.59 |
| 04/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,408.06 | System | $289,959.53 |
| 05/25/2018 | INTEREST_ACCRUED | $2,355.92 | $0.00 | System | $292,315.45 |
| 05/25/2018 | INTEREST_PAYMENT | $0.00 | $2,355.92 | System | $289,959.53 |
| 05/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,498.41 | System | $288,461.12 |
| 06/25/2018 | INTEREST_ACCRUED | $2,421.87 | $0.00 | System | $290,882.99 |
| 06/25/2018 | INTEREST_PAYMENT | $0.00 | $2,421.87 | System | $288,461.12 |
| 06/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,432.46 | System | $287,028.66 |
| 07/25/2018 | INTEREST_ACCRUED | $2,332.11 | $0.00 | System | $289,360.77 |
| 07/25/2018 | INTEREST_PAYMENT | $0.00 | $2,332.11 | System | $287,028.66 |
| 07/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,522.22 | System | $285,506.44 |
| 08/25/2018 | INTEREST_ACCRUED | $2,397.06 | $0.00 | System | $287,903.50 |
| 08/25/2018 | INTEREST_PAYMENT | $0.00 | $2,397.06 | System | $285,506.44 |
| 08/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,457.27 | System | $284,049.17 |
| 09/25/2018 | INTEREST_ACCRUED | $2,384.83 | $0.00 | System | $286,434.00 |
| 09/25/2018 | INTEREST_PAYMENT | $0.00 | $2,384.83 | System | $284,049.17 |
| 09/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,469.50 | System | $282,579.67 |
| 10/25/2018 | INTEREST_ACCRUED | $2,295.96 | $0.00 | System | $284,875.63 |
| 10/25/2018 | INTEREST_PAYMENT | $0.00 | $2,295.96 | System | $282,579.67 |
| 10/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,558.37 | System | $281,021.30 |
| 11/25/2018 | INTEREST_ACCRUED | $2,359.41 | $0.00 | System | $283,380.71 |
| 11/25/2018 | INTEREST_PAYMENT | $0.00 | $2,359.41 | System | $281,021.30 |
| 11/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,494.92 | System | $279,526.38 |
| 12/25/2018 | INTEREST_ACCRUED | $2,271.15 | $0.00 | System | $281,797.53 |
| 12/25/2018 | INTEREST_PAYMENT | $0.00 | $2,271.15 | System | $279,526.38 |
| 12/25/2018 | PRINCIPAL_PAYMENT | $0.00 | $1,583.18 | System | $277,943.20 |
| 01/25/2019 | INTEREST_ACCRUED | $2,333.56 | $0.00 | System | $280,276.76 |
| 01/25/2019 | INTEREST_PAYMENT | $0.00 | $2,333.56 | System | $277,943.20 |
| 01/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,520.77 | System | $276,422.43 |
| 02/25/2019 | INTEREST_ACCRUED | $2,320.80 | $0.00 | System | $278,743.23 |
| 02/25/2019 | INTEREST_PAYMENT | $0.00 | $2,320.80 | System | $276,422.43 |
| 02/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,533.53 | System | $274,888.90 |
| 03/25/2019 | INTEREST_ACCRUED | $2,084.57 | $0.00 | System | $276,973.47 |

| Date | Type | | | | |
|---|---|---|---|---|---|
| 03/25/2019 | INTEREST_PAYMENT | $0.00 | $2,084.57 | System | $274,888.90 |
| 03/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,769.76 | System | $273,119.14 |
| 04/25/2019 | INTEREST_ACCRUED | $2,293.06 | $0.00 | System | $275,412.20 |
| 04/25/2019 | INTEREST_PAYMENT | $0.00 | $2,293.06 | System | $273,119.14 |
| 04/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,561.27 | System | $271,557.87 |
| 05/25/2019 | INTEREST_ACCRUED | $2,206.41 | $0.00 | System | $273,764.28 |
| 05/25/2019 | INTEREST_PAYMENT | $0.00 | $2,206.41 | System | $271,557.87 |
| 05/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,647.92 | System | $269,909.95 |
| 06/25/2019 | INTEREST_ACCRUED | $2,266.12 | $0.00 | System | $272,176.07 |
| 06/25/2019 | INTEREST_PAYMENT | $0.00 | $2,266.12 | System | $269,909.95 |
| 06/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,588.21 | System | $268,321.74 |
| 07/25/2019 | INTEREST_ACCRUED | $2,180.11 | $0.00 | System | $270,501.85 |
| 07/25/2019 | INTEREST_PAYMENT | $0.00 | $2,180.11 | System | $268,321.74 |
| 07/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,674.22 | System | $266,647.52 |
| 08/25/2019 | INTEREST_ACCRUED | $2,238.73 | $0.00 | System | $268,886.25 |
| 08/25/2019 | INTEREST_PAYMENT | $0.00 | $2,238.73 | System | $266,647.52 |
| 08/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,615.60 | System | $265,031.92 |
| 09/25/2019 | INTEREST_ACCRUED | $2,225.16 | $0.00 | System | $267,257.08 |
| 09/25/2019 | INTEREST_PAYMENT | $0.00 | $2,225.16 | System | $265,031.92 |
| 09/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,629.17 | System | $263,402.75 |
| 10/25/2019 | INTEREST_ACCRUED | $2,140.15 | $0.00 | System | $265,542.90 |
| 10/25/2019 | INTEREST_PAYMENT | $0.00 | $2,140.15 | System | $263,402.75 |
| 10/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,714.18 | System | $261,688.57 |
| 11/25/2019 | INTEREST_ACCRUED | $2,197.09 | $0.00 | System | $263,885.66 |
| 11/25/2019 | INTEREST_PAYMENT | $0.00 | $2,197.09 | System | $261,688.57 |
| 11/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,657.24 | System | $260,031.33 |
| 12/25/2019 | INTEREST_ACCRUED | $2,112.75 | $0.00 | System | $262,144.08 |
| 12/25/2019 | INTEREST_PAYMENT | $0.00 | $2,112.75 | System | $260,031.33 |
| 12/25/2019 | PRINCIPAL_PAYMENT | $0.00 | $1,741.58 | System | $258,289.75 |
| 01/25/2020 | INTEREST_ACCRUED | $2,168.56 | $0.00 | System | $260,458.31 |
| 01/25/2020 | INTEREST_PAYMENT | $0.00 | $2,168.56 | System | $258,289.75 |
| 01/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,685.77 | System | $256,603.98 |
| 02/25/2020 | INTEREST_ACCRUED | $2,154.40 | $0.00 | System | $258,758.38 |
| 02/25/2020 | INTEREST_PAYMENT | $0.00 | $2,154.40 | System | $256,603.98 |
| 02/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,699.93 | System | $254,904.05 |
| 03/25/2020 | INTEREST_ACCRUED | $2,104.73 | $0.00 | System | $257,008.78 |
| 03/25/2020 | INTEREST_PAYMENT | $0.00 | $2,104.73 | System | $254,904.05 |
| 03/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,817.32 | System | $253,086.73 |
| 04/25/2020 | INTEREST_ACCRUED | $1,906.94 | $0.00 | System | $254,993.67 |
| 04/25/2020 | | $0.00 | $1,906.94 | System | $253,086.73 |
| 05/25/2020 | INTEREST_ACCRUED | $1,845.42 | $0.00 | System | $254,932.15 |
| 05/25/2020 | | $0.00 | $1,845.42 | System | $253,086.73 |
| 06/25/2020 | INTEREST_ACCRUED | $1,906.94 | $0.00 | System | $254,993.67 |
| 06/25/2020 | | $0.00 | $1,906.94 | System | $253,086.73 |
| 07/25/2020 | INTEREST_ACCRUED | $1,845.42 | $0.00 | System | $254,932.15 |
| 07/25/2020 | INTEREST_PAYMENT | $0.00 | $1,845.42 | System | $253,086.73 |
| 07/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,872.81 | System | $251,213.92 |

| Date | Transaction | | | | Balance |
|---|---|---|---|---|---|
| 08/25/2020 | INTEREST_ACCRUED | $1,892.83 | $0.00 | System | $253,106.75 |
| 08/25/2020 | INTEREST_PAYMENT | $0.00 | $1,892.83 | System | $251,213.92 |
| 08/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,825.40 | System | $249,388.52 |
| 09/25/2020 | INTEREST_ACCRUED | $1,879.07 | $0.00 | System | $251,267.59 |
| 09/25/2020 | INTEREST_PAYMENT | $0.00 | $1,879.07 | System | $249,388.52 |
| 09/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,839.16 | System | $247,549.36 |
| 10/25/2020 | INTEREST_ACCRUED | $1,805.05 | $0.00 | System | $249,354.41 |
| 10/25/2020 | INTEREST_PAYMENT | $0.00 | $1,805.05 | System | $247,549.36 |
| 10/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,913.18 | System | $245,636.18 |
| 11/25/2020 | INTEREST_ACCRUED | $1,850.80 | $0.00 | System | $247,486.98 |
| 11/25/2020 | INTEREST_PAYMENT | $0.00 | $1,850.80 | System | $245,636.18 |
| 11/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,867.43 | System | $243,768.75 |
| 12/25/2020 | INTEREST_ACCRUED | $1,777.48 | $0.00 | System | $245,546.23 |
| 12/25/2020 | INTEREST_PAYMENT | $0.00 | $1,777.48 | System | $243,768.75 |
| 12/25/2020 | PRINCIPAL_PAYMENT | $0.00 | $1,940.75 | System | $241,828.00 |
| 01/25/2021 | INTEREST_ACCRUED | $1,822.11 | $0.00 | System | $243,650.11 |
| 01/25/2021 | INTEREST_PAYMENT | $0.00 | $1,822.11 | System | $241,828.00 |
| 01/25/2021 | PRINCIPAL_PAYMENT | $0.00 | $1,896.12 | System | $239,931.88 |
| 02/25/2021 | INTEREST_ACCRUED | $1,807.82 | $0.00 | System | $241,739.70 |
| 02/25/2021 | INTEREST_PAYMENT | $0.00 | $1,807.82 | System | $239,931.88 |
| 02/25/2021 | PRINCIPAL_PAYMENT | $0.00 | $1,910.41 | System | $238,021.47 |
| 03/25/2021 | INTEREST_ACCRUED | $1,619.87 | $0.00 | System | $239,641.34 |
| 03/25/2021 | INTEREST_PAYMENT | $0.00 | $1,619.87 | System | $238,021.47 |
| 03/25/2021 | PRINCIPAL_PAYMENT | $0.00 | $2,098.36 | System | $235,923.11 |

**Grand Total**

| | | |
|---|---|---|
| Ending Balance | | $235,923.11 |

| Date | Interest Payments | Service Fee Payments |
|---|---|---|
| **Account Loan ID:** ▆ - Jesus Pineda | | |
| 2018 | $23,486.50 | $0.00 |
| 2019 | $26,598.51 | $0.00 |
| 2020 | $17,478.34 | $0.00 |
| 1/1/2021 - 4/13/2021 | $5,249.80 | $0.00 |

THE INFORMATION CONTAINED IN THE REPORT IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT INTENDED TO BE LEGAL OR TAX ADVICE. WHILE OAK STREET ENDEAVORS TO KEEP THE INFORMATION UP TO DATE AND CORRECT, OAK STREET MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, ABOUT THE COMPLETENESS, ACCURACY, RELIABILITY, SUITABILITY OR AVAILABILITY WITH RESPECT TO THE REPORT OR THE INFORMATION CONTAINED IN THE REPORT FOR ANY PURPOSE. ANY RELIANCE YOU PLACE ON SUCH INFORMATION IS THEREFORE STRICTLY AT YOUR OWN RISK.  OAK STREET RESERVES THE RIGHT TO CORRECT ANY ERRORS OR OMISSIONS IN THE REPORT.
IN NO EVENT WILL OAK STREET BE LIABLE FOR ANY LOSS OR DAMAGE INCLUDING WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL LOSS OR DAMAGE, OR ANY LOSS OR DAMAGE WHATSOEVER ARISING FROM LOSS OF DATA OR PROFITS ARISING OUT OF, OR IN CONNECTION WITH, THE USE OF THE REPORT.