# NONRECOURSE HOME EQUITY LIEN NOTE
Under Section 50(a)(6), Article XVI, of the Texas Constitution

$ 74,800.00              EL PASO              , TEXAS

DATE 10/10/2007

## 1. PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned Borrower, whether one or more, promises to pay to the order of El Paso Employees FCU a federal credit union qualified to make home equity loans under Section 50(a)(6)(P) or any successor or assignee ("Lender"), at 8840 Gazelle Drive El Paso, TX 79925 _____ or such other address as Lender may from time to time designate the principal sum of ($ 74,800.00 _____ ), which amount, in legal and lawful money of the United States of America, together with interest thereon from the date hereof until maturity at the rate of 7.000 _____ percent (%) per annum; matured, unpaid, principal and interest shall bear interest at the rate of 7.000 _____ percent (%) per annum until paid ("Note"). After any default, Borrower will pay the highest rate allowed by applicable state or federal law. Note is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained this loan by actual fraud. If more than one person signs Note, each person is obligated to keep all of the promises made in Note, and each person is individually and jointly liable. Lender may keep Note or may assign Note to another at Lender's option.

## 2. PAYMENTS

Note is due and payable in substantially equal successive monthly installments beginning no later than two months from the date of Note, each of which exceeds the amount of accrued interest as of the date of the scheduled installment as follows, to wit: 179 of $675.03 beginning on 12/01/2007 and one final payment of $675.03 due on 11/01/2022

## 3. LATE CHARGES

If Lender has not received the full amount of any monthly payment by the end of N/A _____ calendar days after the date it is due, Borrower will pay a late charge to Lender. The amount of the charge will be N/A _____ % of the overdue payment of principal and interest. Borrower will pay this late charge promptly but only once for each late payment.

## 4. SECURITY

Payment hereof is secured only by a Deed of Trust on the homestead of Borrower of even date herewith ("Deed of Trust") executed voluntarily and with the consent of each owner and each owner's spouse, by Borrower to LARRY MORENO _____, TRUSTEE against the property more particularly described in attached Exhibit "A" ("Homestead"). Deed of Trust contains a disclosure that this loan is a loan defined by Section 50(a)(6) of Article XVI of the Texas Constitution.

## 5. TRANSFER OF PROPERTY

If all or any part of Homestead or any interest in it, is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums evidenced by Note, unless prohibited by state or federal law. If Lender exercises this option, Lender shall give Borrower notice of intent to accelerate and notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed by which Borrower must pay all sums evidenced by Note. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by Deed of Trust without further notice or demand on Borrower.

## 6. DEFAULT

A. Failure to Pay

It is expressly provided that upon default in the punctual payment of this Note or any part hereof, principal or interest, as the same shall become due and payable, or default in the performance of any of Borrower's obligations under the referenced Deed of Trust, then at the option of Lender, the entire indebtedness secured by Deed of Trust shall be matured. Homestead which secures this Note may be foreclosed upon only by a court order.

B. Notice and Fees

Lender shall give notice to Borrower following Borrower's breach of any covenant, obligation, or agreement in the Note and Security Instrument (but not prior to acceleration under Section 5 hereof unless applicable law provides otherwise). The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and enforcement of the Note and the Security Instrument by court order under rules promulgated by the Supreme Court of the State of Texas. Lender may recover from Borrower all of its reasonable costs and expenses in enforcing Note to the extent not prohibited by applicable law. Those expenses include reasonable attorney's fees provided that the attorney is not an employee of Lender.

C. Acceleration; No Waiver by Lender

If default occurs in the payment of any principal or interest when due hereunder, or upon the occurrence of any default or failure to perform any covenant, agreement, or obligation to be performed under any document or instrument executed in connection with or as security for this Note, or upon Borrower's insolvency or business failure, the appointment of a receiver of all or any part of Borrower's property, an assignment for the benefit of creditors of Borrower, a calling of a meeting of creditors of Borrower, the commencement of any proceeding under any bankruptcy, insolvency, or debtor relief laws by or against Borrower or any guarantor or surety for Borrower, Lender may at its option, declare the entirety of this Note, principal and interest, immediately due and payable, and issue any and all other remedies available to it at law or in equity, but failure to do so at any time shall not constitute a waiver of such holder's right to do so at any other time.

D. Waiver by Borrower

Each Borrower, surety, and endorser of this Note expressly waives rights of presentment and notice of dishonor as to Note. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice that amounts due have not been paid.

## 9. LENDER'S OBLIGATIONS; BORROWER'S REMEDIES

Lender will forfeit all principal and interest on Note if lender fails to comply with its obligations under Note within a reasonable period of time after Borrower notifies Lender of its failure to comply. Note may not be accelerated because of a decrease in the market value of the homestead or because of Borrower's default under other indebtedness not secured by a prior valid encumbrance against Homestead.

## 10. NO USURY

The parties intend to conform strictly to the applicable usury laws. All agreements between Lender and Borrower (or any other party liable with respect to any indebtedness under the Loan Documents) are hereby limited by the provisions of this paragraph which shall override and control all such agreements, whether now existing or hereafter arising. In no way, nor in any event or contingency (including but not limited to prepayment default, demand for payment, or acceleration of the

(Continued on Reverse Side)

BY SIGNING BELOW, BORROWER ACCEPTS AND AGREES TO THE TERMS AND CONDITIONS OF THIS NOTE AS DEFINED ABOVE AND ON T[...]

BORROWER _____    BORROWER _____

© QUEST FINANCIAL SYSTEMS INC. 1978 with multiple revisions. All Rights Reserved.

EXHIBIT A

maturity of any Obligations or any part thereof), shall the interest contracted for, charged, or received under Note or otherwise exceed the maximum amount permissible under applicable law. If, from any possible construction of any document, interest would otherwise be payable to Lender in excess of the maximum lawful amount, any such constriction shall be subject to the provisions of this paragraph and such document shall be automatically reformed and the interest payable to Lender shall be automatically reduced to the maximum amount permitted under applicable law, without the necessity of execution of any amendment or new document. If Lender shall ever receive anything of value which is characterized as interest under applicable law and which would, apart from this provision be in excess of the maximum lawful amount, an amount equal to the amount which would have been excessive interest shall, without penalty, be applied to the reduction of interest, or refunded to Borrower to the extent that the amount which would have been excessive interest exceeds unpaid principal. The right to accelerate maturity of Note or any other indebtedness does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to contract for, charge, or receive any unearned interest in the event of acceleration. All interest paid or agreed to be paid to Lender shall, to the full extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest on account of such indebtedness does not exceed the maximum permitted by applicable law.

### 11. BORROWER'S RIGHT TO PREPAY; LENDER'S RELEASE

Borrower may prepay all or any part hereof at any time without penalty, and interest shall immediately cease on all amounts so prepaid. All prepayments shall be applied first to accrued but unpaid interest and fees, the balance to installments due hereon in inverse order of maturity. Within a reasonable time after termination and full payment of Note, Lender will cancel and return Note to Borrower and give Borrower, in recordable form, a release of Deed of Trust securing Note or a copy of an endorsement and assignment of Deed of Trust to a lender that is refinancing Note.

### 12. ACKNOWLEDGEMENTS

Borrower acknowledges that:

(1) Note has not been closed before the twelfth day after the later of the date that Borrower submitted an application to Lender for the extension of credit or the date that Lender provided Borrower with a copy of the notice required under Section 50(a)(6) of Article XVI of the Texas Constitution;

(2) Note has not been closed before the first anniversary of the closing date of any other extension of credit described by Section 50(a)(6) of Article XVI of the Texas Constitution secured by Homestead;

(3) Note was closed only at the office of the lender, an attorney at law, or a title company;

(4) He/She has received the Notice Concerning Extension of Credit Defined By Section 50(a)(6) of Article XVI of the Texas Constitution;

(5) He/She has not been required to assign wages as security for the extension of credit;

(6) He/She has not signed a confession of judgment or power of attorney to the Lender or to a third person to confess judgment or to appear for Borrower in a judicial proceeding;

(7) He/She has received a copy of all documents signed by the owner related to Note;

(8) He/She may, within three business days after the signing of Note, rescind Note without penalty or charge;

(9) He/She and Lender have signed a written acknowledgment as to the fair market value of the homestead property of the date of the Note;

(10) The credit extended hereunder is not a form of open-end credit that may be debited from time to time or under which credit may be extended from time to time;

(11) He/She did not sign any instrument in connection with Note and Deed of Trust in which blanks were left to be filled in;

(12) Note does not require Borrower or Borrower's spouse to pay, in addition to any interest, any fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service Note and Deed of Trust that exceed in the aggregate, three percent (3 %) of the original principal amount of Note;

(13) Borrower or any owner of Homestead is not required to apply the proceeds of Note to repay another debt except debt secured by the Homestead or debt to another lender;

(14) If Note is not to refinance a debt secured by the homestead and described under Section 50(a)(1)-(5) of Article XVI of the Texas Constitution if Note includes the advance of additional funds, then no part of the proceeds unless the refinance of the debt is an extension of credit described by Section 50(a)(6) of Article XVI of the Texas Constitution or the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Section 50(a)(2), (3), or (5) of Article XVI of the Texas Constitution;

(15) If Note refinances a debt secured by Homestead, then any portion of which is an extension of credit described by Section 50(a)(6) of Article XVI of the Texas Constitution, Note unless the refinance of the debt is an extension of credit described by Section 50(a)(6) of Article XVI of the Texas Constitution;

(16) The principal sum of Note, when added to the aggregate total of the outstanding principal balance of all other indebtedness secured by valid encumbrances of record against Homestead (as defined below) does not exceed 80% of the fair market value of Homestead on the date herein;

(17) Homestead is not designated for agricultural use as provided by statutes governing property tax, unless such homestead property is used primarily for the production of milk;

(18) Homestead is not secured by any additional real or personal property other than Homestead;

(19) Note is the only debt secured by Homestead at the time the extension of credit is made unless the other debt was made for a purpose described by Section 50 (a)(1)-(5) of Article XVI of the Texas Constitution; and

(20) Note is the only debt secured by Homestead at the time Note is executed, unless the other debt was made for a purpose described by Section 50(a)(1)-(5) of Article XVI of the Texas Constitution.

<u>NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE LOAN REPRESENTED BY NOTE AND DEED OF TRUST IS WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST BORROWER OR BORROWER'S SPOUSE UNLESS BORROWER OR BORROWER'S SPOUSE OBTAINED THE EXTENSION OF CREDIT REPRESENTED BY NOTE AND DEED OF TRUST BY ACTUAL FRAUD. THE PROVISIONS OF THIS PARAGRAPH SHALL CONTROL OVER ANY CONFLICTING PROVISIONS IN NOTE AND DEED OF TRUST.</u>

By signing on the reverse side, Borrower accepts and agrees to the terms and conditions of this Note.

Doc# 200700097093

STATE OF TEXAS — SPACE ABOVE THIS LINE FOR RECORDING DATA

Return to El Paso Employees FCU
8860 Gateway Dr.
El Paso, TX 79925
Samantha Davis
Acct # 2095358

# HOME EQUITY DEED OF TRUST
Under Section 50(a)(6), Article XVI, of the Texas Constitution

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 10/10/2007 and the parties, their addresses and tax identification numbers, if required, are as follows:
   GRANTOR: Jesus Pineda
   Erica Pineda

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.
   TRUSTEE: LARRY MORENO

   LENDER: EL PASO EMPLOYEES FEDERAL CREDIT UNION

2. **CONVEYANCE.** In consideration of Ten Dollars paid in hand, for the purpose of securing the Note (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, sells, and conveys unto Trustee, in trust for the benefit of Lender, with power of sale only upon court order in accordance with the laws of Texas, the following described property:
   LOT 45, BLOCK 28, LEBARRON PARK REPLAT "A", AN ADDITION TO THE CITY OF EL PASO, EL PASO COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF ON FILE IN VOLUME 48, PAGE 13, REAL PROPERTY RECORDS, EL PASO COUNTY, TEXAS.

   The property is located in EL PASO (COUNTY) at 933 SAINT LAURENT (ADDRESS)
   EL PASO (CITY), Texas 79907-0000 (ZIP CODE), together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT.** This Security Interest is voluntarily executed by each owner and each owner's spouse (referred Collectively as "Grantor") and secures the repayment of indebtedness evidenced by Grantor's nonrecourse note dated 10/10/2007 and extensions and renewals thereof ("the Note"), the payment of other sums, with interest, advanced hereunder to protect the security of this Deed of Trust, and the performance of Borrower's covenants and agreements under this Security Instrument and the Note, not to exceed 80% of the fair market value of the property on the date of execution of this Deed of Trust as agreed by

   Lender and Borrower. The Note secured by this Security Instrument is in the principal sum of U.S. $ 74,800.00 with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on 11/01/2022. All replacements and additions shall be covered by this Security Instrument.

   This Security Instrument also secures all additional sums advanced and expenses incurred by Lender by insuring, preserving, or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

4. **NATURE OF SECURED DEBT.** THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION

5. **PAYMENTS.** Grantor agrees that all payments under the Note will be paid when due and in accordance with the terms of the Note and this Security Instrument. Unless applicable law provides otherwise, all payments received by Lender under the Note and this Security Agreement shall be applied first to amounts payable for taxes and insurance on the Property, second to costs of collection, including reasonable attorney's fees, third to any late charges due under the Note, fourth to interest due, and last to principal due.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of the Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims, or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

8. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer, or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R.591), as applicable. This covenant shall run with the Property and shall remain in effect until the Note is paid in full and this Security Instrument is released.

9. **PROPERTY CONDITION, ALTERATIONS, AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's purpose and Grantor will in no way rely on Lender's inspection.

10. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

11. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if the property is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

12. **DEFAULT.** Grantor will be in default if any party obligated on the Note fails to make payment when due. Grantor will be in default if Borrower breaches any covenant, obligation, or agreement under the terms of the Note, this Security Instrument, or any other document executed for the purpose of creating, securing, or guarantying the Note.

13. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Note and foreclose this Security Instrument solely by court order if Grantor is in default.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest, and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Note, this Security Instrument, and any related documents.

    In the event of default, it shall be the duty of the Trustee, at the request of Lender (which request is hereby conclusively presumed), to petition a court of competent jurisdiction to issue an order of foreclosure. Trustee shall give any required notice of sale, including the time, terms, and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

*(Continued on Reverse Side)*

© QUEST FINANCIAL SYSTEMS INC. 1998 with multiple revisions. All Rights Reserved.  FORM NO. OCL-7043-HE-TX-ER (6/99)

EXHIBIT B

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Note, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals, in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Note after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

Borrower and Lender agree that this Home Equity Deed of Trust and the note which it secures are "nonrecourse" in that Lender shall satisfy the debt solely from the Property.

14. EXPENSES; ADVANCES OR COVENANTS; ATTORNEY'S FEES; COLLECTION COSTS. Except when prohibited by law, Grantor agrees to pay Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting, the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Note. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount includes court costs and attorney's fees actually incurred, providing that attorney is not Lender's salaried employee.

15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. § 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a Hazardous Substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Grantor represents warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property.

    D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

16. CONDEMNATION. Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

17. INSURANCE. Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument and require Borrower to reimburse Lender therefor.

    All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

    Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Note, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of Note immediately before the acquisition.

18. ESCROW FOR TAXES AND INSURANCE. Unless otherwise provided in a separate agreement, Grantor will not be required to pay Lender funds for taxes and insurance in escrow.

19. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Grantor will provide to Lender upon request, information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

20. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Note and Grantor does not agree to be personally liable on the Note. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

21. APPLICABLE LAW; SEVERABILITY; INTERPRETATION. This Security Instrument is governed by the laws of Texas. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Note that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

22. SUCCESSOR TRUSTEE. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

23. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing.

24. USURY SAVINGS. In no event shall any provision of this Security Instrument or Note ever obligate Grantor to pay or allow Lender to collect interest on the Note at a rate greater than the maximum non-usurious rate permitted by applicable law. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby. In the event this Security Instrument and/or any law is interpreted so that any charge provided for in this Security Instrument and/or together with any instrument evidencing the Note, violates such law by reason of the acceleration of the Note or otherwise, such charge is hereby reduced to eliminate such violation. Any amounts paid to Lender in excess of the amounts permitted by applicable law shall be applied to reduce the principal of the Note, or, at Lender's option, be refunded.

25. WAIVERS. Except to the extent prohibited by law, Grantor waives all appraisement relating to the Property.

26. OTHER TERMS. If checked, the following are applicable to this Security Instrument:

    ☐ Riders. The covenants and agreements of each of the riders below is incorporated into and supplements and amends the terms of this Security Instrument.

    ☐ Vendor's Lien; Contractor's Lien; Renewal and Extension.

SIGNATURES: By signing below, Grantor and Grantor's spouse each agrees to the terms and covenants contained in this Security Instrument and in any attachments and rider(s) acceptable to Lender which are executed by Grantor and Grantor's spouse and recorded with it. Grantor and Grantor's spouse each also acknowledges receipt of a copy of this Security Instrument, the Note, and an appraisal or evaluation reflecting the fair market value of the property on the date stated on page 1. Grantor and Grantor's spouse represent and acknowledge that the property described herein is our sole homestead property.

| SIGNATURE | DATE | SIGNATURE | DATE |
|---|---|---|---|
| /s/ | 10/10/2007 | Erica Pineda | 10/10/2007 |

ACKNOWLEDGMENT:
STATE OF TEXAS, COUNTY OF EL PASO } ss.
This instrument was acknowledged before me this 10TH day of OCT 2007
by JESUS PINEDA AND ERICA PINEDA
My commission expires: October 4, 2011
/s/ Monica Ven (Notary Public)

MONICA VENZOR
Notary Public, State of Texas
My Commission Expires
October 04, 2011
(SEAL)

© QUEST FINANCIAL SYSTEMS INC., 1996 with multiple revisions. All Rights Reserved.

FORM NO. OCL-7040-HE-TX-EP (8/98)

Doc# 20070097093
#Pages 2 #NFPages 1
10/11/2007 3:39:58 PM
Filed & Recorded in
Official Records of
EL PASO COUNTY
DELIA BRIONES
COUNTY CLERK
Fees $20.00

3

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded by document number in the Official Public Records of Real Property in El Paso County.

[signature]

EL PASO COUNTY, TEXAS